UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

In re:                                          :

                                                :          Chapter 11
WORLDCOM, INC., et al.,                         :          Case No. 02-13533 (ALG)

                                                :
        Debtors.                                :

------------------------------------------------------X

                                                :
INTERNAL REVENUE SERVICE,                       :

                                                :
        Appellant,                              :          07 Civ. 7414 (DLC)

                                                :
        v.                                      :

                                                :
WORLDCOM, INC., et al.,                         :

                                                :
        Appellees.                              :

------------------------------------------------------X

OPPOSITION OF THE INTERNAL REVENUE SERVICE TO
REORGANIZED DEBTORS' MOTION TO DISMISS APPEAL OR FOR AN
ORDER DENYING THE INTERNAL REVENUE SERVICE LEAVE TO FILE
AN INTERLOCUTORY APPEAL

                                MICHAEL J. GARCIA
                                United States Attorney for the
                                Southern District of New York
                                Attorney for the Internal Revenue Service
                                86 Chambers Street, 3rd Floor
                                New York, New York 10007
                                Telephone:    (212) 637-2689
                                Facsimile:    (212) 637-2686

DANNA DRORI
Assistant United States Attorney
    – Of Counsel –

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    Procedural History and Basis of IRS Claim . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    The Bankruptcy Court Opinion and Subsequent Order . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    The Excise Tax Order Is A Final Appealable Order Pursuant to
        28 U.S.C. § 158(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.    In the Alternative, This Court Should Grant Leave For A Discretionary
        Interlocutory Appeal Pursuant to 28 U.S.C. § 158(a)(3) . . . . . . . . . . . . . . . . . . 10

        A.    The Standard Governing Section 158(a)(3) Determinations . . . . . . . . . . 11

        B.    This Court Should Grant Interlocutory Appeal Under The
            Broad Discretionary Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.    Interlocutory Appeal Is Warranted Even Under The
            Section 1292(b) Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

            1.    The Appeal Involves A Controlling Issue of Law . . . . . . . . . . . . 21

            2.    A Substantial Ground For Difference of Opinion Exists . . . . . . . 22

            3.    An Appeal Would Materially Advance the Termination
                of this Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

Cases:

Adeleke v. United States,
    355 F.3d 144 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Comcation, Inc. v. United States,
    – Fed. Cl. – , 2007 WL 2389395 (Fed. Cl. Aug. 17, 2007) . . . . . . . . . . . . . . . . . . . . . . 24

Comdata Network, Inc. v. United States,
    21 Cl. Ct. 128 (Cl. Ct. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hageman v. City Investing Co.,
    851 F.2d 69 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Hartford Underwriters Ins. Co. v. Union Planters Bank,
    530 U.S. 1 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Alexander,
    248 B.R. 478 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

In re Beker Indus. Corp.,
    89 B.R. 336 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

In re Flor,
    79 F.3d 281 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

In re Gardner,
    913 F.2d 1515 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re General Media, Inc.,
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Gordon Sel-Way, Inc.,
    270 F.3d 280 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

In re Hayes Bankruptcy,
    220 B.R. 57 (N.D. Iowa 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Jackson Brook Inst., Inc.,
    227 B.R. 569 (D. Me. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Johns-Manville Corp.,
    45 B.R. 833 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re Kassover,
    343 F.3d 91 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Moix-McNutt,
    215 B.R. 405 (B.A.P. 8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Orange Boat Sales,
    239 B.R. 471 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Pegasus Agency, Inc.,
    101 F.3d 882 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Rivera Torres,
    432 F.3d 20 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Williams,
    215 B.R. 289 (D.R.I. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re WorldCom, Inc. Sec. Litig.,
    02 Civ. 3288 (DLC), 2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003) . . . . . . . . . . . . 21, 23

In re WorldCom, Inc.,
    – B.R. – , 2007 WL 1576149 (Bankr. S.D.N.Y. June 1, 2007) . . . . . . . . . . . . . . . . . . . 5

Kamerman v. Steinberg,
    891 F.2d 424 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Klinghoffer v. S.N.C. Achille Lauro,
    921 F.2d 21 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 24, 25

Leocal v. Ashcroft,
    543 U.S. 1 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

MCI WorldCom Communications v. Communications Network Int'l, Ltd.,
    358 B.R. 76 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mishkin v. Ageloff,
    220 B.R. 784 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mitskovski v. Buffalo and Fort Erie Pub. Bridge Auth.,
    435 F.3d 127 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

Pettibone Corp. v. Easley,
    935 F.2d 120 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Publicker Indus., Inc. v. United States,
    980 F.2d 110 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Robinson v. Shell Oil Co.,
    519 U.S. 337 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

USA Choice Internet Serv., LLC v. United States,
    73 Fed. Cl. 780 (Fed. Cl. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23, 24

Ward v. Brown,
    22 F.3d 516 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Statutes:

11 U.S.C. § 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. § 505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

11 U.S.C. § 1107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

26 U.S.C. § 4251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

26 U.S.C. § 4252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 19, 20

28 U.S.C. § 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

The Internal Revenue Service ("IRS"), by its attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submits this opposition to the Reorganized Debtors' Motion to Dismiss Appeal or For An Order Denying the IRS Leave to File an Interlocutory Appeal, originally filed in the United States Bankruptcy Court for the Southern District of New York on July 12, 2007, and re-filed in this Court on August 30, 2007.

## PRELIMINARY STATEMENT

The IRS appeals from an order of the bankruptcy court holding that central office-based remote access ("COBRA") services purchased by a subsidiary of the Reorganized Debtors are not subject to a three percent excise tax imposed on amounts paid for certain communications services, pursuant to 26 U.S.C. § 4251 et seq. The Reorganized Debtors have moved to dismiss the IRS's appeal as premature, arguing that the order from which the IRS appeals is not a final order appealable as of right pursuant to 28 U.S.C. § 158(a)(1), and that the IRS is not entitled to discretionary interlocutory review pursuant to 28 U.S.C. § 158(a)(3).

