# Cobra Service

*Summary of Arguments*

**(1)  No right (privilege) to use telephone service;**

**(2)  Not capable of telephonic (voice) quality communication;**

**(3)  No communications with people that have telephones; and**

**(4)  It is a private communication service.**

13

# COBRA Service

*No Right (privilege) to Use Telephone Service*

## With COBRA Service

- It is impossible to plug in a telephone

- It is impossible to make a telephone call

- It is impossible to receive a telephone call

- It is impossible to talk to people that have telephones

14

# COBRA Service

*No Right (privilege) to Use Telephone Service*

The Reorganized Debtors Did Not Have The Right To
Reconfigure Cobra Service Into A Telephone Service

- Under the contracts, the LECs' systems ended at the output port of the NAS.

- No authority or ability to make physical modifications to the COBRA equipment.

- "It was behind central office's locked doors."  John Anderson (Tran. 77:19-20)

- Dr. Hills even agreed – if you replaced the NAS with some other device (such as a PBX) you would no longer be purchasing COBRA service. (Tran. 199:18-20)

15

# COBRA Service

*No Right (privilege) to Use Telephone Service*

- In any event, the "right" to purchase some other service is completely irrelevant under section 4251(a)(1).

- Excise tax is only imposed on "AMOUNTS PAID FOR" local telephone service.

- Excise tax is *not* imposed on services that merely *could have been* purchased.

16

# COBRA Service

*Not Capable of Telephonic Quality Communications*

- The government's definition of telephonic quality communication:

  "the set of characteristics that allow a pair of people to be able to conduct a conversation and hear each other satisfactorily."  Dr. Hills (Tran. 154:13-17)


- Although you need a telephonic quality path in order to "conduct a conversation," a telephonic quality path and telephonic quality communication "are two different things that are not equivalent." John Anderson (Tran. 69:10-11)

17

# COBRA Service

*Not Capable of Telephonic Quality Communications*

- A telephonic quality path requires 64 kilobytes per second of digitized data for voice communications.  John Anderson (Tran. 83:22-24)

- "The COBRA platform was dial-up data or low speed data on input, [and] a platform at low speed . . . is not capable of carrying voice." John Anderson (Tran. 83:18-21)

- Technologically impossible to use COBRA service for voice communications– "It would be garbled or it would be noise."  John Anderson (Tran. 135:18)

- "It is impossible to put voice over this, telephonic quality voice."  John Anderson (Tran. 74:11-12)

18

# COBRA Service

*No Communications with People that have Telephones*

- Telephone service
    - uses time-division multiplexing (TDM) technology and TDM switches
    - gives the subscriber a dial tone for telephone calls
    - comes with a telephone line and jack for a telephone to plug into

    *This is completely different from COBRA service which uses Internet protocols for high-speed data transfers.*

19

# COBRA Service

*No Communications with People that have Telephones*

- The LECs did not design COBRA service for a telephone user to dial up and access the COBRA system.  Dr. Hills (Tran. 197:23-198:6)

- If a telephone user called a number associated with COBRA service, they would hear "an annoying screech."  Dr. Hills (Tran. 168:23-169:6)

- Wrong protocol (TCP/IP instead of TDM)

- No dial tone or ability to originate telephone calls

- No telephone line or telephone jack (just high-speed data port)

- Impossible to plug a telephone into the output port of the NAS

- Impossible to plug a telephone into a high-speed data line

- Impossible to receive a telephone call

- Impossible to make a telephone call

20

# COBRA Service

*IRS Arguments*

Reorganized Debtors are subject to excise tax because:

- **Argument 1:** dial-up users use a voice quality path to connect computer modem to LEC network access server and precedent says modem to modem calls are taxed.

- **Argument 2:** COBRA service "provided in connection with a local telephone system" and is taxable under 4252(a)(2).

- **Argument 3:** COBRA service can be used for computer to computer voice communications by transmitting voice packets.

- **Argument 4:** Components in the COBRA system could be used for voice communications, but the LECs' configuration of those components is a self-imposed limitation (by the Reorganized Debtors) on it's use.

