# Internal Revenue bulletin

**Bulletin No. 2007-5**
**January 29, 2007**

## HIGHLIGHTS OF THIS ISSUE

These synopses are intended only as aids to the reader in identifying the subject matter covered. They may not be relied upon as authoritative interpretations.

## INCOME TAX

**Rev. Rul. 2007–5, page 378.**
**Low-income housing credit; satisfactory bond; "bond factor" amounts for the period January through March 2007.** This ruling provides the monthly bond factor amounts to be used by taxpayers who dispose of qualified low-income buildings or interests therein during the period January through March 2007.

**Rev. Rul. 2007–6, page 393.**
**LIFO; price indexes; department stores.** The November 2006 Bureau of Labor Statistics price indexes are accepted for use by department stores employing the retail inventory and last-in, first-out inventory methods for valuing inventories for tax years ended on, or with reference to, November 30, 2006.

**T.D. 9303, page 379.**
**REG–125632–06, page 415.**
Final, temporary, and proposed regulations under section 368 of the Code provide guidance regarding the qualification of certain transactions as reorganizations described in section 368(a)(1)(D) where no stock and/or securities of the acquiring corporation is issued and distributed in the transaction.

**Notice 2007–9, page 401.**
This notice provides guidance under section 954(c)(6) of the Code on dividend, interest, rent and royalty payments that may be excluded from foreign personal holding company income.

**Notice 2007–13, page 410.**
This notice announces that the Treasury Department and the Service will amend the regulations addressing substantial assistance rendered by a related person or persons to a controlled foreign corporation (CFC). These amended regulations will limit the types of activities that constitute substantial assistance to certain assistance rendered, directly or indirectly, by a United States person or persons to a related CFC. In addition, in light of the repeal of the foreign base company shipping income rules under subpart F, this notice confirms that income that previously was foreign base company shipping income will continue to be foreign base company income to the extent that it is within the definition of a remaining category of foreign base company income.

## EMPLOYEE PLANS

**T.D. 9302, page 382.**
Final regulations under section 409(p) of the Code provide guidance concerning requirements for employee stock ownership plans (ESOPs) holding stock of Subchapter S corporations.

**Notice 2007–7, page 395.**
**Distribution issues; multiple issues; Pension Protection Act of 2006.** This notice provides guidance in the form of questions and answers with respect to certain provisions contained in the Pension Protection Act of 2006, Pub. L. No. 109–280 (PPA '06), that are effective in 2007 or earlier and are primarily related to distributions described in sections 303, 826, 828, 829, 845, 904, 1102, and 1201 of the statute.

**Notice 2007–12, page 409.**
**Weighted average interest rate update; corporate bond indices; 30-year Treasury securities.** The weighted average interest rate for January 2007 and the resulting permissible range of interest rates used to calculate current liability and to determine the required contribution are set forth.

(Continued on the next page)

Finding Lists begin on page ii.
Index for January begins on page iv.


Department of the Treasury
Internal Revenue Service

# EXCISE TAX

**Notice 2007–11, page 405.**
This notice answers questions raised by Notice 2006–50, 2006–25 I.R.B. 1141. It also provides guidance regarding the standard amounts for individuals and provides rules for the Business and Nonprofit Estimation Method (EM). Notice 2006–50 amplified, clarified, and modified.

# ADMINISTRATIVE

**Rev. Proc. 2007–18, page 413.**
Pursuant to section 1397E(e)(2) of the Code, this procedure sets forth the maximum face amount of Qualified Zone Academy Bonds that may be issued for each state for each of the calendar years 2006 and 2007. For this purpose, "State" includes the District of Columbia and the possessions of the United States.

**Announcement 2007–8, page 416.**
This document contains corrections to temporary regulations (T.D. 9286, 2006–43 I.R.B. 750) providing rules for claiming the railroad track maintenance credit under section 45G of the Code for qualified railroad track maintenance expenditures paid or incurred by a Class II or Class III railroad and other eligible taxpayers during the taxable year.

