Amendment No. 1
DAP Agreement - UUNET

10.    Section 11 of Appendix B is revised to add the following Section (c):

(c)(i)    BellSouth agrees to deploy those DAP ports that are ordered by UUNET hereunder based on the following schedule:

| Ready for Service Date | Minimum No. of DAP Ports Active + Ready for Service |
|---|---|
| August 31, 2000 | 180,001 |
| September 30, 2000 | 190,001 |
| October 31, 2000 | 205,001 |
| November 30, 2000 | 220,001 |
| December 31, 2000 | 230,001 |
| January 31, 2001 | 245,001 |
| February 28, 2001 | 260,001 |
| March 31, 2001 | 275,001 |
| April 30, 2001 | 295,001 |
| May 31, 2001 | 300,001 |

(ii) If BellSouth fails to meet the above-listed Ready for Service milestones in any three (3) consecutive months, except where due to reasons of Force Majeure or where due to the fault of UUNET, then the Monthly Fee per Active DAP port corresponding to the Minimum No. of DAP ports Activated + Ready for Service for the third missed Ready for Service milestone shall apply prospectively to all active DAP ports, until such time that the next higher Price Tier is achieved or this Section 11(c)(ii) is triggered again.

11.    Section 12 of Appendix B is revised as follows:

12.    Termination Charges

Except as set forth in Sections 10 and 14(b) of the Terms and Section 6(e) of this Appendix B, if Customer terminates this Agreement or any Order for DAP ports prior to the installation of a DAP port that has been ordered or the expiration of the Port Term for such DAP port, Customer shall be responsible for the termination charges set forth below:

| Contract Year Port Terminated | Termination Charges |
|---|---|
| 1-3 | 100% of remaining charges for the term |
| 4-5 | 75% of remaining charges for the term |
| 6-7 | 50% of remaining charges for the term |

A Move permitted by Section 9 of the Agreement and Amendment No. 1 shall not be considered termination of a DAP port and Customer shall not pay any termination charges so long as the requirements of Sections 9(a), (b), and (c) have been satisfied, to the extent applicable to a given Move.

---

5
PRIVATE/PROPRIETARY
CONTAINS PRIVATE AND/OR PROPRIETARY INFORMATION. MAY NOT BE USED OR DISCLOSED OUTSIDE THE UUNET/BELLSOUTH COMPANIES EXCEPT PURSUANT TO A WRITTEN AGREEMENT.

DOJ - 00073
CONFIDENTIAL

BEZ65005

S 1838

Amendment No. 1
DAP Agreement - UUNET

12. The following sentence is added to the end of Section 15 of Appendix B:

The next annual review following the Amendment Effective Date will be held 12 months from the Amendment Effective Date.

13. A new Section 17 is added to Appendix B as follows:

    17. Single Number Service

    The parties agree to mutually explore the technical parameters and implementation requirements of single number service ("SNS") in connection with the DAP Services, including the feasibility of deploying SNS on a state-by-state or other mutually-agreeable basis across the entire BellSouth region.

14. A new Section 18 is added to Appendix B as follows:

    18. Equipment Purchase

    (a)    BellSouth agrees to purchase from UUNET all additional Lucent/Ascend equipment required to support a total DAP port base of 300,001 ports in accordance with the deployment schedule set forth in Section 11(c) above. BellSouth shall pay no more than $162 per port (based on a fully-loaded TNT chassis in the T1 configuration) for the purchase of such equipment. Further reduced equipment port pricing will be made available to BellSouth if enhanced TNT design configurations are agreed upon by the parties. Other terms and conditions of such purchase will be set forth in a separate agreement between the parties, which shall be negotiated in good faith during the thirty (30) days following the Amendment Effective Date.

    (b)    The parties agree to negotiate in good faith additional purchases by BellSouth of spare parts, EF&I services, and maintenance/support services; provided that BellSouth shall not be obligated to make such purchases from UUNET.

15. A new Section 19 is added to Appendix B as follows:

    19. Sale of Network Assets by BellSouth

    In the event that BellSouth or its affiliates sells to a third party any network assets used in connection with the DAP Services, the number of DAP ports associated with the network assets sold by BellSouth or its affiliate shall continue to count towards: (a) UUNET's satisfaction of the Minimum Quantity Requirements hereunder; and (b) the total number of active DAP ports for purposes of calculating the applicable Price Tier under Attachment I of Appendix B.

16. A new Section 20 is added to Appendix B as follows:

    20. Hardware Upgrades

    In the event the manufacturer of the TNT dial access equipment used in connection with the DAP Services offers a hardware upgrade to such equipment and BellSouth decides to implement such upgrade, with UUNET's concurrence, in connection with the DAP Services provided to UUNET hereunder, the parties shall agree to cooperate in good faith to determine the optimal method and implementation schedule for such upgrade, as well as the appropriate price and cost impacts of such upgrade on the parties.

17. A revised Attachment I - Dial Access Platform Rates is attached and incorporated herein by reference.

18. A revised Attachment II - Service Locations is attached and incorporated herein by reference.

---

6
PRIVATE/PROPRIETARY
CONTAINS PRIVATE AND/OR PROPRIETARY INFORMATION. MAY NOT BE USED OR DISCLOSED OUTSIDE THE
UUNET/BELLSOUTH COMPANIES EXCEPT PURSUANT TO A WRITTEN AGREEMENT.

DOJ - 00074
CONFIDENTIAL

BEZ65006

S 1839

Amendment No. 1
DAP Agreement - UUNET

19.    Attachment III – TNT Equipment Specifications, to be agreed upon between the parties, will be added to the Agreement as Attachment III to Appendix B no later than thirty (30) days after the Amendment Effective Date.

IN WITNESS WHEREOF, each of the parties has caused this Amendment No. 1 to be executed by its duly authorized officer or representative.


UUNET Technologies, Inc.                        BellSouth Telecommunications, Inc.
                                                By: BellSouth Business Systems, Inc.

By:    _____                By:    _____

Printed Name: KEVIN R. BOYNE                    Printed Name: FREDRICK K. SHAFTMAN

Title:    COO                                   Title:    Vice President

Date:    7/14/00                                Date:    July 20, 2000


                                                APPROVED AS TO FORM:

                                                MKK 7/20/00


---

7
PRIVATE/PROPRIETARY
CONTAINS PRIVATE AND/OR PROPRIETARY INFORMATION. MAY NOT BE USED OR DISCLOSED OUTSIDE THE
UUNET/BELLSOUTH COMPANIES EXCEPT PURSUANT TO A WRITTEN AGREEMENT.