The Reorganized Debtors are wrong on both counts. As a preliminary matter, the Reorganized Debtors' argument regarding Section 158(a)(1) ignores the fact that the bankruptcy court order purports to consolidate two separate matters – the Reorganized Debtors' objection to the IRS's request for payment of over $16 million of unpaid excise taxes owed on COBRA services and the Reorganized Debtors' separate motion for a refund of excise taxes previously paid on those services – and fully disposes of the objection. Where an order disposes of some but not all consolidated claims, the Second Circuit employs a case-by-case approach to determine whether the decision may be appealed as a final order, considering a variety of factors such as the bankruptcy court's intent to enter final judgment as to one of the claims as well as the interests of judicial economy. All of these factors support the IRS's right to appeal here. For example, an

immediate appeal of the bankruptcy court's final decision on the objection would promote judicial economy because a reversal would terminate the matter entirely, obviating the need for the bankruptcy court to proceed with potentially complex and time-consuming litigation concerning the amount of a possible refund. Additionally, serious doubts about the bankruptcy court's jurisdiction over the refund proceeding militate in favor of entertaining an immediate appeal from the bankruptcy court's ruling on the objection.

Moreover, this Court need not decide the finality of the bankruptcy court's order to deny the Reorganized Debtors' motion. Instead, it may exercise its discretion to grant leave for interlocutory review pursuant to Section 158(a)(3). Such an approach would be appropriate because the Second Circuit has itself recognized that its case-by-case approach under Section 158(a)(1) fails to provide the clearest possible guidance in order to ensure that litigants' opportunities to pursue appeals are preserved, while the standard governing permissibility of interlocutory appeals is readily met here. Given the grave jurisdictional consequences facing the IRS if it were deemed to have failed timely to file its appeal – including the potential loss to the public fisc of the more than $16 million in excise taxes at issue here – the appeal should proceed now even if the Court deems it interlocutory.

Indeed, a modern trend in the case law recognizes that a district court's discretion to grant leave for interlocutory appeal under Section 158(a)(3) is, in fact, much broader than the discretion afforded by 28 U.S.C. § 1292(b) to courts of appeal in granting interlocutory review of non-final district court orders. In any event, an immediate appeal is warranted under either the broader modern trend or the traditional Section 1292(b) analysis because, among other things, (i) denial of leave for an interlocutory appeal may incurably prejudice the IRS by precluding it

2

from ever obtaining Second Circuit review of the bankruptcy court's decision, even if it were to re-file its appeal at the conclusion of the entire bankruptcy court litigation; (ii) the applicability of the federal excise tax to COBRA services is a matter of first impression in both this Circuit and in any court of appeals, and is the subject of disagreement among lower courts; and (iii) a reversal of the bankruptcy court's decision on the objection at this stage would terminate the entire consolidated litigation, obviating the need not only for a potentially complex determination of the tax refund amount but also for briefing on jurisdictional and sovereign immunity defenses that the IRS will be constrained to raise before the bankruptcy court on the refund issue.

## BACKGROUND

### I.      Procedural History and Basis for the IRS Claim

On July 2, 2004, the IRS filed a Request for Payment, claim numbered 38365 ("Request for Payment No. 38365" or "Proof of Claim No. 38365"),[1] against MCI subsidiary UUNET Technologies, Inc. ("UUNET"), seeking payment of $16,276,440.81 in federal communications excise taxes owed pursuant to 26 U.S.C. § 4251 et seq. (the "Excise Tax") for some or all of tax years 2002, 2003, and 2004. See Declaration of Danna Drori, dated September 12, 2007 ("Drori Dec."), Exh. A (Request for Payment No. 38365). Section 4251 imposes a three percent excise tax on amounts paid for certain communications services, including local telephone service, toll telephone service, and teletypewriter service. See 26 U.S.C. § 4251. Section 4252 further defines "local telephone service" to include, among other things, "the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons

---

[1] Request for Payment No. 38365 was filed as Amendment No. 1 to prior Request for Payment No. 37947, which had been filed on or about February 24, 2004.

having telephone or radio telephone stations constituting a part of such local telephone system."
26 U.S.C. § 4252(a)(1). According to the IRS, UUNET owed the Excise Tax because it had
purchased COBRA services that included access to the local telephone system and the capability
of providing "telephonic quality communication with substantially all persons" in the local
telephone system.

On August 5, 2004, the Reorganized Debtors filed an objection to Request for Payment
No. 38365 (the "Objection"), arguing that COBRA services are not taxable as "local telephone
service" within the meaning of 26 U.S.C. § 4252(a) because the services are data-only and
therefore do not provide the privilege of voice-quality communication with substantially all
persons on a telephone system.

Pursuant to the "Scheduling Order Regarding the Reorganized Debtors' Objection to
Proof of Claim No. 38365," dated January 31, 2006 (the "January 31 Order"), and following
informal and limited document discovery as well as depositions of expert witnesses and several
rounds of briefing by the parties, the bankruptcy court held an evidentiary hearing on February 1,
2006 on the Objection, in order to determine the liability of the Reorganized Debtors for the
unpaid Excise Tax (the "February 1 Hearing"). See Drori Dec., Exh. B (the January 31 Order).
The January 31 Order specified that the "parties' respective rights regarding the amount, if any,
of such tax shall be reserved for further consideration by the Court at a later date." Id. at ¶ 2.

Also on January 31, 2006, the Reorganized Debtors filed a motion for refund of the
Excise Tax allegedly paid in connection with purchase of COBRA services for the periods
between (i) July 1998 and December 1998; (ii) January 1999 and September 2001; and (iii)
October 2001 and December 2004, as well as a request to consolidate the motion for refund with

4

the Objection (the "Refund Motion"). The bankruptcy court did not hear testimony or argument concerning the Refund Motion at the February 1 Hearing.

On April 11, 2006, the bankruptcy court heard closing arguments regarding the Objection as well as arguments concerning the Reorganized Debtors' request for consolidation of the Objection and the Refund Motion. At the hearing, the IRS did not oppose consolidation, and it reserved its rights to oppose the Refund Motion on the merits.

## II.    The Bankruptcy Court Opinion and Subsequent Order

On June 1, 2007, the bankruptcy court issued an opinion (the "Opinion") granting the Objection and the Refund Motion. See Drori Dec., Exh. C; see also In re WorldCom, Inc., – B.R. – , 2007 WL 1576149 (Bankr. S.D.N.Y. June 1, 2007). At the heart of the Opinion is the bankruptcy court's determination that the Excise Tax does not apply to COBRA as a matter of statutory interpretation.[2] See Drori Dec., Exh. C, at 8-15. First, the bankruptcy court agreed with the IRS that, as provided for by the only case law on point, the "privilege" of telephonic quality communication in Section 4252(a) is "clearly a more expansive concept than use," such that an entity may be taxed for a service even if it chooses not to actually use it. Id. at 9-10 (citing Comdata Network, Inc. v. United States, 21 Cl. Ct. 128 (Cl. Ct. 1990)). The court nonetheless understood "privilege" to include only those services that were actually purchased, holding as a matter of law that "[i]f the purchased service is incapable of a certain use . . . it follows that the privilege to use the service in that fashion was not granted or purchased." Id. at 10.