- **Argument 5:** The 1965 Act does not include an exemption for voice capable systems that are used to transmit data.

21

# COBRA Service

*The Law*

- Tax imposed "shall be paid by the person paying for such services"

- Where service at issue does not offer taxpayer the right
  to plug into a telephone jack or communicate with other persons
  having telephones, that service is not local telephone service and
  excise tax does not apply.

- Each of the IRS's arguments misconstrues the factual setting and
  legal significance of precedent .

22

# Response To The Government's Arguments

**Argument 1**

### Dial-up Users Have The Privilege Of Telephonic Quality Communication With The Local Exchange Carrier

- Whether a third-party has the privilege is entirely irrelevant to whether the Reorganized Debtors should be taxed.

- Section 4251(a)(2) requires payment of tax by "the person paying for" one of the three taxable services.

- No basis for imputing the Dial-up User's privilege to the Reorganized Debtors.

- The Reorganized Debtors are not paying for the Dial-up Users' local telephone service and therefore cannot be taxed on that basis.

- And Revenue Ruling 79-245 regarding modem to modem communication does not support the government's position.

23

# COBRA Service

*IRS Revenue Ruling 79-245*

| Dial-Up Modems and Computer Terminal | *Telephone Line* | Dial-Up Modems and Computer Terminal |
|---|---|---|

- modem converts computer signals into signals capable of transmission over telephone lines
- modem designed only for non-voice transmission
- modem produced signal usable only for transmission to other computer terminals
- telephone lines capable of voice transmissions

- Ruling:
  - "By plugging in a regular[] telephone set, if it so chooses, it may exercise the privilege of telephonic quality (voice) communication with substantially all persons having telephones in the local system . . . ."
  - Because the taxpayer could (1) plug in a telephone, and (2) talk to other people who have telephones, the service was local telephone service.

24

# COBRA Service

*IRS Revenue Ruling 79-245*

| Dial-Up Modems and Computer Terminal | *Telephone Line* | Dial-Up Modems and Computer Terminal |
| --- | --- | --- |

- The Rev. Rul. 79-245 Issue:
  - Taxpayer argued that it should not have to pay tax because it unplugged its telephone and only used the telephone jack with its computer modem.
  - But when a taxpayer purchases local telephone service, it cannot avoid excise tax simply by electing not to use the service for telephone calls.

- Relevance To Cobra Service:
  - COBRA service does not allow the purchaser to (1) plug in a telephone, or (2) talk to other people who have telephones
  - COBRA service is used exactly how the LECs provide it.
  - Limitations on the capabilities of a service that are imposed by the vendor (*i.e.* the LECs) are not self-imposed.

25

# Response To The Government's Arguments

**Argument 2**

### COBRA Service Is A Facility Used In
### Connection With A Local Telephone System

- Section 4252(a)(2) does <u>not</u> state that a "facility or service provided in connection with a local telephone system" is subject to taxation.

- Instead, it states that "a facility or service provided in connection with a *service* described in paragraph (1)" is subject to taxation.

- Purchasing the service described in 4252(a)(1) is a condition precedent to liability under 4252(a)(2).

- Because the Reorganized Debtors did not purchase the service described in paragraph (1), the provisions of paragraph (2) do not apply.

26

613

# Response To The Government's Arguments

*Argument 3*

## COBRA Service Is Capable Of
## Computer To Computer Voice Communications

- NOT CAPABLE: "you can pass packets at a slow speed, and it will get to the other end, but when it puts the packets back together to represent the voice, there is not enough data to really give you a clear voice. Like I said, you wouldn't be able to understand it. It would be garbled or it would be noise." John Anderson (Tran. 135:12-18)

- IRRELVANT: The tax code requires that the person paying for local telephone service must have the privilege of telephonic quality communication. No basis under the statute for imposing tax on the Reorganized Debtors because third-parties could subscribe to Skype and communicate with other Skype subscribers.