**Announcement 2007–9, page 417.**
This document contains corrections to final and temporary regulations (T.D. 9278, 2006–34 I.R.B. 256) regarding the treatment of controlled services transactions under section 482 of the Code and the allocation of income from intangibles, in particular with respect to contributions by a controlled party to the value of an intangible owned by another controlled party.

Constitution Avenue, NW, Washington, DC 20224, Attn: CC:PA:LPD:PR (Notice 2007–9) Room 5203. Submissions may also be sent electronically via the internet to the following email address: *Notice.comments@irscounsel.treas.gov*. Include the notice number (Notice 2007–9) in the subject line.

# Communications Excise Tax; Toll Telephone Service

## Notice 2007–11

SECTION 1. PURPOSE

This notice amplifies, clarifies, and modifies Notice 2006–50, 2006–25 I.R.B. 1141. That notice provides that the tax imposed by § 4251 of the Internal Revenue Code (relating to communications excise tax) does not apply to amounts paid for long distance service and bundled service (collectively, nontaxable service) and also provides that taxpayers may request a credit or refund of tax on nontaxable service that was billed to the taxpayer after February 28, 2003, and before August 1, 2006, only on their 2006 federal income tax returns. This notice—

(a) Provides the conditions under which individual taxpayers may use the standard amounts announced in IR–2006–137 (August 31, 2006) on their 2006 federal income tax returns to request a credit or refund of the excise tax paid on nontaxable service;

(b) Provides guidance regarding the Business and Nonprofit Estimation Method, announced in IR–2006–179 (November 16, 2006);

(c) Answers questions that have been raised since the issuance of Notice 2006–50; and

(d) Modifies the requirement for claims filed on or before May 25, 2006.

SECTION 2. BACKGROUND

For the statutory background of the tax imposed by § 4251, see section 2 of Notice 2006–50. When used in this notice, *local-only service*, *long distance service*, and *nontaxable service* have the meaning given to the terms in section 3 of Notice 2006–50. *Bundled service* has the meaning given to the term by section 5 of this notice.

SECTION 3. STANDARD AMOUNT

(a) *Conditions to allowance of standard amount*. A request for credit or refund of the standard amount, instead of the actual amount of federal communications excise tax paid for nontaxable service, may be made on a 2006 Form 1040 Series, *U.S. Individual Income Tax Return*, if any person filing the return, or any dependent listed on the return—

(1) Paid for any nontaxable service (other than for a prepaid telephone card or prepaid cellular telephone) that was billed to the taxpayer after February 28, 2003, and before August 1, 2006;

(2) Paid all federal communications excise taxes billed by their telecommunications provider after February 28, 2003, and before August 1, 2006;

(3) Has not received a credit or refund of these taxes from the telecommunications provider;

(4) Has not requested a credit or refund from the telecommunications provider or, if so requested, has withdrawn any such request; and

(5) Did not file any other claim or request for credit or refund with the IRS for the federal communications excise tax for a period after February 28, 2003.

(b) *Calculating standard amounts*—(1) *In general*—(i) *2006 Form 1040 Series (other than EZ)*. To determine the standard amount, taxpayers must first determine the number of exemptions for which they are entitled on their 2006 Form 1040 Series federal income tax return (other than the 2006 Form 1040 EZ). The Instructions to the 2006 Form 1040 Series federal income tax return and Publication 501, *Exemptions, Standard Deduction, and Filing Information*, provide guidance on determining the correct number of exemptions. Once the individual determines the number of exemptions, the individual can select the appropriate standard amount based upon the number of those exemptions. Individuals should refer to the 2006 federal income tax return instructions to ensure that the standard amount is entered on the appropriate part of the return.