DOJ - 00075
CONFIDENTIAL

BEZ65007

S 1840

Amendment No. 1
DAP Agreement - UUNET

### ATTACHMENT I

The revised pricing schedule for DAP Service Rates for those DAP ports utilizing Lucent TNT dial access equipment ("DAP ports") is as follows:

| Price Tier | # Active DAP Ports | Monthly Fee per Active DAP Port | |
|---|---|---|---|
| | | *Embedded Base Ports* | *Growth Ports* |
| A | 0 – 205,000 | $  45.00 | $  30.00 |
| B | 205,001 – 220,000 | $  42.00 | $  30.00 |
| C | 220,001 – 230,000 | $  42.00 | $  28.00 |
| D | 230,001 – 245,000 | $  39.00 | $  28.00 |
| E | 245,001 – 255,000 | $  39.00 | $  26.00 |
| F | 255,001 – 270,000 | $  35.00 | $  26.00 |
| G | 270,001 – 280,000 | $  35.00 | $  24.00 |
| H | 280,001 – 300,000 | $  33.00 | $  24.00 |
| I | 300,001 + | $  31.00 | $  23.00 |

**DAP SERVICE RATES**

DAP Port Pricing Notes:

a.    The initial 175,000 active DAP ports shall be deemed the Embedded Base Ports for purposes of the pricing schedule for DAP ports set forth above.

b.    All active DAP ports in excess of the initial 175,000 active DAP ports shall be deemed the Growth Ports for purposes of the pricing schedule for DAP ports set forth above.

Customer Initials _KB_

Date _7/14/00_

---

**8**

PRIVATE/PROPRIETARY
CONTAINS PRIVATE AND/OR PROPRIETARY INFORMATION.  MAY NOT BE USED OR DISCLOSED OUTSIDE THE
UUNET/BELLSOUTH COMPANIES EXCEPT PURSUANT TO A WRITTEN AGREEMENT.

DOJ - 00076
CONFIDENTIAL

BEZ65009

S 1841

Attachment II

July 14, 2000

Following are the sites that UUNet currently has DAP service installed with BellSouth:

**DAP Sites**
Bay Minette, AL
Birmingham, AL
Cullman DA, AL
Decatur, AL
Florence DA, AL
Gadsden, AL
Guntersville DA, AL
Huntsville, AL
Jasper DA, AL
Mobile, AL
Montgomery, AL
Selma DA, AL
Talladega DA, AL
Tuscaloosa, AL
Boca Raton, FL
Cocoa Beach, FL
Daytona Beach, FL
Fernandina Beach DA, FL
Fort Lauderdale, FL
Ft. Pierce, FL
Gainesville, FL
Jacksonville, FL
Key West, FL
Lake City DA, FL
Melbourne, FL
Miami, FL
Orlando, FL
Palm Coast, FL
Panama City, FL
Pensacola, FL
Pensacola2 MSN, FL
St Augustine DA, FL
Stuart DA, FL
Titusville, FL
Vero Beach, FL
W Palm Beach, FL
W Palm Beach, FL
Weekiwechee Springs, FL

PRIVATE/PROPRIETARY
CONTAINS PRIVATE AND/OR PROPRIETARY INFORMATION. MAY NOT BE USED OR DISCLOSED OUTSIDE THE
UUNET/BELLSOUTH COMPANIES EXCEPT PURSUANT TO A WRITTEN AGREEMENT.

DOJ - 00077
CONFIDENTIAL

BEZ65008

S 1842

## Attachment II

Albany, GA
Athens, GA
Atlanta, GA
Augusta, GA
Brunswick DA, GA
Calhoun , GA
Columbus, GA
Macon, GA
Savannah, GA
Smyrna, GA
Valdosta DA, GA
Bardstown DA, KY
Bowling Green, KY
Corbin, KY
Frankfort, KY
Greenville DA, KY
Harlan DA, KY
Hopkinsville DA, KY
Louisville, KY
Mayfield DA, KY
Murray DA, KY
Owensboro, KY
Paducah, KY
Pikeville DA, KY
Pineville DA, KY
Winchester DA, KY
Abbeville DA, LA
Alexandria, KY
Amite(Hammond), LA
Bastrop DA, LA
Baton Rouge, LA
Covington, LA
Crowley DA, LA
De Ridder DA, LA
Donaldsonville DA, LA
Houma, LA
Lafayette, LA
Lake Charles, LA
Leesville DA, LA
Monroe, LA
Morgan City, LA
Natchitoches DA, LA
New Orleans, LA
Ruston, LA
Shreveport, LA
Winnfield, LA

PRIVATE/PROPRIETARY
CONTAINS PRIVATE AND/OR PROPRIETARY INFORMATION. MAY NOT BE USED OR DISCLOSED OUTSIDE THE
UUNET/BELLSOUTH COMPANIES EXCEPT PURSUANT TO A WRITTEN AGREEMENT.

DOJ - 00078
CONFIDENTIAL

BEZ65010

S 1843

## Attachment II

Bay St Louis DA, MS
Clarksdale DA, MS
Columbus DA, MS
Greenville DA, MS
Greenwood DA, MS
Gulfport, MS
Hattiesburg, MS
Hernando DA, MS
Jackson, MS
Laurel, MS
Meridian DA, MS
Oxford DA, MS
Starkville DA, MS
Tupelo DA, MS
Arden, NC
Ashville NC MSN
Boone DA, NC
Burlington, NC
Chapel Hill DA, NC
Charlotte, NC
Gastonia, NC
Goldsboro, NC
Greensboro, NC
Leonior DA, NC
Lincolnton DA, NC
Lumberton DA, NC
Morganton DA, NC
Raleigh, NC
Rockingham DA, NC
Rutherfordton DA, NC
Salisbury DA, NC
Shelby DA, NC
Wilmington, NC
Winston Salem, NC
Winston Salem2 MSN
Aiken DA, SC
Anderson, SC
Charleston, SC
Columbia, SC
Florence, SC
Greenville, SC  MSN
Orangeburg SC
Seneca, SC
Spartanburg, SC
St George DA, SC
York DA, SC

---

PRIVATE/PROPRIETARY
CONTAINS PRIVATE AND/OR PROPRIETARY INFORMATION. MAY NOT BE USED OR DISCLOSED OUTSIDE THE
UUNET/BELLSOUTH COMPANIES EXCEPT PURSUANT TO A WRITTEN AGREEMENT.