Moreover, while acknowledging that the IRS and the Reorganized Debtors disagreed

---

[2] In the second part of the Opinion, the bankruptcy court held that several IRS Revenue Rulings addressing the issue of "local telephone service" within the meaning of Section 4252(a) were "not persuasive and thus not entitled to deference." Drori Dec., Exh. C, at 18.

about the technical capabilities of the COBRA system, the bankruptcy court held that it "need not resolve these issues" because "a sufficient basis in uncontested fact exists to resolve the Objection and the Refund Motion in favor of the [Reorganized] Debtors." Id. at 11. Focusing on Section 4252(a)(1)'s definition of "local telephone service" as the "privilege of telephonic quality communication with substantially all persons," the bankruptcy court interpreted the statute to "require[] that the taxpayer have the privilege to both initiate and receive telephonic quality communication." Id. at 11-12. Because the parties agreed that COBRA, as purchased, allowed for call reception but not call origination, the bankruptcy court concluded that the statute did not subject COBRA services to the Excise Tax.[3] Id. at 12-13.

The Opinion itself contained no order; rather it directed the Reorganized Debtors to "settle an order consistent with" the Opinion. Id. at 11. Accordingly, on June 27, 2007, the bankruptcy court entered an Order Granting Reorganized Debtors' Objection to Proof of Claim No. 38365 and Motion for a Determination of Refund Rights Pursuant to Section 505(a)(1) of the Bankruptcy Code (the "Excise Tax Order"). See Drori Dec., Exh. D. In addition to consolidating the Objection and the Refund Motion, the Excise Tax Order granted the Objection and expunged the IRS's Request for Payment. See id. at ¶¶ 1-2. While the Excise Tax Order also granted the Refund Motion, it did not specify any refund amount, and instead provided for further proceedings to determine the amount of refund due to the Reorganized Debtors. See id. at ¶¶ 3-4. On July 2, 2007, the IRS timely filed a Notice of Appeal from the Excise Tax Order

---

[3] As discussed infra at 22 n.14, the IRS argued as a matter of law that call origination was unnecessary to render COBRA services subject to the Excise Tax.

6

(the "IRS Appeal").[4]  See Drori Dec., Exh. E.

**ARGUMENT**

"[D]istrict courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; . . . and (3) with leave of the court, from other interlocutory orders and decrees . . ." of the bankruptcy courts.  28 U.S.C. § 158(a)(1), (3).  The Reorganized Debtors' motion to dismiss should be denied because the Excise Tax Order is a final order appealable as of right pursuant to Section 158(a)(1), or, in the alternative, because this Court should grant leave for a discretionary interlocutory appeal pursuant to Section 158(a)(3).[5]

## I.    The Excise Tax Order Is A Final Appealable Order Pursuant to 28 U.S.C. § 158(a)(1)

This Court should deny the Reorganized Debtors' motion to dismiss the IRS Appeal because the Excise Tax Order is a final order appealable as of right pursuant to 28 U.S.C. § 158(a)(1).  The Reorganized Debtors' argument to the contrary – that the Order is not a final order because it expressly provides for further proceedings as to the amount of tax refund – ignores the critical fact that the Excise Tax Order finally resolved the separate proceeding on the Objection, permanently expunging the IRS's Request for Payment.  See Excise Tax Order ¶ 2 ("The Reorganized Debtors' Objection is hereby granted, and Proofs of Claim Nos. 37947 and

---

[4] The IRS originally filed a Notice of Appeal on June 11, 2007, ten days after entry of the Opinion on the docket.  Because the Opinion contained no order, the IRS subsequently withdrew its original Notice without prejudice to re-filing upon entry of such an order.

[5] Because the IRS believed that the Excise Tax Order was a final order appealable as of right, it did not initially file a motion for leave to appeal pursuant to Federal Rule of Bankruptcy Procedure 8003(a).  Rule 8003(c), however, explicitly allows the district court to treat the IRS's timely-filed notice of appeal as a motion for leave to appeal and grant it, and the IRS respectfully requests that this Court do so if it does not conclude that the IRS may properly appeal the Excise Tax Order as of right.

7

38365 are hereby disallowed and expunged."); see also In re Pegasus Agency, Inc., 101 F.3d 882, 885 (2d Cir. 1996) ("A bankruptcy judge's order is final if it completely resolves all of the issues pertaining to a discrete claim, including issues as to the proper relief.") (quotations and citation omitted). There is no dispute that the additional proceedings provided for in the Excise Tax Order pertain only to the Refund Motion, and that the Order fully resolved the Objection by expunging the IRS's Request for Payment.

Where, as here, a decision in a consolidated matter does not fully dispose of all of the contested claims, the Second Circuit uses a case-by-case approach to determine whether the relevant order is final and appealable. While there is a "strong presumption" that such an order is not appealable in the absence of certification under Federal Rule of Civil Procedure 54(b), the Circuit has nevertheless held that the presumption may be overcome in "highly unusual circumstances." Hageman v. City Investing Co., 851 F.2d 69, 71 (2d Cir. 1988). The Second Circuit has not specified what constitutes a "highly unusual" case, but it has considered a number of factors, including whether the lower court demonstrated an intent to enter final judgment as to one of the consolidated claims, see Kamerman v. Steinberg, 891 F.2d 424, 429-30 (2d Cir. 1989), whether the cases were consolidated for all purposes or "only for limited purposes," Hageman, 851 F.2d at 71, and the "public interest in promoting judicial economy," id. at 72.

Each of these factors supports immediate appeal of the Excise Tax Order's final resolution of the Objection. First, the Excise Tax Order clearly evinces the bankruptcy court's intent to enter final judgment as to the Objection. Not only does the Order grant the Objection on the merits, but it also "disallow[s] and expunge[s]" the IRS's proofs of claim, see Drori Dec., Exh. D, ¶2, thus granting in full the relief sought by the Reorganized Debtors. Nor does the

8

Excise Tax Order direct further proceedings as to the Objection, instead providing only for proceedings to determine the amount of refund due under the Refund Motion. See id. at ¶ 4.