27

# Response To The Government's Arguments

### COBRA Service Is Capable Of
### Computer To Computer Voice Communications

- Statute requires the privilege of telephonic quality communications with *substantially all* persons having *telephones*

    - Not persons who have computers

    - And substantially all people in the local telephone system do not subscribe to *Skype*

    - *"In a traditional telephone setting, which is 99.9% of the cases, . . . this would be [the] case at your home."* John Anderson speaking to the Court. *(*Tran. 98:4-7)

28

# Response To The Government's Arguments

## COBRA Service Is Capable Of Computer To Computer Voice Communications



Trial Exhibit No. 29, at page DOJ 00037

12. This Schedule does not represent an inter-connection agreement between the parties. Should WorldCom or any of its affiliates wish to directly use the COBRA Services to directly provide any one-way or two-way voice telephony communications, whether local or long-distance ("VoIP"), WorldCom and Vendor shall negotiate terms, conditions, and rate structures that are applicable to VoIP prior to WorldCom utilizing the COBRA Services to directly provide VoIP. . . . If WorldCom or any of its affiliates at any time during the Service Term of this Schedule directly use the COBRA Services to provide VoIP without the prior development of mutually agreed upon terms, conditions, and rate structures for VoIP, WorldCom shall be in breach of this Schedule and Vendor may terminate this Schedule for cause as defined in Section 4 of the Agreement.

616

# Response To The Government's Arguments

### *Argument 4*
### The Reorganized Debtors Have Erected "Self-imposed" Limitations In Order To Avoid Using COBRA Service For Telephonic Quality Communication

- The LECs own all equipment and facilities.

- The Reorganized Debtors used COBRA service exactly how it was delivered.

- No evidence that the Reorganized Debtors actually modified, altered or reconfigured COBRA service in order to avoid using that service's telephone capabilities.

- In fact, the government's argument is that the Reorganized Debtors *could have* modified, altered and reconfigured COBRA service into a telephone service. This argument is factually incorrect and misconstrues *Comdata*.

30

617

# COBRA Service

*Comdata Network Inc. v. United States*

| Authorized Comdata Service Center | *Telephone Line* | Service Rep. at Comdata Office |
|---|---|---|

- service center agent contacts Comdata office by phone
- funds transmitted electronically, through telephone lines, directly to Comdata computer system
- Comdata used a Wide Area Telecommunications Service ("WATS")
- call transmitted over telephone lines and connected with supplier of Comdata's WATS line
- Held:
  - WATS service was a toll telephone service because it entitled Comdata the privilege of an unlimited number of telephone calls to or from a substantial portion of the telephone stations in a distant service area.
  - System with no inherent use limitations is taxable, regardless of how taxpayer uses it.

31

# COBRA Service

*Comdata Network Inc. v. United States*

| Authorized<br>Comdata<br>Service Center | *Telephone Line* | Service Rep.<br>at<br>Comdata Office |
|---|---|---|

- The Comdata Issue:
    - Comdata limited calls over its telephone lines to two points—the service representative and the service center.
    - The long-distance carrier did not limit calls to two points.
    - Comdata did not argue that its service lacked the privilege of telephonic quality communication but rather argued that it could not communicate with all or a substantial portion of the telephones in a distant service area.
- Relevance To COBRA Service:
    - COBRA service is used exactly how the LECs provide it.
    - Limitations on the capabilities of a service that are imposed by the vendor (*i.e.* the LECs) are not self-imposed.

32

# Response To The Government's Arguments

**Argument 5**

## Data Services Are Not Listed In
## The Statutory Exemptions (Section 4253)

- Section 4253 exempts certain persons who buy one of the three taxable services (*e.g. news organizations, servicemen in a combat zone, the American Red Cross, non-profit hospitals*)

- Section 4253 also clarifies that only one payment of tax is due even though lines of more than one person are used to furnish the service, and no tax is due for installation of equipment.

- Section 4253 DOES NOT expand the definitions for the three taxable services.

- The Reorganized Debtors do not argue that they qualify for an exemption from tax on local telephone service – COBRA service is simply excluded from the definition of local telephone service.