(ii) *2006 Form 1040 EZ*. On line 5, a taxpayer that checks the box for "you" is treated as having one exemption. A taxpayer that checks the boxes for "you" and "spouse" is treated as having two exemptions.

(2) *Amounts*—(i) For each 2006 Form 1040 Series federal income tax return filed showing one exemption for purposes of determining the standard amount, the standard amount allowed on that return is $30.

(ii) For each 2006 Form 1040 Series federal income tax return filed showing two exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $40.

(iii) For each 2006 Form 1040 Series federal income tax return filed showing three exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $50.

(iv) For each 2006 Form 1040 Series federal income tax return filed showing four or more exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $60.

(c) *Interest*. The standard amount represents both the overpayment of the federal communications excise tax paid on nontaxable service and the interest on that overpayment.

(d) *Actual Amounts*. To request a credit or refund for the actual amount of federal communications excise tax paid, taxpayers must complete Form 8913, *Credit for Federal Telephone Excise Tax Paid*, and attach that form to their 2006 Form 1040 Series federal income tax return.

(e) *Examples*. The following examples illustrate the application of this section.

*Example 1.* A, an individual, files a joint return with Z, A's spouse. A meets the conditions to allowance described in paragraph (a) of this section. A used the 2006 federal income tax return instructions to determine that their correct number of exemptions is two. A may request the credit or refund of the federal communications excise tax under § 4251 for $40.

*Example 2.* B, an individual, used the 2006 federal income tax return instructions to determine that she had one exemption. B further used her telephone bills for the period March 1, 2003, through July 31, 2006, to determine that the total amount paid for federal communications excise tax under § 4251 for nontaxable service to all telecommunications providers was $45. Completing Form 8913 and attaching it to her 2006 Form 1040 Series federal income tax return, B may request a credit or refund of $45, the actual amount she paid in federal communications excise tax on nontaxable service under § 4251. As an alternative, B may request a credit or refund of the standard amount of $30 without having to complete Form 8913.

### SECTION 4. DISTINCTION BETWEEN LOCAL-ONLY SERVICE AND BUNDLED SERVICE

(a) *Technology for transmitting telephone call.* The method for sending or receiving a call, such as on a landline telephone, wireless (cellular) telephone or some other method, does not affect whether a service is local-only or bundled.

(b) *Combined local exchanges.* If two or more telecommunications providers combine their resources to expand the geographic area that each treats as "local" service and each bills its customers for that service as local-only service, then that service is local-only service.

(c) *Billing method.* Section 3(a) of Notice 2006–50 and section 5 of this notice provide that bundled service is local and long distance service provided under a plan that does not separately state the charge for the local telephone service. Thus, if local and long distance service is billed to a customer on a single bill but the telecommunications company separately states the amount paid for local-only service and the amount paid for long distance service, the amount paid for local-only service is subject to federal communications excise tax.

(d) *Examples.* The following examples illustrate the application of this section.

*Example 1.* Customer A purchases telecommunications service from B, a telecommunications provider. Such service includes both local-only service and long distance service. B's bill to A states $X for telecommunications service. The bill does not separately state a charge for either local-only service or long distance service. Since the bill does not separately state the charge for local-only service, the service is a bundled service. Thus, the entire amount of A's telecommunications service is bundled service and thus nontaxable service.

*Example 2.* Customer C purchases telecommunications service from D, a telecommunications provider. Such service includes both local-only service and long distance service. D's bill to C states $X amount for telecommunications service. The bill further states $Y amount for local-only service and $Z amount for long distance service. Since the charges for local-only service and long distance service are separately stated, the service is not bundled service. Accordingly, only the amounts charged for long distance service are for nontaxable service; tax is imposed on the amounts paid for the local-only service.

### SECTION 5. CLARIFICATION OF DEFINITION OF BUNDLED SERVICE

(a) *Present definition.* Section 3(a) of Notice 2006–50 defines bundled service as local and long distance service provided under a plan that does not separately state the charge for the local telephone service. Bundled service includes, for example, Voice over Internet Protocol service, prepaid telephone cards, and plans that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time for which the service is used. Telecommunications companies provide bundled service for both landline and wireless (cellular) service.