DOJ - 00079
CONFIDENTIAL

BEZ65011

S 1844

**Attachment II**

Athens DA, TN
Chattanooga, TN
Clarksville, TN
Dyersburg DA, TN
Humbolt, TN
Jackson, TN
Jefferson, TN
Knoxville, TN
La Follette DA, TN
Madisonville DA, TN
Morristown DA, TN
Nashville, TN
Shelbyville DA, TN
Summertown DA, TN
Tullahoma, DA, TN
Union City DA, TN
Winchester DA, TN

4
PRIVATE/PROPRIETARY
CONTAINS PRIVATE AND/OR PROPRIETARY INFORMATION. MAY NOT BE USED OR DISCLOSED OUTSIDE THE
UUNET/BELLSOUTH COMPANIES EXCEPT PURSUANT TO A WRITTEN AGREEMENT.

DOJ - 00080
CONFIDENTIAL

BEZ65012

S 1845

Bell South Telecommunications            08/31/98
Terms & Conditions for Dial Access Platform Service

These terms and conditions ("Terms") govern the provision by BellSouth Telecommunications, Inc. ("BellSouth") and the use by UUNET Technologies, Inc. ("Customer") of the BellSouth Dial Access Platform Service ("DAP Service"). Customer and BellSouth agree as follows:

1. The Service. BellSouth Dial Access Platform is a service offering that will allow the Customer to obtain dedicated modem ports with a two-way ISDN PRI or like service on the ingress (incoming) side and dedicated access on the egress (outgoing) side. The equipment will be installed in BellSouth Central Offices and will allow for connections that consist of:

(a) Analog Modem ports (up to 56K, utilizing K56flex);

(b) ISDN digital ports

(i) single B-channel - 64K

(ii) dual B-channel - 128K (Multi-Link PPP)

(c) Frame Relay DS1, Fractional Frame Relay DS3, Frame Relay DS3

(d) Point to Point DS1, Point to Point DS3.

BellSouth will provide the access servers within existing BellSouth Central Offices where available.

The DAP Service and its features are described in further detail in the Service Description for Dial Access Platform Service which is attached as Appendix A and incorporated herein by reference ("Service Description"). Additional features and services may be made available as announced by Bell South and under mutually agreed upon terms and conditions. The DAP Service and all features or aspects thereof, whether described herein or in any such additional materials, shall continue to be governed by and provided subject to these Terms, unless or except to the extent that a separate agreement has been signed by Customer and BellSouth specifically relating to such additional features or services which expressly makes exception to these Terms.

2. Term. Customer's agreement for the use of the DAP Service will be in effect from the date Customer's Service Order is accepted by BellSouth as provided below, and, unless terminated earlier as set forth herein, shall continue thereafter for the minimum term (if any) set forth in such order.

3. Invoicing; Payment. The rates and charges payable by Customer for the DAP Service shall be as set forth in the Customer's Service Order(s). Customer will be invoiced monthly for usage of the Service. Payment must be received by BellSouth within 45 days after the date of the invoice. Customer will pay or reimburse BellSouth for any and all sales and use taxes, duties, or levies imposed by any authority, government, or government agency (other than taxes levied on BellSouth's net income, gross receipts, or franchise taxes) in connection with Customer's usage of the Service and invoiced by BellSouth. If any payment due hereunder is not made within sixty (60) days after the invoice date, late charges of one and one-half percent (1 1/2%) per month, or the highest amount permitted by applicable law, whichever is less, shall be due and payable with respect to such payment.

4. Customer-Supplied Networks and/or Equipment.

(a) The Service may include certain consulting, network design, monitoring, management, maintenance or other similar functions or services relating to communications local network transport facilities, routing and terminating equipment or other elements of Customer's network that may be obtained

separately from the DAP Service by Customer from other BellSouth companies or product offerings or from third parties (collectively, "Customer's Network"). Customer shall be responsible for obtaining all necessary equipment or other portions of Customer's Network that are not included as part of the DAP Service, and for all costs and charges relating thereto, and for selecting, arranging and paying for all interLATA communications services deemed necessary or desirable by Customer for the operation of or connection with Customer's Network.

(b) So long as Customer is not in default hereunder, Customer may request and BellSouth may agree to add additional items of equipment or other expansions of Customer's Network to any existing orders for the DAP Service. Customer may from time to time request additional services from BellSouth in connection with the activities described in an applicable order. All changes to the scope of the DAP Service to be performed by BellSouth hereunder must be requested in writing and require mutual agreement. Evaluation and/or implementation of requested changes may result in an adjustment to the costs or schedule for delivery of the DAP Service or other terms of the order. Changes to the scope of the DAP Service will be incorporated into a Service Order through written amendment.

(c) BellSouth will, if set forth in the applicable service descriptions or ordering documents, assist Customer in the coordination of the implementation and installation of equipment or services for use with Customer's Network.

(d) If Customer desires BellSouth to provide maintenance for Customer equipment and BellSouth agrees to provide maintenance for customer equipment, BellSouth and the Customer will negotiate a maintenance agreement.

(e) BellSouth shall provide the DAP Service in accordance with the same first class standards applied by BellSouth to its similar projects for its affiliated companies and other clients, in a good faith effort to support Customer in developing, implementing and/or managing Customer's network or its other intended system(s), network designs or other projects or services as described in applicable orders.

5. Maintenance Requirements. The Maintenance Requirements for DAP Service are set forth in Section 2.3.1 of the Service Description.

6. Things Not Included in the DAP Service. The DAP Service may include transport components which are incorporated by BellSouth and sold to Customer as part of the DAP Service, as will be reflected on Customer's Service Order(s). However, Customer may instead or in addition purchase similar components as tariffed transport services from BellSouth's regulated telephone operations, in which event any regulated transport network services purchased by Customer to connect to the DAP Service shall be provided pursuant to applicable tariffs and are not part of the DAP Service nor subject to these Terms. In addition, because of current legal restrictions, BellSouth's Service includes direct connectivity only to addresses, information sources or service providers within specified calling areas known as LATAs. In order to connect to Internet-based services or other parties, networks or sites located outside of the local LATA (including the world-wide Internet) through BellSouth's service, Customer will need to obtain interLATA service (including global Internet service where desired) from a Global Service Provider ("GSP") or other party of Customer's choice who is connected to BellSouth's service. Information about which GSPs are connected to the BellSouth service from time to time may be obtained on-line on the