Second, even assuming that the consolidation could be effective after the Objection hearing was conducted, that consolidation served only "limited purposes," Hageman, 851 F.2d at 71, such that immediate appeal will not frustrate any broader ongoing purpose served by the consolidation. Specifically, the bankruptcy court never consolidated the Objection and the Refund Motion before it entered the Excise Tax Order itself, yet that same order simultaneously completely resolved the Objection and thus left no aspect of the Objection pending and available to be consolidated with the separately filed Refund Motion. See Drori Dec., Exh. D, ¶ 1. Moreover, in contrast to Hageman where the district court's consolidation of plaintiff's separately filed employment-related claims occurred prior to dispositive motion practice, see Hageman, 851 F.2d at 70-71 (finding order not immediately appealable because, among other reasons, consolidation effected for more than just limited purposes), the Objection and the Refund Motion were not consolidated until after the parties had litigated the Objection through informal document discovery, extensive expert discovery, and several rounds of briefing. Nor did consolidation serve the purposes of trial since the Reorganized Debtors only filed their Refund Motion on the day before the February 1 Hearing, which the bankruptcy court ordered be limited to consideration of "the relief requested in the Objection," Drori Dec., Exh. B, ¶ 1, and at which neither party introduced testimony or other evidence specifically directed to the Refund Motion. Accordingly, whatever purpose is served by the purported consolidation is necessarily limited and is not an impediment to immediate consideration of the instant appeal.

Third, judicial economy would be served by an immediate appeal. Since the bankruptcy

9

court has already decided the central and determinative legal issue at the heart of both the Objection and Refund Motion (i.e., the applicability of the Excise Tax to COBRA services), an immediate interlocutory appeal of the bankruptcy court's decision regarding the Objection would yield a final decision on the legal issue underlying both disputes. Indeed, a reversal on appeal would necessarily hold COBRA services subject to the Excise Tax and would thereby resolve the Refund Motion as well by mooting it – thus sparing the courts and the litigants potentially protracted and time-consuming litigation concerning tax computations and credits. Judicial economy also may be furthered even if this Court were to affirm the bankruptcy court on an interlocutory appeal, since the elimination of uncertainty as to whether the Excise Tax applies may facilitate a consensual resolution.[6]

Accordingly, this Court should deny the Reorganized Debtors' motion to dismiss because all of the factors previously considered by the Second Circuit in determining the finality of an order in a consolidated matter support immediate appeal.

## II.    In the Alternative, This Court Should Grant Leave For A Discretionary Interlocutory Appeal Pursuant to 28 U.S.C. § 158(a)(3)

As the Second Circuit itself has recognized, its case-by-case approach for assessing the

---

[6] In assessing the finality of a bankruptcy court order for purposes of appeal, the Second Circuit has also considered whether or not the separate claims could originally have been brought as a single action, see Hageman, 851 F.2d at 71, a factor that supports immediate appeal here. As discussed infra at 16-19, there was no applicable waiver of sovereign immunity for, and no subject matter jurisdiction over, the Refund Motion, which therefore could never have been properly brought in combination with the Objection. The sovereign immunity and jurisdictional questions are discussed in the next section because, while a finding by this Court that sovereign immunity and/or jurisdiction did not exist over the Refund Motion would certainly bolster the argument for finality, such a finding is not required for the Court to conclude that the Excise Tax Order is final and appealable as of right. Moreover, this Court need not reach these issues if it grants leave for interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3), without making a finality determination.

finality of decisions in consolidated matters does not provide litigants with the "clearest possible guidance" to ensure that "opportunities to file timely notices of appeal are preserved." <u>Hageman</u>, 851 F.2d at 71. A failure by the IRS to timely appeal the Excise Tax Order could have grave consequences that might preclude any future appeal as to the more than $16 million of Excise Tax at issue in the Objection, and dismissal by this Court may not preclude the Second Circuit from deciding in a future appeal from a subsequent order that the IRS is too late in appealing. While application of the <u>Hageman</u> standards indicates that the Excise Tax Order is immediately appealable, <u>see supra</u> at 8-10, this Court need not so determine to entertain the appeal. Instead, it may exercise its discretion under 28 U.S.C. § 158(a)(3) to grant "leave" for immediate interlocutory review of the Excise Tax Order.

A.      **The Standard Governing Section 158(a)(3) Determinations**

The Reorganized Debtors incorrectly assume that this Court must employ the test set forth in 28 U.S.C. § 1292 (governing interlocutory review of non-final district court orders by the courts of appeal) in determining whether to grant leave to appeal from a non-final bankruptcy court order pursuant to Section 158(a)(3). <u>See</u> Reorganized Debtors' Brief ("Br.") at 6-7. The modern trend in case law commencing in the late 1990s recognizes, however, that district courts in fact have much broader discretion to grant interlocutory appeal of bankruptcy court decisions under Section 158(a)(3) than has traditionally been provided to courts of appeal under Section 1292(b). <u>See, e.g.</u>, <u>Mishkin v. Ageloff</u>, 220 B.R. 784, 790-91 (S.D.N.Y. 1998) (endorsing a more flexible approach to granting interlocutory appeals under Section 158(a)(3) because, among other reasons, "the concept of finality is viewed with greater flexibility in the bankruptcy context" and a flexible approach "takes into account th[e] broader jurisdiction" that district courts have over

11

bankruptcy appeals and does "not automatically tie[ district courts] to a standard that is designed

to limit, in a different context, the number of appeals to the Court of Appeals")); In re Orange

Boat Sales, 239 B.R. 471, 474 (S.D.N.Y. 1999) (observing that courts "have recognized the

limitations of [the § 1292(b)] analysis and have found the standards of § 1292(b) inappropriate

and have adopted a more flexible approach"); see also In re Moix-McNutt, 215 B.R. 405, 408 n.6

(B.A.P. 8th Cir. 1997) ("Given our broad jurisdiction over interlocutory orders, we are not

constrained to follow the standards established for the courts of appeals."); In re Hayes

Bankruptcy, 220 B.R. 57, 59 (N.D. Iowa 1998) (observing that nothing in the "statutory or

constitutional relationship between district and bankruptcy courts" indicates a limit on the district

court's discretion in this area, and that the structural relationship between the two courts is

evidence of district courts' broad discretion to hear interlocutory appeals); In re Williams, 215

B.R. 289, 298 n.6 (D.R.I. 1997), further appeal dismissed on other grounds, 156 F.3d 86 (1st Cir.

1998) (finding that because district courts exercise plenary authority over bankruptcy cases,

retaining the power to refer cases to, and to withdraw them from, the bankruptcy courts, see 28

U.S.C. § 157(d), it is unlikely that Congress intended to limit district courts' power to hear

interlocutory appeals; further noting the imperfection of the analogy of using Section 1292(b) as

a surrogate standard in bankruptcy and calling a decision to do so "jurisprudential and not

jurisdictional"). Other courts borrowing in part from Section 1292(b) "have also reasoned that

discretion under section 158(a)(3) is greater than that afforded under section 1292(b)." In re

Jackson Brook Inst., Inc., 227 B.R. 569, 581-82 (D. Me. 1998) (citing cases).