33

# COBRA Service

*Comparison*



COMDATA
Comdata Service Center        (Telephone Line) Comdata Office

Rev 79-245
Dial-Up Modem                    (Telephone Line) Dial-Up Modem

## VS.



COBRA
Dial-Up User – LEC's NAS – (Upper) MCI Network
(Lower) Internet

34

621

# COBRA Service

*IRS Revenue Ruling 74-617 (Beeper Service)*



- The Rev. Rul. 74-617 Issue:

  - Taxpayer could not plug in a telephone or use the service for voice quality communications with substantially all persons having telephones.

  - The service purchased only allowed the taxpayer to receive data messages and signals.

35

622

# COBRA Service

*Does Not Equal Local Telephone Service*

- Reorganized Debtors do not have privilege of telephonic quality communication.



- Reorganized Debtors do not have capability of telephonic quality communications with persons having telephones.

- In addition, COBRA is a private communication service, which is exempt from tax.

36

623

# COBRA Service

*A Private Communication Service*

For purposes of this subchapter, the term "private communication service" means—

(1) the communication service furnished to a subscriber which entitles the subscriber—

(A) to <u>exclusive</u> or priority <u>use of any communication channel</u> or groups of  channels, . . .

<u>regardless of whether such channel</u>, groups of channels, or intercommunication system <u>may be connected</u> through switching <u>with</u> a service described in subsection <u>(a) [local telephone service]</u>, (b) [toll telephone service], or (c) [teletypewriter service], . . .

except that such term does not include any communication service unless a <u>separate charge</u> is made for such service.

37

# COBRA Service

*A Private Communication Service*



## Exclusive Use of Channels

- All data coming into the NAS is aggregated and channeled to the Reorganized Debtors
- The Reorganized Debtors have exclusive use of those output channels

38

625

# COBRA Service

*A Private Communication Service*

## Separate Charge

COBRA Service

- Only one service at issue

- The Reorganized Debtors are separately charged for that service on a per port basis

39

626

# COBRA Service

*A Private Communication Service: Western Electric*



- The *Western Electric* Issue (564 F.2d 53 (Cl. Ct. 1977)):
    - Taxpayer purchased Intercom service and local calling service with unified, bundled billing.
- Held
    - If a service is devoted exclusively to intercommunication (restricted), charges for that service are tax exempt without any change in billing. *Western Elec.* at 61.

    - If the service allows the subscriber to make both outside and internal calls (unrestricted), charges are not tax exempt unless the telephone company separates the charge for basic intercom service. *Id.*

40

# COBRA Service

*A Private Communication Service: Western Electric*



- Relevance To Cobra Service:

    - COBRA service devoted exclusively to data aggregation and conversion.

    - Separate charge for this service.

    - Tax exempt under section 4252(d)(1).

41

628

# COBRA Service

*Conclusion*

- It is undisputed that COBRA service is not a regular telephone service.

- The Reorganized Debtors do not owe tax based on the rights of third parties (dial-up users) because the tax applies to the person paying for a particular service.

- And the tax applies only to services that were actually purchased – not services that *could have been* purchased.

- Even assuming that ancillary services like Skype or VoIP could have been purchased, COBRA service is technologically incapable of delivering telephonic quality communication and communicating with a computer does not fit within the statute.

- And further assuming that the Reorganized Debtors had the privilege of telephonic quality communication with telephones (which they did not) the evidence shows that this is a private communication service that is not taxed.

42

629

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
```

| | |
|---|---|
| **In re** : | **Chapter 11 Case No.** |
| : | |
| **WORLDCOM, INC., et al.** : | **02-13533 (AJG)** |
| : | **Jointly Administered** |
|         **Reorganized Debtors** : | |
| : | |