(b) *Reason for clarification.* The example in the second sentence of the definition of bundled service incorrectly assumes that all Voice over Internet Protocol (VoIP) service would provide both local and long distance service and that the charges for the two services would not be separately stated. As noted in section 4(a) of this notice, the method of transmitting a call is not a factor in determining whether a service is local-only or bundled. Accordingly, a VoIP service that provides local-only service is treated as local-only service.

(c) *Revised definition.* Accordingly, the definition of bundled service is clarified to read as follows:

> Bundled service is local and long distance service provided under a plan that does not separately state the charge for the local telephone service. Bundled service includes plans that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time for which the service is used. Telecommunications companies provide bundled service for both landline and wireless (cellular) service. If Voice over Internet Protocol service provides both local and long distance service and the charges are not separately stated, such service is bundled service.

### SECTION 6. PREPAID TELEPHONE CARDS (PTC)

(a) *In general*—(1) *Prepaid telephone cards.* Section 4251(d) and § 49.4251–4 of the Facilities and Services Excise Taxes Regulations provide rules for prepaid telephone cards (PTC). Section 49.4251–4(b) defines PTC as a card or similar arrangement that permits its holder to obtain a fixed amount of communications services by means of a code (such as a personal identification number (PIN)) or other access device provided by the carrier and to pay for those services in advance. The amount paid for PTCs is determined under the rules of §§ 4251(d)(1) and (2) and § 49.4251–4(c). Under this notice, the PTC will be treated as nontaxable service unless a PTC expressly states it is for local-only service.

(2) *Other cards.* This section does not address cards that permit the holder to purchase various services in addition to telecommunications services. Such services include, but are not limited to, ring tone downloads, music downloads, text messaging, picture messaging, web browsing, game downloads, or screen saver downloads.

(b) *Application of the tax*—(1) *Definitions.* Section 49.4251–4(b) provides that—

(i) *Carrier* means a telecommunications carrier as defined in 47 U.S.C. 153.

(ii) *Holder* means a person that purchases other than for resale.

(iii) *Transferee* means the first person that is not a carrier to whom a PTC is transferred by a carrier.

(2) *Imposition, liability, and collection.* Section 4251(d) provides that the § 4251 tax is imposed on the transfer of a PTC to a transferee; § 49.4251–4(d)(1) provides that the person liable for the tax is the transferee and that the person responsible for collecting the tax generally is the carrier transferring the PTC to the transferee. Section 49.4251–4(d)(1) further provides that if a holder purchases a PTC from a transferee reseller, the amount the holder pays for the PTC is not treated as an amount paid for communications services and thus tax is not imposed on that payment.

(c) *Person eligible to request credit or refund.* The transferee is the person liable for the tax paid on a PTC and thus generally is the person eligible to request a credit or refund of the tax it paid. The carrier is eligible to request a credit or refund only if it meets the conditions of section 5(d)(4) of Notice 2006–50. The holder is not li-

able for the tax and thus cannot request a credit or refund.

### SECTION 7. PREPAID CELLULAR TELEPHONES

(a) *In general*—(1) *Prepaid cellular telephones.* Certain telecommunications providers offer wireless (cellular) telecommunications service on a prepaid service basis (prepaid telephones) whereby a customer purchases the cellular telephone with a set number of minutes available for telecommunications. When the customer exhausts the number of minutes on the prepaid telephone, the customer may purchase additional minutes. The customer does not enter into a contract with the telecommunications provider; there are no service charges after the additional purchase and no monthly bills. Under this notice, the prepaid telephone will be treated as nontaxable service unless the terms of the prepaid telephone service expressly state it is for local-only service.