*1*

SEP 03 '98 15:16

DOJ - 00081
CONFIDENTIAL

BEZ56001

S 1846

U6/31/Y0

BellSouth service or by contacting BellSouth. Customer is responsible for choosing such a provider and for paying all applicable charges for such interLATA service, as well as all charges for any purchase made through the DAP Service and any charges incurred while using any supplemental networks or services other than the DAP Service. BellSouth will facilitate the process of registering Customer's account with the available GSP or other provider of Customer's choice, and that provider's charges may be included on Customer's bill from BellSouth, for computer system, database access, Internet connection or other services which may be provided or made available to Customer by its GSP or any other party are the sole responsibility of and at the sole discretion of such party, and are not included in or a part of BellSouth's service. BellSouth makes no selection, endorsement or recommendation with respect to any GSP or other interLATA long distance service provider, global Internet access provider or other aspect of any service provided by the GSP or other party, and BellSouth shall have no responsibility, obligation or liability of any nature with respect thereto. The reliability, availability and performance of resources accessed through the Internet or other services connected to BellSouth's service are beyond BellSouth's control and are not in any way warranted or supported by BellSouth. Customer acknowledges that safeguards relative to copyright, ownership, decency, reliability and integrity of content may be entirely lacking with respect to the Internet or other services or content accessible through BellSouth's service.

**7. Customer's Responsibilities.**

(a) As between Customer and BellSouth, Customer is responsible for timely payment of all charges for the DAP Service. Customer is also responsible for performing its other obligations under these Terms. Customer shall not use the DAP Service in any way which would be or would assist any third party to be in violation of any law or these Terms. Customer shall not transmit or publish on or over the DAP Service any information, software or other content which violates or infringes upon the rights of any others or use the facilities and capabilities of the DAP Service to conduct any business or activity which is prohibited by law. Customer and BellSouth shall comply with all applicable laws, rules and regulations in connection with the provision and use of the DAP Service.

(b) Delay or failure by Customer, its agents, or vendors to fulfill its responsibilities may result in an adjustment to the costs or the schedule for delivery of the Service, may release BellSouth from its obligations hereunder to the extent that BellSouth is adversely affected by such Customer delay or failure, or may give BellSouth the right to terminate this Agreement pursuant to Section 15(a) below.  THIS SHALL CONSTITUTE BELLSOUTH'S SOLE AND EXCLUSIVE REMEDIES FOR ANY VIOLATION OF THIS SECTION 7.

**8. BellSouth's Responsibilities.** BellSouth agrees to the following responsibilities (subject to the limitations set forth in these Terms):

(a) BellSouth will operate the DAP Service in accordance with its standard policies and procedures and will make the DAP Service available to Customer as described in these Terms.

(b) BellSouth will notify Customer in writing at least [90] days in advance of any changes in BellSouth's policies in the operation of the Service which are reasonably expected to materially affect Customer's use thereof.

(c) BellSouth warrants that the DAP Service to be supplied hereunder will be performed by qualified professional personnel in accordance with industry standards and that the DAP Service and Deliverables (as defined in Section 15) will be

in compliance with this Agreement and the terms set forth in the Service Description and any applicable Service Order.

(d) BellSouth represents and warrants that the DAP Service and Deliverables provided hereunder are designed to process all date data, calculations, storage, and retrieval without error or interruption prior to, during and beyond the year 2000, and are in compliance with all applicable Year 2000 standards, including those of the International Standards Organization, British Standards Institution, and the U.S. government's Federal Acquisition Regulations.

**9. Limitation of Warranties and Liability; Disclaimer of Warranties.** NEITHER BELLSOUTH NOR ANY OF ITS UNDERLYING SERVICE PROVIDERS, INFORMATION PROVIDERS, LICENSORS, EMPLOYEES, OR AGENTS WARRANT THAT THE DAP SERVICE WILL BE UNINTERRUPTED OR ERROR FREE; NOR DOES BELLSOUTH OR ANY OF ITS UNDERLYING SERVICE PROVIDERS, INFORMATION PROVIDERS, LICENSORS, EMPLOYEES, OR AGENTS MAKE ANY WARRANTY AS TO THE RESULTS TO BE OBTAINED FROM USE OF THE DAP SERVICE.  EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT THE DAP SERVICE IS PROVIDED ON AN "AS IS", "AS AVAILABLE" BASIS WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF TITLE OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE.  NEITHER BELLSOUTH NOR CUSTOMER SHALL HAVE ANY LIABILITY FOR INCIDENTAL, CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES IN CONNECTION WITH THIS AGREEMENT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EACH PARTY EXPRESSLY AGREES THAT EXCEPT WITH RESPECT TO LIABILITY UNDER SECTIONS 12 AND 16 OF THESE TERMS, UNDER NO CIRCUMSTANCES SHALL EITHER PARTY'S TOTAL LIABILITY TO THE OTHER IN CONNECTION WITH THIS AGREEMENT EXCEED TWO TIMES THE AMOUNT OF CHARGES PAID BY CUSTOMER FOR USE OF THE SERVICE DURING THE TWELVE-MONTH PERIOD PRECEDING THE DATE THE CLAIM WAS FIRST MADE IN WRITING.

**10. Remedies of Customer.** If during a 12 month period BellSouth fails to install more than 15 percent of the DAP ports on or prior to the Service Activation Date due to events or circumstances within the control of BellSouth, to include outsourced functions or Bell South contracted services, Customer may terminate this Agreement if it assumes the obligations of the Ascend Equipment Lease Agreement with respect to any Ascend equipment dedicated to Customer's use for this service offering. The obligation set forth in this Section shall not apply to DAP Service activated at the first ten Service Locations.

**11. Insurance.** BellSouth agrees to maintain, at its expense, during the entire time this Agreement is in effect:

(a) Commercial General Liability Insurance in an amount not less than two million dollars ($2,000,000) per occurrence for bodily injury or property damage;

(b) Employer's Liability Insurance in an amount not less than one million dollars ($1,000,000) per occurrence;

(c) Workers' Compensation Insurance in an amount not less than that prescribed by statutory limits;

(d) Commercial Automobile Liability Insurance applicable to bodily injury and property damage, covering owned, non-owned, leased and hired vehicles, in an amount not less than $1,000,000 per accident;

2

DOJ - 00082
CONFIDENTIAL

BEZ56002

S 1847

(e) Umbrella or Excess Liability Insurance with a combined single limit of no less than $1,000,000 to apply over Commercial General Liability, Employee's Liability, and Commercial Automobile Liability Insurance.