   While there are no doubt cases – and particularly older ones – that import the test from

Section 1292(b), this Court should not rely on those cases for two reasons. First, those cases run

contrary to the well-settled principle that statutes be interpreted in accordance with their plain language. See, e.g., Leocal v. Ashcroft, 543 U.S. 1, 8 (2004); Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). While Section 1292(b) limits interlocutory appeal to district court orders which "involve[] a controlling issue of law as to which there is substantial ground for difference of opinion and . . . [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation," Section 158(a)(3) authorizes appeal of interlocutory bankruptcy court orders simply "with leave of the court."

Second, importing the Section 1292(b) requirements to Section 158(a)(3) determinations fails to recognize fundamental differences in the relationship between the district and bankruptcy courts, as opposed to that between the circuit and district courts; more broadly, applying the same standard would be inconsistent with the circumstances of the 1984 bankruptcy law amendments that enacted Section 158. Those amendments occurred at a time when Congress was debating the proper scope of authority for an Article I bankruptcy judge, following the Supreme Court's determination that the broad grant of jurisdiction to bankruptcy judges in the Bankruptcy Reform Act of 1978 violated Article III of the Constitution.[7] See Northern Pipeline Constr. Co. v.

_____

[7] Section 216 of Senate Bill 2266 in 1978 would have made all "final decisions and interlocutory orders of the bankruptcy court" automatically appealable to Article III judges of the district court. See S. Rep. No. 95-989, at 154-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5940. The House's rejection of that approach, in favor of delegating the judicial power to Article I bankruptcy judges, contributed to the constitutional defect found by the Supreme Court in Northern Pipeline. The jurisdictional provisions were then revamped in 1984, giving district judges unrestricted discretionary authority to hear appeals from interlocutory orders by the Article I bankruptcy judges. See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 104, 98 Stat. 333 (1984); see also Bankruptcy Reform Act of 1994, Pub L.

13

Marathon Pipe Line Co., 458 U.S. 50 (1982). Congress's choice of words may therefore reflect the fact that, unlike the relationship between courts of appeals and district courts, district courts exercise plenary authority over bankruptcy cases, retaining the power to refer cases to, and to withdraw them from, the bankruptcy courts. See 28 U.S.C. § 157(d). The fact that bankruptcy courts are "units" of the district court, 28 U.S.C. § 151, and that bankruptcy judges are not appointed under Article III also reduces the likelihood that Congress intended to limit the district court's power to hear interlocutory appeals. Finally, the language of Section 158(a)(3) may also reflect a recognition that the courts of appeals are fewer in number and should not have their dockets engaged as readily as the district courts' dockets. Taken together, these factors point to a broader grant of discretion to district courts to review interlocutory orders of bankruptcy judges.

**B.    This Court Should Grant Interlocutory Appeal Under The Broad Discretionary Standard**

Interlocutory review of the Excise Tax Order is warranted under this broad discretionary standard for all of the reasons already discussed supra at 8-10, including the potential for an immediate termination of the entire matter, as well as for the reasons further discussed infra at 21-25, such as the fact that the applicability of the Excise Tax to COBRA services is a matter of first impression not only in this Circuit but also in any court of appeals.[8]

This Court should exercise its discretion in favor of appeal for two additional important

---

No. 103-394, § 102, 108 Stat. 4106 (1994) (further non-substantive amendment to delineate the three numbered sub-headings appearing in the current statute). The history indicates that the broad availability of appeals from bankruptcy to district courts is part of what makes the grant of authority to Article I bankruptcy judges constitutional, just as there must be review by district judges of all rulings by magistrate judges (absent a waiver by the parties).

[8]  The issue is presently being briefed before the Federal Circuit on appeal from USA Choice Internet Serv., LLC v. United States, 73 Fed. Cl. 780 (2006).

reasons. First, in the absence of interlocutory review, the IRS may be precluded from ever

obtaining substantive review of the Excise Tax Order in the Second Circuit, even if it were to re-

file its appeal after the bankruptcy court adjudicated the tax refund amount. If this Court decides

that the Excise Tax Order is not a final order appealable under Section 158(a)(1) and declines to

grant a discretionary appeal under Section 158(a)(3), the IRS may be precluded from Second

Circuit review of at least part of that ruling. See, e.g., In re Kassover, 343 F.3d 91, 94-95 (2d

Cir. 2003) (court of appeals lacks jurisdiction to review a district court's denial of interlocutory

review of a bankruptcy court order pursuant to 28 U.S.C. § 158(a)(3)). Thus, if this Court were

to dismiss the IRS's appeal and the IRS were unable to secure review by the Circuit,[9] the IRS

would have no recourse but to litigate the refund issue in the bankruptcy court, wait for the

bankruptcy court's decision, and then re-file its appeal in the district court and subsequently, if

necessary, in the Second Circuit. At that time, the Second Circuit would of course have to

consider its own jurisdiction before considering the merits of an appeal. See, e.g., Mitskovski v.

Buffalo and Fort Erie Pub. Bridge Auth., 435 F.3d 127, 133 (2d Cir. 2006) ("[A] court must

satisfy itself that it has subject matter jurisdiction . . . ."). Because this Circuit employs an

admittedly ambiguous test for determining the finality of orders in consolidated matters, see

supra at 8-10 (discussing the Hageman standard), the Second Circuit may at that time disagree

_____

[9] In light of the amount of Excise Tax at issue and because of the ambiguity of the IRS's
appeal rights, the IRS would probably wish, if authorized by the Solicitor General, to appeal this
Court's ruling to the Second Circuit in order to protect fully its appeal rights on the underlying
legal issue. Whether or not any further appeal is taken, judicial economy at the bankruptcy,
district, and circuit court levels would be better served by resolving the legal issue through an
immediate interlocutory appeal, as opposed to requiring detailed fact-intensive litigation about
the amount due if any, followed by appeals based on a more voluminous record that will shed no
light on the underlying legal issue, while requiring the briefing of additional issues on appeal.

15

with this Court's analysis, determine that the Excise Tax Order meets the <u>Hageman</u> standard, and thus potentially be forced to dismiss the IRS's re-filed appeal as untimely.