```
------------------------------------------------------------x
```

## AGREED ORDER EXTENDING DEADLINES
## REGARDING CERTAIN EXCISE TAX REFUND CLAIMS

### RECITALS

    A.    On June 27, 2007, this Court entered an order (the "Excise Tax Order") granting, *inter alia*, Reorganized Debtors' Motion for (I) Determination of Refund Rights Pursuant to Section 505(a)(1) of the Bankruptcy Code, and (II) Consolidation of that Determination with the Reorganized Debtors' Objection to Proof of Claim No. 38365 (Department of Treasury Administrative Expense Claim) Pursuant to Section 105 of the Bankruptcy Code and rules 9014 and 7042 of the Federal Rules of Bankruptcy Procedure.

    B.    Paragraph 4 of the Excise Tax Order directs the Reorganized Debtors to file an affidavit (the "Tax Refund Affidavit") setting forth the amount of the refund due to the Reorganized Debtors within 90 days after entry of the Excise Tax Order, and directs the United States to file any objection within 60 days thereafter.

    NOW, THEREFORE, in consideration of the forgoing, and at the Reorganized Debtors' request, the Reorganized Debtors and the United States of America, by their undersigned counsel, stipulate and agree as follows, subject to approval by the Court:

1.     The deadline for the Reorganized Debtors to file the Tax Refund Affidavit shall

be extended by 45 days.

2.     The deadline for the United States to file its objection, if any, shall also be

extended by 45 days.

By: _/s/  Alfredo R. Pérez_____          By: _/s/  Danna Drori_____ ___ ___
Marcia L. Goldstein, Esq. (MG 2606)          Danna Drori (DD-7690)
Lori R. Fife, Esq. (LF 2839)                 Assistant United States Attorney

WEIL, GOTSHAL & MANGES LLP                   MICHAEL J. GARCIA
767 Fifth Avenue                             United States Attorney for the Southern District
New York, NY  10153-0119                     of New York
Telephone: (212) 310-8000                    86 Chambers Street, 3rd Floor
Facsimile: (212) 310-8007                    New York, NY 10007
                                             Telephone: (212) 637-2689
        and                                  Telecopier: (212) 637-2686

Alfredo R. Pérez, Esq.                       Attorney for the United States of America,
                                             Internal Revenue Service

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors and
  Reorganized Debtors

IT IS SO ORDERED.

Dated: New York, New York
       September 21, 2007

                            **s/Arthur J. Gonzalez**
                            HONORABLE ARTHUR J. GONZALEZ
                            UNITED STATES BANKRUPTCY JUDGE

                                    2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re                                          :          **Chapter 11 Case No.**
                                               :
**WORLDCOM, INC., et al.**                     :          **02-13533 (AJG)**
                                               :          **Jointly Administered**
           **Reorganized Debtors**             :
                                               :
-------------------------------------------------------------x

### AGREED ORDER EXTENDING DEADLINE
### REGARDING CERTAIN EXCISE TAX REFUND CLAIMS

### RECITALS

A.      On June 27, 2007, this Court entered an order (the "Excise Tax Order") granting, *inter alia*, Reorganized Debtors' Motion for (I) Determination of Refund Rights Pursuant to Section 505(a)(1) of the Bankruptcy Code, and (II) Consolidation of that Determination with the Reorganized Debtors' Objection to Proof of Claim No. 38365 (Department of Treasury Administrative Expense Claim) Pursuant to Section 105 of the Bankruptcy Code and rules 9014 and 7042 of the Federal Rules of Bankruptcy Procedure.

B.      Paragraph 4 of the Excise Tax Order directs the Reorganized Debtors to file an affidavit (the "Tax Refund Affidavit") setting forth the amount of the refund due to the Reorganized Debtors within 90 days after entry of the Excise Tax Order, and directs the United States to file any objection within 60 days thereafter. On September 21, 2007, this Court entered an agreed order extending the deadline for the Reorganized Debtors to file the Tax Refund Affidavit by 45 days, and extending the deadline for the United States to file its objection, if any, by 45 days.

C.      On November 9, 2007, the Reorganized Debtors filed the Tax Refund Affidavit with this Court at Docket No. 19145.

NOW, THEREFORE, in consideration of the foregoing, and at the request of the United

States, the Reorganized Debtors and the United States, by their undersigned counsel, stipulate

and agree as follows, subject to approval by the Court:

1.    The deadline for the United States to file its objection, if any, to the Tax Refund

Affidavit shall be extended to February 7, 2008.


By:  _/s/  Alfredo R. Pérez_____ ___
Marcia L. Goldstein, Esq. (MG 2606)
Lori R. Fife, Esq. (LF 2839)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

          and

Alfredo R. Pérez, Esq. (AP 3629)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors and
  Reorganized Debtors


By:  _/s/  Danna Drori_____ _____
Danna Drori (DD-7690)
Assistant United States Attorney

MICHAEL J. GARCIA
United States Attorney for the Southern District
of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2689
Telecopier: (212) 637-2686

Attorney for the United States of America,
Internal Revenue Service


IT IS SO ORDERED.

Dated: New York, New York
          January 8, 2008

                         **s/Arthur J. Gonzalez**
                         HONORABLE ARTHUR J. GONZALEZ
                         UNITED STATES BANKRUPTCY JUDGE

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
In re                                        :        Chapter 11 Case No.
                                             :
WORLDCOM, INC., et al.                       :        02-13533 (AJG)
                                             :        Jointly Administered
              Reorganized Debtors            :
                                             :
--------------------------------------------------------------x
```