(2) *Other prepaid cellular telephones.* This section does not address arrangements that permit the holder to purchase various services in addition to telecommunications services. Such services include, but are not limited to, ring tone downloads, music downloads, text messaging, picture messaging, web browsing, game downloads, or screen saver downloads.

(b) *Application of the tax.* Rules similar to the rules for PTCs, as described in section 6 of this notice, apply to prepaid telephones. Thus, the person liable for tax is the person (transferee) that buys the prepaid telephone from the telecommunications provider (carrier) and the carrier is responsible for collecting the tax. Any holder of a prepaid telephone (that is, a person that buys the prepaid telephone other than for resale) is not liable for tax.

(c) *Person eligible to request credit or refund.* The transferee is the person liable for the tax paid on a prepaid telephone and thus generally is the person eligible to request a credit or refund of the tax it paid. The carrier is eligible to request a credit or refund only if it meets the conditions of section 5(d)(4) of Notice 2006–50. The holder is not liable for the tax and thus cannot request a credit or refund.

### SECTION 8. CHARGES IN CONNECTION WITH LOCAL-ONLY SERVICE

(a) *Background.* Section 3(b) of Notice 2006–50 defines local-only service as including certain services and facilities provided in connection with local telephone service, even though these services may also be used in connection with long distance service. As examples, the notice cites to Rev. Rul. 72–537, 1972–2 C.B. 574 (telephone amplifier), Rev. Rul. 73–171, 1973–1 C.B. 445 (automatic call distributing equipment), and Rev. Rul. 73–269, 1973–1 C.B. 444 (special telephone).

(b) *Subscriber line charges.* In addition to the examples in paragraph (a) of this section, amounts paid for subscriber line charges, which are described in Rev. Rul. 87–108, 1987–2 C.B. 260, are also amounts paid for local telephone service. This charge may appear on a bill as "Federal Access Charge," "Customer or Subscriber Line Charge," or "Interstate Access Charge."

(c) *Universal service fees*—(1) *Background.* All telecommunications companies that provide interstate and international telecommunications service contribute to the federal Universal Service Fund (USF). Their contributions support four Universal Service programs established and overseen by the Federal Communications Commission (FCC). Some telecommunications companies recover their contribution to the USF directly from their customers by billing them for this charge. The FCC does not require companies to pass on these costs to their customers. Each company makes a business decision about whether and how to recover USF costs. A company that separately states this charge on a bill may call it a "Federal Universal Service Fee" or "Universal Connectivity Fee."

(2) *Application.* Because telecommunications providers charge the USF to their customers in connection with their customers' long distance service, amounts paid for separately stated USF amounts are not amounts paid for local-only service.

### SECTION 9. PERSON TO MAKE REQUEST IF TAXPAYER IS NO LONGER IN BUSINESS OR DECEASED

Neither Notice 2006–50 nor this notice create any special rules regarding the person to request a credit or refund of tax for a taxpayer that no longer exists or is deceased. The same rules that apply to requests for credits or refunds of other federal taxes also apply to similar requests of the tax imposed under § 4251. These rules depend upon the facts and circumstances relating to the reasons that the taxpayer no longer exists. The Form 8913 Instructions and Publication 559, *Survivors, Executors, and Administrators*, provide general guidance for taxpayers regarding deceased taxpayers.

### SECTION 10. EFFECT OF NOTICE 2006–50 ON STATE AND LOCAL TELECOMMUNICATIONS TAXES

Neither Notice 2006–50 nor this notice affect the ability of state or local governments to impose or collect telecommunication taxes under the respective statutes of those governments.

### SECTION 11. NO OBLIGATION OF TELECOMMUNICATIONS PROVIDERS TO SUPPLY RECORDS TO CUSTOMERS

The IRS has been asked to require telecommunications providers to supply their customers with those customers' telecommunications bills for periods after February 28, 2003, and before August 1, 2006. Neither Notice 2006–50 nor this notice requires telecommunications providers to supply billing records to their customers.