12. Indemnification.

(a) If promptly notified in writing of any action brought against Customer based on a claim that the DAP Service infringes a patent, copyright, trade secret, trademark, or other intellectual property right, BellSouth will defend that action at its expense and will pay any and all fees, costs or damages that Customer may incur (provided that Customer shall permit BellSouth to control the defense of such action and shall not make any compromise, admission of liability or settlement of such claim without BellSouth's prior written approval). If a final injunction is obtained against Customer prohibiting usage of the DAP Service by reason of infringement of a patent, copyright, trade secret, trademark, or other intellectual property right, BellSouth will, at its option, either: (1) at its expense procure the right for Customer to continue using the DAP Service or (2) direct Customer to cease using the DAP Service. In the latter event, the DAP Service shall terminate immediately and BellSouth shall pay Customer a termination fee equal to ten times the total amounts paid to BellSouth in the twelve months prior to cessation of DAP Service.

(b) Customer will indemnify and save harmless BellSouth from and against all loss, liability, damage, and expense, including all reasonable counsel fees that BellSouth may incur, due to claims for infringement of patents, copyright, trade secret, trademark, or other intellectual property rights, arising from Customer's use in connection with the DAP Service of equipment, software or information not provided by BellSouth, provided that BellSouth shall permit Customer to control the defense of such claim and shall not make any compromise, admission of liability or settlement of such claim without Customer's prior written approval.

13. Force Majeure. Neither party shall be responsible for any delay or failure in delivery or performance of any of its duties hereunder due to acts of God, acts or omissions of any regulated telephone network not under its control or any other occurrence commonly known as force majeure, including war, riots, embargoes, strikes, or other concerted acts of workers (whether of BellSouth or others), casualties or accidents. Either party may cancel or delay performance hereunder for so long as such performance is delayed by such occurrence or occurrences provided that if any such delay shall continue for more than thirty days either party may terminate this Agreement upon ten day's written notice.

14. Termination and Default.

(a) BellSouth may, at its sole discretion, terminate any Customer order and discontinue Customer's access to and use of the DAP Service, if: (i) Customer fails to pay any amount within 30 days after written notice that the same is delinquent; or (ii) Customer breaches any of the terms, conditions, obligations, or representations contained in these Terms and fails to cure such breach within 30 days of receiving written notice of such breach (or if such breach is not susceptible of cure within 30 days, Customer has not initiated steps to, and is not diligently attempting to cure); or (iii) Customer becomes the subject of a voluntary or involuntary bankruptcy, insolvency, reorganization, or liquidation proceeding, makes an assignment for the benefit of creditors, or admits in writing its inability to pay debts when due.

(b) If BellSouth changes any aspects of the DAP Service so as to materially adversely affect Customer's ability to utilize the DAP Service, or breaches any of these Terms and

fails to cure such breach within thirty (30) days after written notice of such breach, Customer may terminate its DAP Service by written notice to BellSouth, without obligation for any early termination charges otherwise payable hereunder.

15. Use of Materials, Marks and Information.

(a) All Deliverables created at Customer's direction or expense shall be created as works made for hire. "Deliverables" shall mean any writings, reports, documentation, software, firmware, design, technical data, inventions, developments, improvements, discoveries or other information (whether or not patentable, copyrightable or subject to trademark protection). Deliverables shall be the sole and exclusive property of Customer. Customer shall have the unilateral and unrestricted right to use such Deliverables and information and ideas contained therein in any way. BellSouth shall perform all lawful acts requested by Customer (a) to perfect Customer's title to all such Deliverables, including the execution of any assignments, and (b) to enable Customer or its nominee to obtain and maintain patent, copyright, trademark, trade secret or other legal protection therefor anywhere in the world.

(b) The BellSouth company names and logos and all related product and service names, design marks and slogans are the property of BellSouth or its affiliates. Customer is not authorized to and shall not use any BellSouth name or mark in any advertising, publicity or in any other commercial manner without the prior written consent of BellSouth. BellSouth may not use the name, logo or any other trademarks or service marks of Customer or any of its affiliated companies in any advertising, signage, marketing materials, brochures or any other materials in any medium without Customer's express advance written permission. Any such permitted use shall be only within guidelines provided by Customer.

(c) The existence and terms of this Agreement shall be held confidential by each party, as shall each party's confidential or proprietary information ("Confidential Information"). Neither party shall disclose the other party's Confidential Information to third parties without the other party's written consent, except as permitted pursuant to this Section. Each party shall disseminate the other party's Confidential Information among its Affiliates and employees only on a need-to-know basis and shall use such Confidential Information only for the purpose of performing its obligations hereunder. To the extent a party is required by applicable law, regulation, or a government agency or court order, subpoena, or investigative demand, to disclose the existence or terms of this Agreement or the other party's Confidential Information, such party shall use its reasonable efforts to minimize such disclosure and obtain an assurance that the recipient shall accord confidential treatment to such Confidential Information, and shall notify the other party contemporaneously of such disclosure.

(d) All product and service marks contained on or associated with the Service that are not BellSouth marks or UUNET marks (or the marks of their respective affiliates) are the trademarks of their respective owners. References to any names, marks, products or services of third parties or hypertext links to third party sites or information do not necessarily constitute or imply BellSouth's endorsement, sponsorship or recommendation of the third party, information, product or service.

16. General.

(a) Except as otherwise set forth herein, all notices from either party to the other shall be delivered either personally, by first-class, pre-paid registered or certified U.S. mail or by nationally recognized overnight courier. Notice to either party shall be sent to the respective address as set forth in Customer's order for the DAP Service, unless written notice of a

3

change of address shall have been previously given by either party. Notice shall be deemed received upon personal delivery, seven (7) days after deposit in the U.S. mail or one (1) day after delivery to a nationally recognized overnight courier.

(b) Customer may permit its customers or other authorized users to utilize the DAP Service as part of business operations or services provided by Customer, subject to these Terms. However, Customer's DAP Service and rights and obligations under these Terms may not be assigned or transferred by Customer without the prior written consent of BellSouth, which shall not be unreasonably conditioned, delayed or withheld; provided, that Customer may assign the DAP Service and its rights and obligations under these Terms to any affiliate upon notice to BellSouth. Any attempt by Customer to assign or transfer any of the rights, duties, or obligations of Customer with respect to the DAP Service without BellSouth's written consent shall be void, and any assignment or transfer shall release Customer from any of its obligations with respect to the DAP Service. BellSouth may assign, delegate or otherwise transfer its rights or obligations hereunder, in whole or in part, at any time, but no such assignment shall release BellSouth from ultimate responsibility for the DAP Service hereunder.