Thus, because of the ambiguity of the case-by-case approach in this Circuit, the IRS may be incurably prejudiced if forced to wait to appeal the Excise Tax Order until after the bankruptcy court adjudicates the refund amount. In contrast, an immediate discretionary interlocutory appeal would eliminate the need for this Court to make a determination under <u>Hageman</u>, remove the potential for incurable prejudice to the IRS, and threaten no comparable prejudice to the Reorganized Debtors. A successful appeal would also save the parties and the courts the burden of pointlessly litigating the tax refund amount, and an unsuccessful immediate appeal would eliminate substantial uncertainty and thus may simplify the dispute's resolution, whether consensual or litigated.

Second, this Court should exercise its discretion in favor of an immediate interlocutory appeal because the Department of Justice will otherwise be constrained in the proceedings before the bankruptcy court on the tax refund amount to raise immunity and jurisdictional defenses that have recently come to the IRS's attention in this case and that the Department of Justice has raised in tax cases in other circuits. An immediate appeal would therefore serve the interests of judicial economy by delaying and possibly avoiding briefing on these issues, which are collateral to the applicability of the Excise Tax.

Specifically, in the absence of an interlocutory appeal, the IRS would be constrained to argue to the bankruptcy court that the United States has not waived its sovereign immunity for tax refund suits by post-confirmation Reorganized Debtors, an argument that the Department of Justice has previously made, albeit unsuccessfully, in one other circuit whose decision the

16

Department maintains was erroneous on this issue, and which is also distinguishable from the instant case. See In re Gordon Sel-Way, Inc., 270 F.3d 280 (6th Cir. 2001). The gravamen of the immunity argument is that while Section 106 of Title 11 abrogates sovereign immunity "to the extent set forth in" that section "with respect to" various listed provisions (including Section 505, the asserted basis of the Refund Motion) and also provides for a monetary recovery where a monetary recovery is otherwise available under one of the listed sections, see 11 U.S.C. §§ 106(a)(1), (3), the statutory language does not cover a post-confirmation suit for a tax refund by a debtor's successor in interest because Section 505(a)(2) specifically refers only to a "trustee's" right to claim a tax refund for the bankruptcy "estate" and, if necessary, sue for that refund. 11 U.S.C. § 505(a)(2)(B); see also In re Rivera Torres, 432 F.3d 20, 24-25 (1st Cir. 2005) (applying the rule that all "ambiguities [be] construed against waiver" of sovereign immunity to one of the Bankruptcy Code provisions listed in 11 U.S.C. § 106(a)(1)); Adeleke v. United States, 355 F.3d 144, 150 (2d Cir. 2004) (waiver of sovereign immunity may not be implied but rather exists only when Congress has "unequivocally expressed [the waiver] in statutory text") (internal quotations omitted). Where, as here, a bankruptcy "estate" has ceased to exist by virtue of a confirmed reorganization plan, and there is no longer any trustee but rather a reorganized debtor, it is not possible for the bankruptcy court to adjudicate the "right of the estate to a tax refund." 11 U.S.C. § 505(a)(2)(B); see also Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1 (2000) (limiting standing to a bankruptcy "trustee" when that is what the applicable Code section dictates, even where sovereign immunity is not implicated).[10] Instead, in such circumstances, the

---

[10] Under 11 U.S.C. § 1107, a "trustee" also includes a "debtor in possession," but the post-confirmation Reorganized Debtors are no longer debtors in possession.

plain language of Section 505(a)(2)(B) demonstrates that Congress expected that tax refund suits

would be filed in the district courts or Court of Federal Claims under 28 U.S.C. § 1346(a)(1) or

§ 1491 and 26 U.S.C. § 7422(a), for which waivers of sovereign immunity exist.[11]

   This argument is not based on hollow technicalities; it reflects a reasoned desire to restrict

the bankruptcy court's jurisdiction to matters that actually affect the conduct of a bankruptcy, and

to avoid permitting reorganized debtors to secure indefinite access to bankruptcy courts to

address disputes that serve no ongoing bankruptcy purpose.  Accordingly, in the absence of an

immediate appeal, the IRS would also be constrained to move to dismiss the Refund Motion in

the bankruptcy court for lack of subject matter jurisdiction.  See, e.g., Ward v. Brown, 22 F.3d

516, 519 (2d Cir. 1994) ("subject matter jurisdiction may be raised any time").  It is well settled

---

   [11]  The Sixth Circuit's decision in Gordon Sel-Way employs flawed analysis and is also
distinguishable.  First, the court acknowledged that the government's Section 505(a)(2)(B)
argument has "a certain linguistic appeal," 270 F.3d at 286, but it rejected a literal reading in
favor of relying on dubious legislative history and policy considerations.  That approach,
however, flies in the face of the rule requiring strict construction of statutory waivers of
sovereign immunity.  There is nothing ambiguous about the words "trustee" and/or "estate" in
Section 505(a)(2)(B), and therefore no occasion to turn to legislative history.  The Sixth Circuit
also focused on Section 505(a)(1), see id. at 285, but that provision regards unpaid tax claims
against the debtor or the estate, and not refund claims against the government.  To construe it
otherwise is to render Section 505(a)(2)(B) – the explicit refund provision – superfluous.
Additionally, Gordon Sel-Way is distinguishable because in that case, the original debtor (not a
reorganized debtor) brought the refund claim relatively quickly after confirmation and incident
to a plan of liquidation rather than one of reorganization.  See id. at 283.  In that context, where the
plan merely consisted of the debtor liquidating its assets and paying off creditors, much as would
occur in a Chapter 7 liquidation by a bankruptcy trustee, the Sixth Circuit concluded that the
government was presenting a hypertechnical distinction between the former debtor in possession
and an other otherwise identical post-confirmation debtor, and further concluded that the
bankruptcy estate really continued to exist for purposes of immediate liquidation and distribution.
Id. at 286-87.  Here, there was a plan of reorganization rather than mere liquidation, there is a
Reorganized Debtor that is markedly different form the pre-confirmation entity, and the Refund
Motion was filed almost two years after confirmation and not for purposes of merely liquidating
an asset of the bankruptcy estate for immediate distribution to other bankruptcy claimants.

that a bankruptcy court generally has jurisdiction only over those disputes that invoke a

substantive right under title 11 or could only arise in the context of a bankruptcy estate.  In re

General Media, Inc., 335 B.R. 66, 72 (Bankr. S.D.N.Y. 2005) (discussing "core proceedings");

see also 28 U.S.C. § 157(b)(1).  Here, the Reorganized Debtors filed the Refund Motion almost

two years after the confirmation plan became effective in April 2004 – a plan that vested the

estate in the Reorganized Debtors – and the Chapter 11 bankruptcy estate had therefore long

ceased to exist.  See General Media, 335 B.R at 73 ("once confirmation occurs, the bankruptcy

court's jurisdiction shrinks"); see also Pettibone Corp. v. Easley, 935 F.2d 120, 122 (7th Cir.