### THIRD AGREED ORDER EXTENDING DEADLINE
### REGARDING CERTAIN EXCISE TAX REFUND CLAIMS

#### RECITALS

A.      On June 27, 2007, this Court entered an order (the "Excise Tax Order") granting, *inter alia*, Reorganized Debtors' Motion for (I) Determination of Refund Rights Pursuant to Section 505(a)(1) of the Bankruptcy Code, and (II) Consolidation of that Determination with the Reorganized Debtors' Objection to Proof of Claim No. 38365 (Department of Treasury Administrative Expense Claim) Pursuant to Section 105 of the Bankruptcy Code and rules 9014 and 7042 of the Federal Rules of Bankruptcy Procedure.

B.      Paragraph 4 of the Excise Tax Order directs the Reorganized Debtors to file an affidavit (the "Tax Refund Affidavit") setting forth the amount of the refund due to the Reorganized Debtors within 90 days after entry of the Excise Tax Order, and directs the United States to file any objection within 60 days thereafter. On September 21, 2007, this Court entered an agreed order extending the deadline for the Reorganized Debtors to file the Tax Refund Affidavit by 45 days, and extending the deadline for the United States to file its objection, if any, by 45 days.

C.      On November 9, 2007, the Reorganized Debtors filed the Tax Refund Affidavit with this Court at Docket No. 19145.

D.      On January 8, 2008, the Court entered an agreed order (Docket No. 19206) extending the deadline for the United States to file its objection, if any, to the Tax Refund Affidavit to February 7, 2008.

NOW, THEREFORE, in consideration of the foregoing, the Reorganized Debtors and the United States, by their undersigned counsel, stipulate and agree as follows, subject to approval by the Court:

1.      The deadline for the United States to file its objection, if any, to the Tax Refund Affidavit shall be further extended to February 21, 2008.

By: _/s/ Alfredo R. Pérez_                    By:  _/s/ Danna Drori_
Marcia L. Goldstein, Esq. (MG 2606)          Danna Drori (DD-7690)
Lori R. Fife, Esq. (LF 2839)                 Assistant United States Attorney

WEIL, GOTSHAL & MANGES LLP                   MICHAEL J. GARCIA
767 Fifth Avenue                             United States Attorney for the Southern District
New York, NY  10153-0119                     of New York
Telephone: (212) 310-8000                    86 Chambers Street, 3rd Floor
Facsimile: (212) 310-8007                    New York, NY 10007
                                             Telephone: (212) 637-2689
        and                                  Telecopier: (212) 637-2686

Alfredo R. Pérez, Esq. (AP 3629)             Attorney for the United States of America,
                                             Internal Revenue Service

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors and
  Reorganized Debtors

2

IT IS SO ORDERED.

Dated: New York, New York
      February 7, 2008

<div style="margin-left: 40%;">

**s/Arthur J. Gonzalez**
HONORABLE ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY JUDGE

</div>

3

636