### SECTION 12. BUSINESS AND NONPROFIT ESTIMATION METHOD

(a) *In general.* This section provides rules for the Business and Nonprofit Estimation Method (EM) that eligible entities may use to determine the amount of their credit or refund for nontaxable service. Eligible entities may, but are not required to, use the EM instead of the actual amount of federal communications excise tax they paid on nontaxable service to calculate the amount of their credit or refund.

(b) *Definitions.* The following definitions apply to this section.

(1) *Eligible entity* means—

(i) Any—

(A) Business entity (including a corporation or partnership);

(B) Trust or estate;

(C) Tax-exempt organization; and

(D) Individual owner of rental property and any self-employed individual (including an independent contractor, sole proprietor, or farmer) but only if the individual (including a married couple filing a joint return) reports gross rental and business income totaling more than $25,000 on his or her 2006 federal income tax return;

(ii) That was in operation during any time from March 1, 2003 through July 31, 2006; and

(iii) That received and paid for telecommunications service that was reflected on bills dated in April 2006 and September 2006.

(2) *Total telephone expenses* means all amounts paid to every telecommunications provider used by the eligible entity for telephone service that were billed after February 28, 2003, and before August 1, 2006. These amounts include, but are not limited to, amounts paid for long distance service, local-only service, bundled service, 900 number service, universal service fees, federal, state, and local taxes. If an eligible entity is billed for telephone and non-telephone services on one bill each month and does not separately track non-telephone services in its books and records, the entire amount of that bill is included in total telephone expenses. An eligible entity may determine the amount of its total telephone expenses by examining its books and records, including, for example, its general ledger, check register, and canceled checks.

(3) *Employee* means any person working for the taxpayer full or part time as reported on the eligible entity's Form 941, *Employer's Quarterly Federal Tax Return*, for the 2nd quarter of 2006, other than any person employed as a household employee, in a non-pay status, on a pension, or an active member of the Armed Forces.

(c) *Using the EM to determine the amount of the credit or refund*—(1) *Determining the federal excise tax as a percentage of the telephone bill*—(i) First, determine the amount of federal communications excise tax on all telephone bills dated in April 2006 and all telephone bills dated in September 2006. The amount is generally separately stated on the bill as "FET" or "federal tax".

(ii) Next, for all the April telephone bills and all the September telephone bills, divide the amount of federal communications excise tax included on the bills by the total telephone expenses on the bills. The resulting amounts are the April and September percentages, respectively.

(iii) Next, subtract the September percentage from the April percentage. For purposes of this notice, this amount is the federal excise tax percentage (FETP).

(2) *Capping the FETP*—(i) Determine the number of employees.

(ii) For taxpayers with 250 or fewer employees, the FETP is capped at 2 percent.

(iii) For taxpayers with more than 250 employees, the FETP is capped at 1 percent.

(d) *Calculating the amount of the credit or refund*—(1) *Records kept on a monthly basis.* If the entity has maintained its telephone expense records on a monthly basis, multiply the FETP amount by the taxpayer's monthly total telephone expenses for each month of the 41 month period from March 2003 through July 2006. The product of this calculation is the taxpayer's credit or refund amount.

(2) *Records kept on an annual basis.* If the entity has maintained its telephone expense records on an annual basis rather than a monthly basis, prorate its annual amount equally to each month of that year. Thus, for example, a taxpayer maintaining annual telephone expense records for 2003 would divide its total telephone expenses by 12. Next, the taxpayer would use that monthly amount to complete the calculations for the credit or refund amount for 2003.

(e) *Actual Amounts.* Use of the EM is optional. Taxpayers may use the actual amounts paid for federal communications excise tax for nontaxable service to determine the amount of their credit or refund.

(f) *Examples.* The following examples illustrate the application of this section.