(c) No action, regardless of form, arising out of the DAP Service or these Terms may be brought by either party more than two years after the cause of action has arisen.

(d) This Agreement, including these Terms, the Service Description, and any Service Orders (collectively, the "Agreement") from Customer which have been accepted by BellSouth, set forth the entire agreement between Customer and BellSouth respecting the DAP Service, and supersede any prior written or verbal proposals, agreements, understandings or other discussions respecting the same. Neither party will be bound by any provision contained in any purchase order, confirmation, correspondence or other communication from the other party which is at variance with, in addition to or conflicts with any provision of the Agreement, unless such variance, addition or conflict is specifically identified in a written agreement signed by authorized representatives of Customer and BellSouth which expressly references the appropriate provision of the Agreement. No agent, employee, or representative of BellSouth has any authority to bind BellSouth to any affirmation, representation, or warranty unless the same is specifically set forth in the Agreement or in a written agreement as provided above.

(e) This Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Virginia (without reference to any body of law concerning conflicts of law). Any action concerning any dispute arising under this Agreement will be brought in the state or federal courts with appropriate subject matter jurisdiction located in (or having jurisdiction over) Fairfax County, Virginia. Each party agrees to waive the right to a jury trial or to assert forum non convenience or improper venue.

(f) In the course of performance of its obligations under this Agreement, BellSouth agrees to comply with all applicable federal, state and municipal laws and ordinances, and all rules and regulations thereunder. BellSouth agrees to indemnify and hold Customer harmless from any loss, damage, cost or expense (including attorneys' fees) arising from BellSouth's noncompliance. Any provisions which are required to be incorporated herein (such as with respect to BellSouth's maintaining non-segregated facilities) by an agreement between Customer or its affiliates and any government entity, are hereby incorporated by reference as if set out in full.

(g) Any affiliate of Customer may submit Service Orders hereunder and obtain all rights and remedies available to Customer hereunder as long as the affiliate meets all the terms and conditions of this Agreement. Each Customer affiliate shall be responsible for payment for Services provided pursuant to any Service Order submitted by that affiliate. For purposes of this Agreement, a party's "affiliate" shall mean any company controlling, controlled by, or under common control with such party.

(h) The remedies of the parties set forth herein are not exclusive unless expressly so stated herein.

(i) Company agrees to offer Customer the same terms and conditions that it offers to similarly situated customers. The factors that will be used to determine whether a customer is similarly situated include but are not limited to quantity of service, billing, geographical location, mix of services and other competitive circumstances. Upon Customer's request but not more than once each calendar year, a BellSouth officer shall certify BellSouth's compliance with this Section.

17. Special Exceptions Document.

The document titled Special Exceptions is attached hereto as Appendix B and incorporated herein by reference.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed by its duly authorized officer or representative.

UUNET Technologies, Inc.

By: _____
    Authorized Signature

Title: VP. Digital Access Network

Date: 9/2/98

BellSouth Telecommunications, Inc.

By: _____
    Authorized Signature

Title: Pres - BBS

Date: 9/2/98

4

DOJ - 00084
CONFIDENTIAL

BEZ56004

S 1849

# APPENDIX B

Special Exceptions                                                    August 31, 1998

### 1.    Master Agreement

This Dial Access Platform ("DAP") Order shall be deemed to constitute a "Master Agreement" with a minimum term of seven (7) years from the date of this Order, to the extent that BellSouth and Customer agree that, during such term, Customer will place other Orders (which must specifically reference this Order) for the Services in at least the quantities described in this Order and BellSouth will provide such Services to Customer pursuant to such Orders under the same Terms and Conditions (including the following Special Exceptions) as then in effect for this Order and at the prices set forth in this Order. This DAP Order also constitutes a Special Exceptions Document within the meaning of the Terms & Conditions for Dial Access Platform Service between the parties of even date herewith (the "Terms"). This DAP Order is incorporated by reference in such Terms. References herein to this Agreement shall, except where the context clearly requires otherwise, include this Order and all additional Orders placed and accepted as provided in these Special Exceptions.

### 2.    Term

The term for each DAP Service (terms DAP Service and DAP port are used interchangeably) ordered under this Agreement (sometimes referred to herein as the "Minimum Billing Period") shall be a period of 84 months from June 30 of the calendar year that the DAP Service was activated. Any extension of the term will require the mutual agreement of BellSouth and the Customer.

### 3.    Minimum Quantity Requirement

(a)    Subject to the requirements of Section 11 herein, Customer agrees to purchase a minimum of 60,000 DAP ports during the first 12 months of the term of this agreement ("Minimum Quantity Requirement"). The DAP ports referred to above shall be BellSouth's DAP Service offering (including ISDN PRI or like service) as described in Exhibit A to the Terms.

(b)    DAP ports purchased by Customer in excess of the Minimum Quantity Requirement will count towards the quantity requirements and rate levels in Attachment I.

### 4.    PRI Under Existing BellSouth Contract Service Arrangements

(a)    Customer may convert all existing PRI, MegaLink and Channelized MegaLink Service that are purchased by Customer pursuant to an existing BellSouth term agreement or month-to-month agreement at any time during the term for DAP Service with no termination liability on the converted Service.

(b)    All PRI, MegaLink and Channelized MegaLink Services purchased pursuant to existing BellSouth term agreements or on a month-to-month basis that are converted to this Agreement and are used to provide DAP Service shall be subject to the terms and conditions of this Agreement and shall count toward the Minimum Quantity Requirement.

### 5.    Minimum Order Requirements

Customer agrees that the initial service order for DAP Service in each city will include a minimum of 138 DAP ports per Service Location (as defined in Section 10). Subsequent service orders for DAP Service in a Service Location must include a minimum of 46 DAP ports until the Ascend MAX TNT has reached its full capacity of 276 DAP ports. If a service order for DAP Service requires the installation

DOJ - 00085
CONFIDENTIAL

BEZ56005

S 1850

of a new Ascend MAX TNT, such service order must include a minimum quantity of 138 DAP ports. BellSouth and Customer recognize that DAP Port Service including ISDN PRI Service will consist of a minimum of 23 DAP ports per circuit and DAP Port Service including MegaLink and Channelized MegLink Service will consist of 24 ports per circuit.

6.    Pricing

(a)    Subject to the limitations in Section 6(c) below, each DAP port that is purchased by the Customer shall be billed at the rates set forth in Attachment 1 - Dial Access Platform Service Rates.