1991) (after confirmation, a reorganized debtor "may not come running to the bankruptcy judge

every time something unpleasant happens," even where the matters at issue turn on bankruptcy

law (and here the issue turns on tax law)).  Thus, the adjudication of a post-confirmation tax

refund claim brought by the Reorganized Debtors is not one that could only arise in the context

of a bankruptcy case, see 28 U.S.C. § 1334(b), 28 U.S.C. § 157(b), but rather is a quintessential

non-bankruptcy cause of action that could readily arise outside the bankruptcy case.  See General

Media, 335 B.R. at 74 ("[T]he outcome of a post-confirmation proceeding cannot affect the

estate.") (citing In re Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004)); see also In re Gardner,

913 F.2d 1515, 1518 (10th Cir. 1990) ("Actions which do not depend on the bankruptcy laws for

their existence and which could proceed in another court are not core proceedings.").  In short,

the Reorganized Debtors should have filed the Refund Motion as an ordinary tax refund suit in

either the district court or the Court of Federal Claims.[12]

--------

[12]  At best, the bankruptcy court has jurisdiction over the Refund Motion as a non-core
proceeding "related to" a case under title 11, 28 U.S.C. § 157(c)(1), assuming the Reorganized
Debtors could show that the outcome of the Refund Motion has a "conceivable effect" on the

All of this motion practice promises to substantially burden the parties and the courts, yet it can be avoided by the grant of leave to take an immediate appeal. By granting immediate review of the applicability of the Excise Tax to the COBRA services without regard to whether the bankruptcy court's order would otherwise be appealable as of right, this Court would not only avoid potentially devastating prejudice to the IRS's rights but also obviate the need for further protracted briefing on collateral issues in the bankruptcy court. Accordingly, if this Court does not rule that the Excise Tax Order was final and appealable as of right with respect to the Objection, it should exercise its discretion and grant interlocutory review.[13]

### C.      Interlocutory Appeal Is Warranted Even Under The Section 1292(b) Test

Even if this Court were to apply the requirements of Section 1292(b) to its Section 158(a)(3) determination, it should grant interlocutory review of the Excise Tax Order because that order "involves a controlling issue of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Moreover, an appeal in this matter presents exactly the type of "exceptional circumstances" deemed necessary by some courts to warrant interlocutory review. See, e.g., In re Alexander, 248 B.R. 478, 483 (S.D.N.Y. 2000).

---

estate, Publicker Indus., Inc. v. United States, 980 F.2d 110, 114 (2d Cir. 1992). Since there is no longer any bankruptcy "estate," it is unclear how this could test could be met. In any event, even if "related to" jurisdiction exists, the bankruptcy court would still be limited to rendering proposed findings of fact and conclusions of law to the district court, which would render a final judgment. See 28 U.S.C. § 157(c)(1).

[13] Of course, if this Court agrees that there is no statutory waiver of sovereign immunity for – or no subject matter jurisdiction over – the Refund Motion in the bankruptcy court, then it may so rule immediately and that would render the Excise Tax Order indisputably final and appealable as of right.

### 1.    The Appeal Involves A Controlling Issue of Law

In order to establish that an order involves "a controlling issue of law," the Second Circuit requires a showing either that (1) a reversal of the bankruptcy court's order would terminate the action, or that (2) a determination of the issue on appeal would materially affect the outcome of the litigation. Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990); see also In re WorldCom, Inc. Sec. Litig., 02 Civ. 3288 (DLC), 2003 WL 22953644, at *4 (S.D.N.Y. Dec. 16, 2003) ("[W]hile a question of law is clearly controlling if a reversal of the district court's order would terminate the action, an issue can be 'controlling' even if it would not necessarily result in the termination of the action.") (citing Klinghoffer, 921 F.2d at 24). This first prong is easily satisfied here since a reversal of the Excise Tax Order would necessarily terminate the entire litigation: the Refund Motion would be moot. See supra at 9-10.

Nor can the Reorganized Debtors undercut the applicability of this first prong by arguing that because the bankruptcy court's factual findings were "integral" to its ruling on liability, the Excise Tax Order involves no "controlling" legal issue that this Court can "'decide quickly and cleanly without having to study the record.'" See Br. at 7 (quoting MCI WorldCom Communications v. Communications Network Int'l, Ltd., 358 B.R. 76, 79 (S.D.N.Y. 2006)). To the contrary, the bankruptcy court itself explicitly based its determinations on uncontested facts. See Drori Dec., Exh. C , at 11 (noting that it "need not resolve" the various factual disputes between the parties since "a sufficient basis in uncontested fact exists to resolve the Objection and the Refund Motion in favor of the [Reorganized] Debtors") (emphasis supplied). Moreover, the core of the bankruptcy court's decision – that the Excise Tax does not apply to COBRA services – turned on a purely legal issue of statutory interpretation. Specifically, after concluding

as a matter of law that the "privilege" of telephonic quality communication referred to in 26 U.S.C. § 4252(a) is limited only to those services actually purchased by a taxpayer, see Drori Dec., Exh. C, at 9-10, the bankruptcy court interpreted the use of the word "with" in Section 4252(a), see 26 U.S.C. § 4252(a) (referring to the "privilege of telephonic quality communication with substantially all persons . . . "), as "suggest[ing] that the concept of privilege incorporates some element of directionality," Drori Dec., Exh. C, at 12. Based on that legal interpretation, the bankruptcy court concluded that the Excise Tax applies only where a taxpayer has the privilege of both initiating and receiving telephonic quality communication. Id. Because there is no dispute that the COBRA services, as purchased, allowed for call reception but not origination, the bankruptcy court held the Excise Tax inapplicable.[14] Id. at 12-13.

## 2.    A Substantial Ground For Difference of Opinion Exists

This Court should also grant leave for interlocutory review because there is a "substantial ground for difference of opinion" regarding the applicability of the Excise Tax to COBRA or COBRA-like services. While this prong requires "more than strong disagreement between the parties," Alexander, 248 B.R. at 483, the Second Circuit has held that it is satisfied where the disputed legal issue is "difficult and of first impression," Klinghoffer, 921 F.2d at 25. As discussed supra at 14, the applicability of the Excise Tax is a matter of first impression both in this Circuit and in any court of appeals.