*Example 1*—(i) *Facts.* Business A has 250 employees. A's April 2006 telephone bill is $1,700, including federal communications excise tax of $47.60. A's September 2006 telephone bill is $1,600, including federal communications excise tax of $24.00. A's total telephone expenses, for which it does not have monthly records, are as follows:

2003 — $10,800.00

2004 — $16,000.00

2005 — $20,000.00

2006 — $20,571.37.

(ii) *Determining the April and September percentages.* A's April percentage is 2.8 percent (47.60 ÷ 1,700). A's September percentage is 1.5 percent (24 ÷ 1,600).

(iii) *Determining the FETP.* The difference between A's April percentage and September percentage is 1.3 percent (2.8 - 1.5). Thus, the FETP is 1.3 percent.

(iv) *Capping the FETP.* Because A's number of employees does not exceed 250, A's FETP is not capped at 1 percent.

(v) *Prorating.* Because A did not maintain its total telephone expense records by month, it prorates those amounts equally to each month within the March 2003 — July 2006 period for each particular year. For 2003, A divides its total telephone expense of $10,800 by 12 and multiplies that result by 10 (the number of months between March and December). ([10,800 ÷ 12] x 10 = 9,000.) For 2006, A divides its total telephone expense of $20,571.37 by 12 and multiplies that result by 7 (the number of months between January and July). ([20,571.37 ÷ 12] x 7 = 12,000.)

(vi) *Calculating the amount of the credit or refund.* Using the EM, the amount of A's credit or refund is calculated as follows:

2003: $9,000 x .013 = $117 (117÷10 = 11.7) Monthly amount $11.70

2004: $16,000 x .013 = $208 (208÷12 = 17.33) Monthly amount $17.33

2005: $20,000 x .013 = $260 (260÷12 = 21.67) Monthly amount $21.67

2006: $12,000 x .013 = $156 (156÷7 = 22.29) Monthly amount $22.29

(vii) *Reporting the credit or refund amounts on Form 8913*—(A) Because the credit or refund period does not align with the calendar quarters, Form 8913 requires taxpayers to report the credit or refund amounts in 13 three-month intervals and one two-month interval. Thus, A would report credit or refund amounts on Form 8913 as follows:

March, April, May 2003 — $35.10 (11.70 x 3 = 35.10)

June, July, August 2003 — $35.10 (11.70 x 3 = 35.10)

September, October, November 2003 — $35.10 (11.70 x 3 = 35.10)

December 2003, January, February 2004 — $46.36 (11.70 + [17.33 x 2] = 46.36)

March, April, May 2004 — $51.99 (17.33 x 3 = 51.99)

June, July, August 2004 — $51.99 (17.33 x 3 = 51.99)

September, October, November 2004 — $51.99 (17.33 x 3 = 51.99)

December 2004, January, February 2005 — $60.67 (17.33 + [21.67 x 2] = 60.67)

March, April, May 2005 — $65.01 (21.67 x 3 = 65.01)

June, July, August 2005 — $65.01 (21.67 x 3 = 65.01)

September, October, November 2005 — $65.01 (21.67 x 3 = 65.01)

December 2005, January, February 2006 — $66.25 (21.67 + [22.29 x 2] = 66.25)

March, April, May 2006 — $66.87 (22.29 x 3 = 66.87)

June, July 2006 — $44.58 (22.29 x 2 = 44.58)

(B) After determining the amount of credit or refund using the EM, A reports the amounts on Form 8913, and attaches the Form 8913 to A's 2006 federal income tax return.

*Example 2.* The same facts as *Example 1* except that A has 500 employees. A's FETP is capped at 1 percent. Thus, A must make the same calculation as in *Example 1* to determine the proper amount of A's credit or refund of federal communications excise tax using the FETP of 1 percent, rather than 1.3 percent.