(b)    Subject to requirements of Section 11 herein, if the Customer places a Service Order that results in a higher port volume threshold being met, Customer will receive the pricing associated with the higher volume threshold, per Attachment I, on all ports starting on the Service Activation Date for the new ports ordered.    If the Service Activation Date is not met due to reasons within the control of BellSouth, to include any outsourced functions or Bell South contracted services, BellSouth will provide the Customer the pricing associated with the higher volume level beginning on the requested Service Activation Date. If the Customer is unable to accept DAP Service on the Firm or Negotiated Service Activation Dates due to reasons beyond the control of BellSouth, the existing DAP ports will continue to bill at the previous volume level and rate.

Similarly, if the Customer disconnects DAP ports and falls below the quantity requirements for a specific rate at the time the Customer ceases to meet the quantity requirement for a specific rate, all ports will be billed at the rate associated with the smaller quantity requirement on a going-forward basis.

(c)    Installation charges shall not apply to the DAP ports purchased during the term of this Agreement.

(d) BellSouth and the Customer acknowledge that the rates specified in this Agreement are based on the use of Ascend equipment.    The pricing contained herein is subject to change if the Customer chooses to use equipment other than the Ascend MaxTNT equipment for new ports. In the event that the Customer chooses to use other equipment, BellSouth and the Customer will negotiate in good faith a change in the rates in Attachment I for each new port. Rate modifications resulting from equipment changes will not apply to existing DAP Services.    If BellSouth and the Customer are unable to reach agreement on the new rates used for DAP Service, BellSouth will continue to provide the Customer DAP service using the Ascend Max TNT equipment at the existing rates, terms, and conditions; however, BellSouth will have no obligation to provide the Customer DAP service using equipment other than the Ascent Max TNT.

(e)    During the annual review, which is described in Section 15 herein, Customer may request a review of BellSouth rates for DAP Service to determine whether changes in the BellSouth network architecture, tariffed services, or equipment have materially reduced the cost of providing DAP Service to Customer. Specifically, Customer and BellSouth agree to designate a subject matter expert from each Company to evaluate the reasonableness of the rates for DAP Service in light of changes in Company's network architecture, tariffed services and equipment.    If the subject matter experts mutually agree that Changes in network architecture and equipment have reduced the cost of providing DAP Service to Customer, Company agrees to pass on 50 percent of such costs savings to Customer through decreases in the rates for all new DAP ports ordered as well as all active or previously ordered ports.  Customer shall only be permitted to request a review of the rates at the annual review and  BellSouth is only obligated to make rate adjustments during the annual review.

If Customer and Company are unable to reach agreement within 90 days from the start of the annual review on the level of cost savings or the rate reduction for DAP service, Customer may terminate this Agreement if it assumes the obligations of the Ascend Equipment Lease Agreement with respect to any Ascend equipment dedicated to Customer's use for this service offering. Further, nothing in

2

DOJ - 00086
CONFIDENTIAL

203 204 9901    PAGE.02

BEZ56006

S 1851

this Section obligates Company to disclose to Customer its underlying cost structure, financial books, or any other information that the Company deems confidential or proprietary.

7.  Software Upgrade

    Customer will be responsible for the cost, installation and management of all software upgrades for the Ascend MaxTNT equipment. Customer will provide BellSouth written notice of all software upgrades 7 days in advance of the scheduled installation date.

8.  Equipment Maintenance

    Customer shall have exclusive logical access to the Ascend MaxTNT equipment for network management. In addition, the final resolution of equipment failures is the responsibility of Customer. BellSouth will assist Customer in the resolution of equipment failures in accordance with agreed upon maintenance procedures.

9.  Moves

    Except for a "Move" (disconnect and reconnect) that meets the requirements of Section 9(a) and (b) herein, Customer will be billed a non-recurring rate of $55 for the Move of each DAP port.

    (a) Customer may Move ten percent of its total DAP ports between Service Locations, as defined in Section 10 below, during each Calendar Year. DAP ports must be moved in increments of 23 ports. The Moved DAP ports will retain the original Service Activation Date for purposes of calculating the Minimum Billing Period. Customer must maintain the Minimum Port Requirement Per Service Location, as defined in Section 10, at each Service Location involved in the Move unless the Customer chooses to move all ports from a Service Location.

    (b) Customer may Move all DAP ports from a maximum of five (5) Service Locations during any calendar year.

10. Service Locations

    Customer agrees to purchase DAP ports in the Service Locations currently listed in Attachment II. BellSouth's preferred facilities to provide DAP ports will be ISDN PRI. If the Central Office is not equipped to support PRI (i.e. a 1A), a similar type service, such as Channelized Megalink, will be used to provide DAP service. BellSouth will expand the DAP Service to Service Locations that are not listed in Attachment II as requested by the Customer, as long as a major Central Office upgrade is not required at the new Service Location. In the event the Central Office will not support PRI or a similar type service such as Channelized Megalink, BellSouth and the Customer will negotiate in good faith the transport and other service requirements to provide DAP Service in this new Service Location. If BellSouth and the Customer are unable to reach agreement on the addition of the new Service Locations, the new Service Locations will not become part of this Agreement. However, the existing rates, terms and conditions of this Agreement shall remain in full force and effect.

    Customer agrees to purchase a minimum of one hundred thirty-eight (138) DAP ports at a Service Location ("Minimum Port Requirement Per Service Location").

11. Forecasts and Service Activation Dates

    (a)  Customer agrees to provide BellSouth, on a quarterly basis, a twelve month forecast of DAP ports for existing and new Service Locations.

3

S 1852

(b)     The Service Activation Dates for the first Service Orders at the Service Locations listed in Attachment II will be in accordance with the schedule in the Service Description. Subsequent Service Orders for DAP Service, included in the twelve month forecast and provided to BellSouth 45 days before customer's desired Service Activation Date, which do not change during that 45 day period, will constitute a "Firm Order". The Service Activation Date for Firm Orders will be 45 days from the date the order is placed ("Firm Order Service Activation Date"). Service Activation Dates for Service Orders that do not meet the requirements of a Firm Order will be subject to negotiation ("Negotiated Service Activation Date").

12.     Termination Charges

Except as set forth in Section 10 and 14(b) of the Terms or section 6(c) of this Appendix, if Customer terminates this Agreement or any Order for DAP ports prior to the expiration of the Minimum Billing Period for such Order, Customer shall be responsible for the termination charges set forth below:

| Contract Year Port Terminated | Termination Charges |
|---|---|
| 1-3 | 100 % of remaining charges |
| 4-5 | 75 % of remaining charges |
| 6-7 | 50 % of remaining charges |

A Move permitted by Section 9 of this Order shall not be considered termination of a DAP Port and Customer shall not pay any termination charges so long as at least that number of DAP ports equal to the Minimum Quantity Requirement is in service.