---

[14] While not disputing that the COBRA services purchased were not configured to permit call origination, the IRS argued as a matter of law that (i) call origination is unnecessary for the Excise Tax to apply to COBRA services because those services nonetheless include telephonic quality communications, or at least a telephonic quality communications path capable of telephonic quality communication; and (ii) because COBRA services are capable of call origination with only minimal reconfiguration, the Reorganized Debtors' choice as a matter of business judgment not to use them for that purpose does not exempt them from the tax.

22

The Second Circuit has also deemed the presence of a question of first impression, without more, insufficient to satisfy this prong, directing courts additionally to "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a <u>substantial</u> ground for dispute." <u>In re Flor</u>, 79 F.3d 281, 284 (2d Cir. 1996) (emphasis in original). This Court has found a substantial ground for dispute where the contested legal issue was both a matter of first impression and the subject of a split among district courts in other circuits. <u>See</u> <u>In re WorldCom</u>, 2003 WL 22953644, at *5-6; <u>see also</u> <u>In re Johns-Manville Corp.</u>, 45 B.R. 833, 836 (S.D.N.Y. 1984) (granting leave for interlocutory appeal from bankruptcy court order where district courts outside of the Southern District of New York had rejected the bankruptcy court's approach).

Just such a split in district-level courts exists here. While no district court in the Second Circuit has addressed the applicability of the Excise Tax to COBRA-like services, there is a split among district-level courts in the Federal Circuit. Specifically, in November 2006, one judge on the Court of Federal Claims – whose decision was relied on by the bankruptcy court in this case – held that COBRA-like services configured only to receive calls, not to originate them, were not subject to the Excise Tax because the word "with" in 26 U.S.C. § 4252(a) connoted "reciprocity" and therefore imposed the Excise Tax only where a service was configured for both incoming and outgoing calls. <u>USA Choice Internet Serv., LLC v. United States</u>, 73 Fed. Cl. 780, 792-95 (Fed. Cl. 2006). The <u>USA Choice</u> court relied for its statutory interpretation on no authority other than a dictionary definition of "with," <u>see id.</u> at 792, and it is this interpretation that formed the basis for the bankruptcy court's reasoning below. <u>See</u> Drori Dec., Exh. C, at 11-12 (relying exclusively on the <u>USA Choice</u> rationale).

23

In contrast, another judge on the Court of Federal Claims last month rejected the <u>USA Choice</u> rationale in a comprehensive opinion that alone highlights the "strength of the arguments in opposition," <u>Flor</u>, 79 F.3d at 284, to the bankruptcy court's Opinion. <u>See Comcation, Inc. v. United States</u>, – Fed. Cl. – , 2007 WL 2389395 (Fed. Cl. Aug. 17, 2007). The <u>Comcation</u> court rejected the <u>USA Choice</u> court's statutory interpretation as "too rigid" because it failed to comport with "the ordinary understanding of the word 'with,'" and "clashes with how Congress has employed th[e] phrase ['communication with'] in several other statutes." <u>Comcation</u>, 2007 WL 2389395, at *6-10. The <u>Comcation</u> court also found the <u>USA Choice</u> rationale unsupported by the structure of Section 4252 itself, concluding after an exhaustive discussion of the statute's legislative history that nothing in that history showed any basis for requiring "reciprocity" in order to apply the Excise Tax. <u>Id.</u> at *7-10 ("[T]he history buttresses the most natural reading of the statute – one that does not require reciprocity in terms of who may initiate a call."). As a result, the court concluded that the Excise Tax applies to those services that, as purchased, are configured only to receive calls. <u>Id.</u> at *4-10.

Thus, the IRS Appeal satisfies the second prong of the Section 1292(b) standard not only because the central legal issue presents a matter of first impression in this Circuit and is the subject of a split among district courts in another circuit, but also because there are strong arguments against the bankruptcy court's reasoning.

### 3.    An Appeal Would Materially Advance the Termination of this Litigation

Finally, and as already discussed <u>supra</u> at 9-10, 20, 21, an interlocutory appeal would clearly "materially advance the termination of the litigation." <u>See, e.g., Klinghoffer</u>, 921 F.2d at

24

25; see also In re Beker Indus. Corp., 89 B.R. 336, 341 (S.D.N.Y. 1988) ("Leave to appeal [under § 158(a)] is to be liberally granted where it can help the expeditious resolution of the case."). Interlocutory appeal may serve to avoid not only pointless and involved proceedings to set the amount of a refund that might ultimately be held not to be owed, but also would avoid difficult issues of sovereign immunity and subject matter jurisdiction. Nor would even an unsuccessful immediate appeal waste judicial resources in the event of a future appeal on the refund issue since that hypothetical subsequent appeal would be limited to the separate matters at issue in the refund action.

***

In sum, this appeal amply demonstrates the type of "exceptional circumstances" that warrant immediate interlocutory review of the Excise Tax Order: among other things, the central legal issue is the subject of a split among lower courts in the Federal Circuit and presents a matter of first impression in this – or any – Circuit; a reversal on appeal would terminate the entire litigation and thus avoid additional and possibly protracted litigation in the bankruptcy court; and a denial of interlocutory review could severely prejudice the IRS by possibly precluding any review of the bankruptcy court's decision by the Second Circuit. See, e.g., Klinghoffer, 921 F.2d at 25. Accordingly, if this Court does not conclude that the Excise Tax Order is a final order appealable as of right, it should grant leave for an interlocutory appeal pursuant to Section 158(a)(3).

25

## CONCLUSION

For the reasons stated above, this Court should deny the Reorganized Debtors' motion to

dismiss the IRS Appeal.


Dated: New York, New York                 Respectfully submitted,
      September 12, 2007

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Internal Revenue Service

By: _____
DANNA DRORI
Assistant United States Attorney
Telephone: (212) 637-2689
Facsimile: (212) 637-2686

26

CERTIFICATE OF SERVICE

      I, Danna Drori, an Assistant United States Attorney for the Southern District of New York, hereby certify that on September 12, 1007, I caused a copy of the foregoing "Opposition of the Internal Revenue Service to Reorganized Debtors' Motion to Dismiss Appeal or for an Order Denying the Internal Revenue Service Leave to File an Interlocutory Appeal" to be served by email and first class mail upon the following:

      Alfredo R. Perez, Esq.
      Weil, Gotshal & Manges LLP
      700 Louisiana, Suite 1600
      Houston, Texas 77002

Dated:      New York, New York
            September 12, 2007

DANNA DRORI