## SECTION 13. FORM 1040EZ-T, REQUEST FOR REFUND OF FEDERAL TELEPHONE EXCISE TAX

Individuals who do not have to file a federal income tax return and who meet the conditions for requesting a refund of the federal communications excise tax may file Form 1040EZ-T to request the refund. Individuals requesting a refund of actual amounts of federal communications excise tax paid must complete Form 8913 and attach that form to the Form 1040EZ-T.

## SECTION 14. MODIFICATION OF PROVISION REGARDING REQUESTS FOR CREDIT OR REFUND

(a) *Present requirement.* Section 5(g) of Notice 2006–50 provides as follows:

*Requests that do not follow the provisions of this notice.* Requests that do not follow the provisions of this notice (whether filed before or after its publication)—

(1) Will not be processed to the extent they relate to the tax paid on nontaxable service that was billed after February 28, 2003; and

(2) Will be processed normally to the extent they relate to the tax paid on nontaxable service that was billed before March 1, 2003.

(b) *Reason for modification.* Many of the pending refund claims that were filed on or before May 25, 2006, include refund claims for nontaxable service that was billed before March 1, 2003, and after February 28, 2003. In the interest of sound tax administration and efficiency, the IRS will process all claims for credit or refund that were filed on or before May 25, 2006.

(c) *Revised requirement.* Accordingly, section 5(g) of Notice 2006–50 is modified to read as follows:

(1) Requests that do not follow the provisions of Notice 2006–50 and that were filed on or before May 25, 2006, will be processed normally.

(2) Requests that were filed on or after May 26, 2006, and do not follow the provisions of Notice 2006–50, will not be processed to the extent they relate to the tax paid on nontaxable service that was billed after February 28, 2003.

## SECTION 15. EFFECT ON OTHER DOCUMENTS

Notice 2006–50 is amplified, clarified, and modified.

## SECTION 16. DRAFTING INFORMATION

The principal author of this notice is Barbara B. Franklin of the Office of the Associate Chief Counsel (Passthroughs and Special Industries). For further information regarding this notice, contact 202–622–3130 (not a toll-free number).

# Weighted Average Interest Rates Update

## Notice 2007–12

This notice provides guidance as to the corporate bond weighted average interest rate and the permissible range of interest rates specified under § 412(b)(5)(B)(ii)(II) of the Internal Revenue Code. In addition, it provides guidance as to the interest rate on 30-year Treasury securities under § 417(e)(3)(A)(ii)(II).

## CORPORATE BOND WEIGHTED AVERAGE INTEREST RATE

Sections 412(b)(5)(B)(ii) and 412(l)(7)(C)(i), as amended by the Pension Funding Equity Act of 2004 and by the Pension Protection Act of 2006, provide that the interest rates used to calculate current liability and to determine the required contribution under § 412(l) for plan years beginning in 2004 through 2007 must be within a permissible range based on the weighted average of the rates of interest on amounts invested conservatively in long term investment grade corporate bonds during the 4-year period ending on the last day before the beginning of the plan year.

Notice 2004–34, 2004–1 C.B. 848, provides guidelines for determining the corporate bond weighted average interest rate and the resulting permissible range of interest rates used to calculate current liability. That notice establishes that the corporate bond weighted average is based on the monthly composite corporate bond rate derived from designated corporate bond indices. The methodology for determining the monthly composite corporate bond rate as set forth in Notice 2004–34 continues to apply in determining that rate. See Notice 2006–75, 2006–36 I.R.B. 366.

The composite corporate bond rate for December 2006 is 5.75 percent. Pursuant to Notice 2004–34, the Service has determined this rate as the average of the monthly yields for the included corporate bond indices for that month.

The following corporate bond weighted average interest rate was determined for plan years beginning in the month shown below.

| For Plan Years Beginning in: | | | Corporate Bond Weighted Average | 90% to 110% Permissible Range |
|---|---|---|---|---|
| Month | | Year | | |
| January | | 2007 | 5.78 | 5.21 to 5.78 |