13.     Other Requirements

Customer and BellSouth agree that reciprocal compensation shall not apply to DAP Service offered pursuant to this Agreement.

14.     Service Level Requirements

The Service Level Requirements are contained in Section 2.3.1.5 of the Service Description.

15.     Annual Review

An annual review will be conducted by BellSouth and the Customer to evaluate pricing, commitment levels, architecture or equipment changes and market conditions. During the annual review, BellSouth and the Customer will negotiate in good faith to maintain the competitive viability of this Agreement.

Subject to the requirements of Section 6(c) herein, if BellSouth and Customer are unable to reach agreement on any modifications, the existing terms and conditions of this Agreement shall remain in full force and effect.

16.     UUNET Affiliate

DAP ports purchased by any affiliate of UUNET and billed to that affiliate or billed to UUNET will count toward Customer's total port volumes used to calculate port prices per Attachment I. DAP ports purchased by an affiliate will be subject to the terms and conditions of this Agreement. Notwithstanding the foregoing, an affiliates purchase of DAP ports under this Agreement will not modify its obligations under existing agreements between BellSouth and the affiliate; provided that, any minimum commitments that the affiliate may have under such agreements may be satisfied with Orders under this Agreement and the fulfillment of any such commitments shall be determined on a port-equivalency basis.

4

DOJ - 00088
CONFIDENTIAL

BEZ56008

S 1853

DAP ports purchased by the affiliate will not count toward satisfying the Minimum Quarterly Requirement outlined in Section 3 such that Customer must still place orders for the Minimum Quantity Requirement.

5

S 1854

Attachment 1

DIAL ACCESS PLATFORM SERVICE RATES
UTILIZING ASCEND MAX TNT EQUIPMENT

| Quantity of Ports | Price/Port/Month |
|---|---|
| 60,000 - 85,000 | $ 53.00 |
| 85,001 - 110,000 | 52.00 |
| 110,001 - 135,000 | 51.00 |
| 135,001 - 160,000 | 50.00 |
| 160,001 - 185,000 | 49.00 |
| 185,001 - 210,000 | 48.00 |
| 210,001 - 235,000 | 47.00 |
| 235,001 + | 46.00 |

106177

6

DOJ - 00090
CONFIDENTIAL

BEZ56010

S 1855

Attachment II

Service Locations

Albany, Ga.
Asheville, Nc.
Athens, Ga.
Atlanta, Ga.
Auburn, Al.
Augusta, Ga.
Baton Rouge, La.
Birmingham, Al.
Boca Raton, Fl.
Bowling Green, Ky.
Calhoun, GA
Charleston, Sc.
Charlotte, Nc.
Chattanooga, Tn.
Columbia, Sc.
Columbus, Ga.
Daytona Bch., Fl.
Decatur, Al.
Florence, Sc.
Ft. Lauderdale, Fl.
Ft. Pierce, Fl.
Gadsden, Al.
Gainesville, Fl.
Goldsboro, Nc.
Greensboro, Nc.
Greenville, Sc.
Gulfport, Ms.
Hattiesburg, Ms.
Houma, La.
Huntsville, Al.
Jackson, Ms.
Jackson, Tn.
Jacksonville, Fl.
Johnson City, TN
Knoxville, Tn.
Lafayette, La.
Lake Charles, La.
Louisville, Ky.
Macon, Ga.
Melbourne, Fl.
Memphis, Tn.
Miami, Fl.
Mobile, Al.
Monroe, La.
Montgomery, Al.
Nashville, Tn.
New Orleans, La.
Orlando, Fl.
Owensboro, KY
Panama City
Pensacola, Fl.
Raleigh, Nc.
Savannah, Ga.

DOJ - 00091
CONFIDENTIAL

BEZ56011

S 1856

Shreveport, La.
Smyrna, Ga.
Titusville, FL.
Tuscaloosa, Al.
Valdosta, GA
West Palm Bch. Fl.
Wilmington, Nc.
Winston Salem, Nc.

2

TOTAL F

DOJ - 00092
CONFIDENTIAL

BEZ56012

S 1857

*Addendum of Terms and Conditions UUNET 91098.doc*

# ADDENDUM

This Addendum amends and modifies the Terms and Conditions for Dial Access Platform Service Terms and Conditions for Dial Access Platform Service ("Terms and Conditions") entered into between BellSouth Telecommunications, Inc. and UUNET Technologies, Inc. on September 2, 1998.

IN CONSIDERATION of the mutual provisions, covenants, and agreements made and contained herein, the parties hereby agree as follows:

I.   Section 10 of Appendix B - Special Exceptions is modified as follows:

    10.  <u>Service Locations</u>

      (a)  BellSouth will provide Customer DAP service in all locations that are technically equipped to support DAP service ("Service Locations").  A Service Location is technically equipped to support DAP service if there is a switch at the Service Location that is enabled to provide PRI service, an access method that is compatible with the Ascend MaxTNT equipment, sufficient central office floor space, and a central office upgrade is not required.

      (b)  Customer initially desires to purchase DAP ports in the Service Locations listed in Attachment II.  BellSouth's preferred facilities to provide DAP ports will be ISDN PRI.  If the central office is not equipped to support PRI (i.e. a 1A), a similar type service, such as Channelized Megalink, can be used to provide DAP service.  In the event the central office will not support PRI or a similar type service such as Channlized Megalink, BellSouth and the Customer will negotiate in good faith the transport and other service requirements to provide DAP Service in Service Locations that are not technically equipped to provide DAP service.  If BellSouth and the Customer are unable to reach agreement on the addition of the new Service Locations, the new Service Locations will not become part of this Agreement.  However, the existing rates, Terms and Conditions of this Agreement shall remain in full force and effect.

      (c)  Customer agrees to purchase a minimum of one hundred thirty-eight (138) DAP ports at a Service Location ("Minimum Port Requirement Per Service Location").

II.  Except for the foregoing, the remaining terms of the Terms and Conditions for Dial Access Platform Service including specifically all Appendices and Attachments remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the effective date of the execution of the Terms and Conditions.

BELLSOUTH TELECOMMUNICATIONS, INC.      UUNET TECHNOLOGIES, INC.

_____      _____
_____      _____
_____      _____
_____      _____

DOJ - 00093
CONFIDENTIAL

BEZ56013

S 1858