**ATTACHMENT 1**
**SERVICE DESCRIPTION and SYSTEM DESIGN**
**SS7 Gateway/COBRA**
**(Page 1 of 3))**

Central Office SS7 Gateway Based Remote Access, is an architecture placing a USWC owned Remote Access Device ("RAD") in local Central Offices. ISP end user customers will dial local access numbers via digital or analog lines to gain access to the RAD via route signaling from the SS7 Gateway. In an effort to balance network traffic, RADs will be reasonably distributed among Digital Switching Systems designated by USWC and connected to the SS7 signaling network. Office selection will be performed with consideration of UUNET demand presence in each office. Calls from non-SS7 Gateway Central Offices will be routed over Interoffice Facilities to the nearest Central Office equipped with a SS7 Gateway connections and RAD for call completion. Modem pools in the RAD will complete the calls and perform an agreed upon network concentration delivered by USWC to UUNET. UUNET requests USWC to offer a finished, bundled, custom contracted service priced by the modem port rather than circuit. USWC billing to UUNET would be based on the total number of active ports and pending firm orders, where the price per port is determined by an agreed upon tiered structure. The SS7 Gateway and RAD architecture applies to new service, service on order, and migration of all existing active Primary Rate ISDN and Dial Access service. UUNET is requesting the SS7 Gateway and RAD based service as a new contract superseding previous term contracts, beginning a new seven-year term.

No locally stored content will be delivered to or originated by from the Remove Access Device. This includes physical and logical links to locally stored software, browsers, video, directory listings or other information based services.

In order to reach the customer objectives of an SS7 based service, the customer and U S WEST agree to deploy a Central Office Based Remote Access (COBRA) based RAD architecture as an interim step. The RAD deployed will be selected and installed by U S WEST for customer service. The RAD is capable of being upgraded to support SS7 Gateway service with minimum service interruption. Migration schedules and strategies will be mutually agreed upon in the regular Executive meetings.

SS7 Gateway functionality is an additional capability which will be added by the vendor to the COBRA RAD and is supported exclusively by USWC.

12/14/98/UUNET-COBRA
Agreement Number CDS-980819-0115/C

Page 13

DOJ - 00109
CONFIDENTIAL

S 1884

Attachment 1 (Page 2 of 3) – SS7 Gateway



SS-7 Architecture

S 1885

Attachment 1 (Page 3 of 3) --Interim Platform



Interim Solution

DOJ - 00111
CONFIDENTIAL

S 1886

## ATTACHMENT 2
## USWC SITES WITH EXISTING UUNET CIRCUITS

| STATE | CITY | STATE | CITY |
|---|---|---|---|
| ARIZONA | | NORTH DAKOTA | |
| | Flagstaff * | | Fargo |
| | Phoenix | | |
| | Tucson | OREGON | |
| COLORADO | | | Eugene |
| | Aspen * | | Portland |
| | Colorado Springs | | Salem |
| | Denver | | |
| | Fort Collins | SOUTH DAKOTA | |
| | | | Sioux Falls |
| IDAHO | | UTAH | |
| | Boise | | Ogden - |
| | Hailey | | Provo |
| | | | Salt Lake City |
| IOWA | | | |
| | Cedar Rapids | WASHINGTON | |
| | Davenport | | Auburn |
| | Des Moines | | Bellingham |
| | Iowa City | | Olympia |
| | | | Silverdale/Bremerton |
| MINNESOTA | | | Seattle |
| | Minneapolis | | Spokane |
| | St. Cloud | | Tacoma |
| MONTANA | | WYOMING | |
| | Butte * | | Cheyenne |
| | Great Falls * | | Laramie * |
| | Helena | | |
| NEBRASKA | | | |
| | Omaha | | |
| NEW MEXICO | | | |
| | Albuquerque | | |
| | Santa Fe | | |

TOTAL # OF CITIES:        38

* = Denotes less than 12 installed or pending PRI in that city.

S 1887

### ATTACHMENT 3 – Hardware Configuration
(Page 1 of 2)

#### TNT Specific Configuration (Remote Access Device)

Each TNT unit is called a shelf, which has 16 slots. The standard configuration consists of two 8-port T1 cards, an HDLC controller, and six modem cards, each having 48 56K KFLEX modems. The T1 cards have eight ports, numbered 0-7, and terminate either PRIs/Channelized T1s from the LEC switch (ingress circuits), or hi-cap frame T1s going to the UUNET backbone (egress circuits). Our standard is to use ports 0-5 on each card for ingress and to use port 6 for egress. For each TNT shelf, we maintain an ingress to egress circuit ratio of 6:1 or less. A fully loaded shelf supports a total of 12 ingress circuits and 2 egress circuits. Port 7 of both T1 cards is not required, but it may be used for reserve capacity.

The 6:1 or less egress ratio has a distinct advantage. Assume that a COBRA installation has 18 ingress and 3 egress circuits. Any additional ingress T1s activated would require an additional egress circuit in order to maintain the 6:1 or less ratio. However, suppose that 2 additional ingress T's were activated, bringing the total to 20, and a fourth egress was activated to support it. There would then be room to activate an additional 4 ingress T1s upon receiving an order without requiring any activation other than the ingress T1s from the switch to the TNT, all of which is entirely within the LECs control.

#### TNT Configuration

The figure on the next page shows the back of a fully loaded DC-powered TNT. The card type and slot number is shown on the left. Note that the controller card at the top of the chassis is in slot 17. Subsequent cards start with slot number 1. Slot 4 is empty. The modems occupy two slots each. Each modem card has enough modems to service 2 PRIs.

The equipment must be new and in the original packaging. USWC must have newly produced, never registered, non-refurbished equipment from the vendor.

S 1888

ATTACHMENT 3
(Page 2 of 2)

Fully Loaded TNT Configuration

| (QTY) | Ascend Part Number[1] | Description |
|-------|----------------------|-------------|
| (1) | TNT-DC | Chassis with 1 DC power |
| (1) | TNT-SP-DC | Second DC power |
| (1) | TNT-SL-HA192 | HDLC Slot Card |
| (2) | TNT-SL-CT1 | T1 Slot Card |
| (1) | TNT-SO-ISDN | ISDN software |
| (1) | TNT-SO-FR | Frame Relay Software |
| (1) | TNT-SP-DRAM-32 | 32MB DRAM |
| (6) | TNT-SL-48MOD-S56 | 48 Port slot card (Series 56 & V.34) |

Minimum TNT Configuration

The minimum COBRA implementation that UUNET would deploy in any given site is 6 PRIs.

| (QTY) | Ascend Part Number | Description |
|-------|---------------------|-------------|
| (1) | TNT-DC | Chassis with 1 DC power |
| (1) | TNT-SP-DC | Second DC power |
| (1) | TNT-SL-HA192 | HDLC Slot Card |
| (1) | TNT-SL-CT1 | T1 Slot Card |
| (1) | TNT-SO-ISDN | ISDN software |
| (1) | TNT-SO-FR | Frame Relay Software |
| (1) | TNT-SP-DRAM-32 | 32MB DRAM |
| (3) | TNT-SL-48MOD-S56 | 48 Port slot card (Series 56 & V.34) |

---

[1] To the extent the current part number is used to represent different hardware or functionality from that which is represented at the time of this Agreement, USWC may terminate this Agreement under the provisions contained in the Agreement.

12/14/98/UUNET-COBRA
Agreement Number CDS-980819-0115/C

DOJ - 00114
CONFIDENTIAL

S 1889

## ATTACHMENT 4

### PRICING

1. The term of this Agreement is seven (7) years from date of execution.
2. A minimum of 40,000 ports (DS0 equivalents) for the interim platform, SS7 Gateway and/or HCDT DS0 equivalents must be ordered by UUNET on or before December 31, 1998.
3. Pricing tiers are determined by In and Working circuits and pending ports as defined in Section 9.
4. USWC may flow through any price increase or decrease of equipment from UUNET's certified vendor equipment provided to UUNET on a percentage basis from the current costs.
5. Non-recurring charges ("NRC") – $125.00 per DS0 port. NRC are waived for all ports if UUNET reaches a port level of 40,000 or more in and working or pending DS0 ports.

| VOLUMES | INTERIM PLATFORM RATES PER MONTH | SS7 RATES PER MONTH |
|---|---|---|
| 40,000 | $58 | $51 |
| 40,001 – 50,000 | $57 | $50 |
| 50,001 – 60,000 | $56 | $48 |
| 60,001 – 70,000 | $53 | $44 |
| 70,001 – 85,000 | $49 | $40 |
| 85,001 – 100,000 | $45 | $36 |
| 100,000 + | $41 | $33 |

S 1890

ATTACHMENT 5
SERVICE LEVEL AGREEMENT

**1. Problem Resolution Process for the Dial Access Equipment**

USWC ("Contractor") will provide hardware support and maintenance, and deployment of Resources necessary to fix/replace hardware failures (once UUNET has contacted the Contractor and requested assistance). Should an alarm occur, UUNET will be responsible for contacting the Contractor's Network Operations Center (NOC). UUNET is responsible for determining the source/cause of the problem (Problem Identification) and resolving the problem (Problem Resolution). UUNET may or may not choose to take action on an alarm. If the alarm involves a hardware failure, UUNET will contact the Contractor's NOC, provide specific information on the location and type of activity to occur (example: replace module XXX in device YYY located at ZZZ location). The Contractor's NOC will then deploy the appropriate contracted resources to address the hardware problem.

**2. Service Response**

The service interval for Contractor's response is to be determined by the criteria outlined below. A grade 1 problem is the most critical, grade 3 the least.

| GRADE | OUTAGE / PROBLEM |
|---|---|
| 1 | Circuit/ hardware outage inclusive of and between telephone switch, local cabling and wiring, and RAD. (The connections referred to are hardwired connections from the IMT port on the Central Office Switching System running to the RAD.) (Major alarms as reported to USWC NOC by UUNET or to UUNET NOC by USWC NOC.) |
| 1 | No response from maintenance ports on any associated equipment located in the Central Offices. |
| 2 | Circuit/ hardware outage inclusive of and between telephone switch, local cabling and wiring, and RAD. (The connections referred to are hardwired connections from the IMT port on the Central Office Switching System running to the RAD.) (Minor alarms as reported to the USWC NOC by UUNET or to UUNET NOC by USWC NOC.) |

S 1891

level, a
service    rage    3    Any non service affecting problems on any associated equipment
located in the Central Offices.

5. Unc

All com    3    Requests for call back on non service affecting issues.

| GRADE | CONTRACTOR RESPONSE TIME FRAMES |
|---|---|
| 1 | Mean time to respond 30 minutes<br>Mean time to repair 2 hours for Tier 1 (High Density) cities Mean time to repair 4 hours for Tier 2 (Low Density) cities |
| 2 | Mean time to respond 2 hours<br>Mean time to repair 4 hours (Hardware is on-site)<br>Mean time to repair 24 hours (Hardware must be ordered) |
| 3 | Mean time to respond 4 hours<br>Mean time to repair by end of next business day |

Response time is defined as the timeframe for a USWC National Account Center
technician to provide acknowledgment of receipt of a trouble report from a UUNET
Network Operations Center technician.

3. Circuit Activation

Provisioning, test, and acceptance of the egress circuits are UUNET/ USWC's
responsibility.  Provisioning, test, and acceptance of the ingress PRI/DSS will be the
joint responsibility of UUNET, configuring the RAD, and USWC, configuring the switch
side.

USWC intends to aggressively schedule and cutover COBRA locations to
accommodate UUNET's requirements.

4. Remedies

Each Calendar quarter the parties will conduct an Operations Review at which USWC
will present analysis on its performance against the metrics set forth in this SLA.  If for
two consecutive calendar months USWC has failed to meet the Mean Time to Respond
or Mean Time to Repair  for all Grade 1 and Grade 2 problems (based on the average
of the top ninety percent of all Grade 1 and Grade 2 trouble tickets opened that month),
both Parties mutually agree to the following action plan:  1)  Within 7 days of review,
both Parties will meet to determine deficiencies and develop mutually acceptable
remedies and timeline to improve service levels,  2)  Escalation to USWC executive

DOJ - 00117
CONFIDENTIAL

S 1892

EXHIBIT A

RESPONSIBILITY MATRIX

| Version---→ | INTERIM PLATFORM | | SS7/COBRA | |
|---|---|---|---|---|
| Item/Device | TNT (RAD) | | TNT (RAD) | SS7 Gateway |
| • Ownership | USWC | | USWC | USWC |
| • Hardware configuration | USWC | | USWC | USWC |
| • Software configuration | UUNET | | UUNET | USWC |
| • Hardware Alarms and Diagnostics | UUNET | | UUNET | USWC |
| • Hardware Repair | USWC | | USWC | USWC |
| • NMS Functions | UUNET | | UUNET | USWC |
| • Install Hardware | USWC | | USWC | USWC |
| • Software Alarms and Diagnostics | UUNET | | UUNET | USWC |
| • Install Software | UUNET | | UUNET | USWC |
| • Software Repair | UUNET | | UUNET | USWC |
| • Physical Access to Hardware | USWC | | USWC | USWC |
| • Software Certification Testing | Joint | | Joint | USWC |
| • NMS Access | UUNET | | UUNET | USWC |
| • End-user demand and locations (LSOs) | UUNET | | UUNET | NA |
| • Network Topology • RAD Locations • COBRA Locs | USWC | | USWC | USWC |
| • Network Capacity Planning | Joint | | Joint | USWC |

12/14/98/UUNET-COBRA
Agreement Number CDS-980819-0115/C

DOJ - 00118
CONFIDENTIAL

Page 22

S 1893

# EXHIBIT 32

S 1894

AMENDED & RESTATED
REMOTE ACCESS SERVICES AGREEMENT

**ORIGINAL COPY**

This Amended & Restated Remote Access Services Agreement (the "Agreement") between ICG Telecom Group, Inc., a Colorado corporation whose address is 161 Inverness Drive West, Englewood, Colorado 80112 ("ICG") and UUNET Technologies, Inc., a Delaware corporation whose address is 22001 Loudoun County Parkway, Ashburn, Virginia, 20147 ("UUNET"), is effective as of the 30th day of March, 2000 (the "Effective Date").

WHEREAS, UUNET desires to purchase ICG's Remote Access Services ("RAS") and ICG desires to provide the RAS to UUNET, pursuant to the rates, terms, and conditions of this Agreement.

WHEREAS, ICG and UUNET desire to amend and restate the Remote Access Services Agreement, dated August 18, 1999, for RAS services provided by ICG to UUNET (the "Original Agreement"), whereby this Agreement supersedes and replaces the Original Agreement in its entirety, and

WHEREAS, ICG Equipment, Inc. and UUNET are amending the RAS Equipment Resale Agreement concurrently with the execution of this Agreement.

NOW, THEREFORE, the parties agree as follows:

1.  Service Definitions.

    (i)   RAS Port.  A RAS Port shall consist of an ICG modem and other peripheral equipment, an active PRI line that can terminate calls, and colocation space and power related thereto.

    (ii)  RAS Service.  RAS Service shall mean the use of a collection of RAS Ports provided by ICG to UUNET under this Agreement.

    (iii) PRI Circuit. PRI (primary rate interface) Circuit shall mean an ICG ISDN T1 circuit from a switch. A PRI Circuit shall consist of twenty-four (24) channels ("PRI Lines").

    (iv)  PRI Service.  PRI Service shall mean an ISDN T1 circuit, colocation, and power provided by ICG to UUNET. PRI Service shall not include the modem and peripheral equipment.

2.  Minimum Services Commitment, Limitations.

    (i) During the Initial Term of this Agreement, UUNET shall maintain RAS Service in accordance with the table below (the "Minimum Services Commitment"):

| Commitment Period | Minimum RAS Ports |
|---|---|
| Effective Date – June 30, 2000, | 100,000 |
| July 1, 2000 – 12 months after Effective Date, less 1 day | 120,000 |
| 12 months after Effective Date – End of Initial Term | 160,000 |

In determining whether UUNET has satisfied the Minimum Services Commitment (and for purposes of the volume pricing discounts in Exhibit B) for a given calendar month, all RAS Ports (including all PRI

PAGE 1                         ICG / UUNET CONFIDENTIAL                    3/30/00 - AMENDED

DOJ - 00141
CONFIDENTIAL

Lines as of the Effective Date) in operation for UUNET or ordered by UUNET as described in Subsection 2.(ii) shall be included. In the event UUNET fails to satisfy the Minimum Services Commitment as of the first day of any calendar month during the Initial Term of this Agreement, UUNET shall be billed an additional fee equal to the Minimum Services Commitment less all RAS Ports that are in operation for UUNET or ordered by UUNET as described in Subsection 2.(ii) in such month, times the applicable RAS Port rates.

(ii) For purposes of the Minimum Services Commitment and the volume pricing discounts set forth in Exhibit B, UUNET orders for RAS Ports submitted to ICG prior to the first day of a calendar month shall be counted for such month if (a) the order requests installation within forty-five (45) days or such other time frame as agreed by the parties, and (b) the orders are reasonably in compliance with UUNET's forecasts as described in Section 6, and (c) such orders are not canceled by UUNET prior to activation. In the event UUNET submits an order which is not in compliance with the requirements of (a), (b) and (c), and if such order is accepted by ICG, the RAS Ports in such order shall be counted towards the Minimum Services Commitment and the volume pricing discounts set forth in Exhibit B, unless otherwise agreed in writing by the parties. Acceptance, order processing, and testing shall be in accordance with current practices, unless reasonably requested otherwise by UUNET.

(iii) A list of cities in which UUNET can immediately purchase RAS Ports from ICG is attached to this Agreement as Exhibit D. UUNET can begin ordering RAS Ports in the cities listed in Exhibit E as such cities become available for ICG RAS Service during the second quarter of the year 2000, or as soon thereafter as ICG can make such cities available for ICG RAS Service using its best efforts. UUNET can begin ordering RAS Ports in the cities listed in Exhibit F as such cities become available for ICG RAS Service during the fourth quarter of the year 2000, or as soon thereafter as ICG can make such cities available for ICG RAS Service using its best efforts. UUNET can begin ordering RAS Ports in the cities listed in Exhibit G as such cities become available for ICG RAS Service during the year 2001, or as soon thereafter as ICG can make such cities available for ICG RAS Service using its best efforts.

3.   MCI WorldCom Cities. Attached hereto as Exhibit A is a list of cities (the "MCIW Cities"). The following provisions shall apply to the RAS Ports in the MCIW Cities:

(i) Subject to the Minimum Services Commitment set forth in Section 2, for any RAS Port in an ICG rotary within an MCIW City where such rotary has been active for at least twelve (12) months, UUNET may:

(a)   terminate a particular RAS Port(s) by re-purchasing the Equipment related to such RAS Port by paying ICG Equipment, Inc. an amount equal to the amount paid by ICG Equipment, Inc. to UUNET for the Equipment, depreciated on a straight-line basis over sixty (60) months (commencing on the later of the Effective Date of this Agreement or the date of acceptance of the Equipment by ICG), plus a reasonable time and materials charge for de-installation; provided that if such charge would otherwise exceed $10 per RAS Port, the parties agree to negotiate in good faith an appropriate de-installation charge, or

(b)   have ICG move a RAS Port(s) to another city listed in Exhibits D through G (as available for orders pursuant to Section 2(iii) above), in which case ICG will charge UUNET a reasonable time and materials charge related to such move; provided that if such charge would otherwise exceed $10 per RAS Port, the parties agree to negotiate in good faith an appropriate move charge.

PAGE 2                                    ICG / UUNET CONFIDENTIAL                              3/30/00 - AMENDED

DOJ - 00142
CONFIDENTIAL

S 1896

(ii) Each RAS Port terminated or moved pursuant to this Section 3 shall continue to count towards the volume pricing discounts set forth in Exhibit B.

(iii) The Minimum Services Commitment shall not be reduced by any MCIW City RAS Ports which are terminated by UUNET. In the event UUNET terminates a number of MCIW City RAS Ports which has the effect of reducing the number of RAS Ports that are in operation for UUNET or ordered by UUNET as described in Subsection 2.(ii) to less than the applicable Minimum Services Commitment, then UUNET shall be billed in accordance with Subsection 2.(i).

4.    Rates, Volume Discounts. ICG shall bill UUNET monthly, based upon the applicable Monthly Fee per RAS Port specified in Exhibit B below, for each active RAS Port as of the last day of such month, plus any applicable taxes or similar government imposed charges ("Taxes"). The charges will be pro-rated for any partial first and/or last month. In the event that the Taxes applicable to any RAS Port purchased hereunder shall ever exceed 12% of the applicable monthly charge for such RAS Port, then, at ICG's option, either (1) ICG shall pay the amount of such Taxes exceeding the 12% threshold, or (2) UUNET shall be able to terminate such affected RAS Ports without liability for any termination charges on 180 days prior written notice to ICG.

5.    Invoicing and Payment.

(i)  All invoices properly rendered hereunder shall be payable within thirty (30) days of UUNET's receipt of invoice. Due to a billing system which is currently unable to bill in arrears, ICG shall invoice UUNET for recurring charges monthly in advance. ICG shall use reasonable efforts to move to a billing system which shall bill in arrears. Non-recurring charges (if applicable) and charges which may apply to a specific transaction shall be invoiced after such charges are incurred or the goods and/or services accepted.

(ii)  Amounts remaining unpaid thirty (30) days past UUNET's receipt of invoice shall accrue interest from the date UUNET received the invoice at the lesser of one and one-half percent (1-1/2%) per month or the maximum rate allowed by law for such interest charges. The charge for any fractional portion of a month shall be computed as one thirtieth (1/30) of the basic monthly payment multiplied by the appropriate number of days.

(iii) Unless otherwise notified by UUNET in writing, ICG shall send all invoices for services rendered under this Agreement to: UUNET Technologies, Inc., Attention: Accounts Payable, 22001 Loudoun County Parkway, Ashburn, VA 20147.

6.    Forecast. Concurrently with the execution this Agreement, UUNET shall provide to ICG a non-binding forecast of the number of anticipated RAS Ports for the next ninety (90) days to be deployed within the currently defined ICG footprint. Thirty (30) days thereafter and for each thirty (30) day period during the term of this Agreement, UUNET will provide ICG with a ninety (90) day rolling, non-binding forecast of anticipated new UUNET RAS Ports.

7.    Term. This Agreement shall have an initial term (the "Initial Term") of five (5) years commencing on the Effective Date. Each RAS Port ordered under this Agreement shall be co-terminus with this Agreement. Notwithstanding the preceding sentence, if UUNET orders any RAS Services more than three (3) years after the Effective Date, the minimum term for such RAS Ports shall be twenty-four (24) months and the terms and conditions of this Agreement shall be extended to apply to such RAS Services. Following expiration of the

ICG / UUNET CONFIDENTIAL                    3/30/00 - AMENDED

DOJ - 00143
CONFIDENTIAL

S 1897

Initial Term, this Agreement shall automatically renew for successive six (6) month terms unless either party notifies the other party of its intent not to renew at least six (6) months prior to the end of the Initial Term or renewal term, as the case may be.

8.    Early Termination Charge.

(i) In the event UUNET terminates this Agreement prior to the expiration of the then-current Term or terminates or cancels a RAS Port located outside an MCIW City prior to the expiration of the Initial Term, or any MCIW City RAS Port prior to the end of the twelve (12) month period described in Section 3, for reasons other than a material breach by ICG, then UUNET shall be responsible for paying ICG an early termination charge equal to the following:

(a) If the termination occurs during the first twenty (20) months of the Initial Term, the amount of the termination charge shall be equal to 100% of the monthly charge for the canceled RAS Port(s) multiplied by the number of months remaining in the Initial Term at the time of cancellation.

(b) If the termination occurs during the second twenty (20) months of the Initial Term (months 21 through 40), the amount of the termination charge shall be equal to 70% of the monthly charge for the canceled RAS Port(s) multiplied by the number of months remaining in the Initial Term at the time of cancellation.

(c) If the termination occurs during the third twenty (20) months of the Initial Term (months 41 through 60), the amount of the termination charge shall be equal to 50% of the monthly charge for the canceled RAS Port(s) multiplied by the number of months remaining in the Initial Term at the time of cancellation.

(ii) The foregoing cancellation charges shall not apply to any MCIW City RAS Port that is terminated or moved in compliance with the requirements set forth in Section 3(i) above.

(iii) Any RAS Port that is terminated for which UUNET pays an early termination charge pursuant to this Section 8 shall continue to count towards the Minimum Services Commitment set forth in Section 2 above and the volume pricing discounts set forth in Exhibit B below.

9.    UUNET Equipment.

(i) In conjunction with the Original Agreement, ICG and UUNET have entered into an Equipment Purchase Agreement ("EPA") under which ICG Equipment, Inc. will purchase modems and other peripheral equipment ("Equipment") used for the RAS Services. Concurrently with the execution of this Agreement, ICG Equipment, Inc. and UUNET shall amend such EPA.

(ii) UUNET shall be responsible for the installation and management of all software upgrades for the Equipment purchased by ICG from UUNET under the EPA, and UUNET shall have exclusive logical access to such Equipment for UUNET network management. ICG shall assist UUNET in the resolution of Equipment failures in accordance with agreed-upon maintenance procedures. (See Exhibit C, Part 1 (Lucent/Ascend TNT Equipment) and Part 2 (3com Equipment).

10.    Additional Markets. ICG will, in good faith and based on economic viability, consider offering RAS Services in a new market requested by UUNET outside of ICG's then current footprint if UUNET commits to firm orders of at least 2,300 RAS Ports in such market with an installation date of nine (9) months after the date

DOJ - 00144
CONFIDENTIAL

S 1898

of such commitment; provided that, to the extent feasible, ICG shall endeavor to expeditiously provide such RAS Services in the new market prior to such installation date. ICG shall within ten (10) business days of UUNET's request evaluate such requests and advise UUNET of its ability to service UUNET in these additional areas. If ICG commits to expanding its footprint and providing the RAS Services in these additional areas, then these additional areas shall be added to ICG's current footprint and UUNET's order shall be counted for purposes of the Minimum Services Commitment and the volume pricing discounts set forth in Exhibit B. If ICG does not commit to providing RAS Services in these additional locations, the number of RAS Ports in UUNET's request shall nonetheless be counted for purposes of the volume discount pricing set forth in Exhibit B; provided that the foregoing shall apply only if the proposed additional location is listed on Exhibits D through G or other mutually agreed new markets.

11.    Number Portability. In the event UUNET elects to move a RAS Port to another carrier, ICG shall port the number related to such RAS Port to the other carrier; provided that local number portability is available in that market.

12.    Disclaimers and Limitations.

(i) Neither party will be liable or responsible for the content of any information contained on the Internet. Neither party will assume any responsibility for any consequences suffered by any person as a result of obtaining Internet access including without limitation damages arising from accessing Internet content or from computer viruses.

(ii) ICG will have no responsibility for authentication of the end users accessing the RAS Ports. UUNET will be responsible for controlling end user access to the RAS Ports.

(iii) ICG will have no direct responsibility or liability to the UUNET end users in connection with the RAS Services. UUNET shall be responsible for billing its end users and all records related to such billing or accounting.

(iv) NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, OR IN ANY EXHIBIT OR SCHEDULE, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER OR TO ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF BUSINESS PROFITS (NOT INCLUDING AMOUNTS DUE FOR THE SERVICES OR AS AN EARLY TERMINATION CHARGE), ANTICIPATED REVENUE, INFORMATION, DATA, THE INTERRUPTION OF BUSINESS, AND ANY LEGAL, ENGINEERING, CONSULTING OR OTHER PROFESSIONAL FEES OR EXPENSES, REGARDLESS OF WHETHER SUCH PARTY KNEW OR HAD REASON TO KNOW OF THE POSSIBILITY OF SUCH DAMAGES

(v) In the event any applicable law does not allow the limitation or exclusion of liability as provided for in this Agreement, the subject limitation or exclusion of liability shall be deemed modified so as to limit or exclude the parties' liability for damages hereunder to the greatest extent permitted by such law.

13.    Indemnification.

PAGE 5                          ICG / UUNET CONFIDENTIAL                   3/30/00 - AMENDED

DOJ - 00145
CONFIDENTIAL

S 1899

(i)  ICG shall indemnify and hold harmless UUNET and its affiliates and customers from any loss, damage, liability, costs, and expenses (including reasonable attorneys' fees) incurred on account of any third party claim alleging that the RAS Services violate the patent, trade secret, trademark, copyright, or other intellectual property right of any third party.

(ii)  UUNET shall indemnify and hold harmless ICG and its affiliates from any loss, damage, liability, costs, and expenses (including reasonable attorneys' fees) incurred on account of any third party claim alleging that UUNET's use of the RAS Services (as distinct from the services themselves) violate the patent, trade secret, trademark, copyright, or other intellectual property right of any third party.

(iii)  Each party shall indemnify and hold harmless the other party and its affiliates from and against any and all claims, liability, damage, loss, or expense (including reasonable attorneys' fees) for injury or death to persons or damage to tangible property, either real or personal, arising out of the negligent or intentional acts or omissions of the indemnifying party, its agents, employees or contractors.

(iv)  The indemnitor in any particular claim or action arising hereunder shall have the sole right to conduct the defense of any such claim or action and all negotiations for its settlement or compromise. The indemnitee shall promptly notify the indemnitor of the subject claim and provide reasonable information in connection with such claim.

14.    Representations and Warranties.

(i)  Each party represents and warrants to the other that:  (a) it has the right to enter into this Agreement to fully perform and fulfill the obligations and requirements for each transaction contemplated thereby; and (b) neither the performance of its services, its consummation of any transactions, nor its fulfillment of any obligations under this Agreement are in conflict with or violate the rights of any third party, or any legal obligation, law or regulation or any other agreements or obligations by which it is or may be bound.

(ii)  ICG represents and warrants that the RAS Services provided hereunder shall be performed by qualified professional personnel in accordance with industry standards and that the RAS Services will be in strict compliance with this Agreement and the terms forth in the Service Description attached hereto, or pursuant to other technical specifications reasonably submitted by UUNET, or as otherwise agreed by the parties in writing.

(iii)  ICG warrants that the RAS Services shall process all date data, calculations, storage, and retrieval without error or interruption prior to, during, and beyond the year 2000 in compliance with industry Year 2000 standards. Any service interruption due to a Year 2000 failure shall be treated as any other service interruption within the control of ICG, unless such Year 2000 failure was caused by (1) Equipment purchased by ICG from UUNET under the EPA, or (2) the action or inaction of UUNET with respect to the software described in Section 9(ii).

(iv) ICG shall provide, maintain, and upgrade the RAS Services in accordance with the same first-class standards applied by ICG to similar projects for any of its affiliated companies and other clients, in a good faith effort to support UUNET in developing, implementing, and/or managing UUNET's network and other related systems.

DOJ - 00146
CONFIDENTIAL

S 1900

(v) Service credits shall be applied when any RAS Port is interrupted or does not meet performance standards for any period lasting one (1) or more consecutive hours. No credit will be applied if the interruption is caused by (i) the negligence of UUNET; or (ii) an event of force majeure as provided in this Agreement. The amount of the credit shall be equal to the pro-rata monthly recurring charges due for all affected RAS Ports during which a confirmed outage has occurred, including the initial one (1) hour. Outages may be confirmed only by an ICG employee authorized to make such determination and will be calculated in ½-hour increments; or major fraction thereof, of the interruption.

(vi) ICG shall commence repairs of any service outage or failed Equipment or other components of the RAS Services within two (2) hours of determining that a service outage has occurred or that Equipment or other components have failed. ICG shall use all commercially reasonable efforts to diligently complete such repairs.

(vii) ICG shall install within forty-five (45) days ("Installation Period") all RAS Ports ordered by UUNET hereunder. ICG shall credit to UUNET one month's monthly recurring fees for each twenty (20) days or portion thereof that a RAS Port is delayed beyond such Installation Period.

(viii) THERE ARE NO WARRANTIES MADE UNDER THIS AGREEMENT BY EITHER PARTY TO THE OTHER OR TO ANY THIRD PARTY EXCEPT AS EXPRESSLY SPECIFIED IN THIS AGREEMENT, AND TO THE FULL EXTENT PERMITTED BY LAW, THE PARTIES EXPRESSLY DISCLAIM ANY AND ALL OTHER WARRANTIES, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE.

15.    Default, Termination. Either party may terminate this Agreement if any one of the following Events of Default occur: (1) if the other party fails to perform or comply with any material provision of this Agreement; (2) if the other party becomes insolvent or admits in writing its inability to pay debts as they mature, or makes an assignment for the benefit of creditors; (3) if a petition under any foreign, state or United States bankruptcy act, receivership statute, or the like, as they now exist, or as they may be amended, is filed by the other party; or (4) if such a petition is filed against the other party by any third party and such application is not resolved favorably to such other party within sixty (60) days. Termination due to default under part (1) of this Section 15, shall be effective thirty (30) days after the written notice to the defaulting party if the default has not been cured within such thirty (30) day period.

16.    Force Majeure. In no event shall either party be liable to the other party for any delay or failure to perform due to causes beyond the control and without the fault or negligence of the party claiming excusable delay, including but not limited to acts of God, fire, explosion, vandalism, storm, governmental action, changes in applicable laws or regulations, wars, strikes or other labor difficulties, or supplier failures. If the force majeure condition continues for a period greater than thirty (30) days, either party may terminate any RAS Port which is the subject of the excused performance; provided that if ICG terminates a RAS Port pursuant to this Section, the such terminated RAS Port shall continue to count towards UUNET's Minimum Services Commitment and the volume pricing set forth in Exhibit B.

17.    Confidential Information. The confidentiality obligations set forth in the Mutual Non-Disclosure Agreement between UUNET and ICG, dated April 9, 1999, shall apply with respect to this Agreement and shall be incorporated by reference as if set forth in full herein. The parties' confidentiality obligations shall survive the termination or expiration of this Agreement for an additional two (2) years.

DOJ - 00147
CONFIDENTIAL

18.     No Use of Trademarks.  Neither party may use the name, logo, or any other trademarks or service marks of the other party in any advertising, signage, marketing materials, brochures, or any other materials in any medium without the other party's prior written consent (which shall not be unreasonably withheld, conditioned, r delayed).  Any such permitted use shall be only pursuant to the guidelines or instructions provided by the other party.

19.     Insurance.  Before work is performed under this Agreement, each party shall obtain, and keep in full force and effect for the duration of this Agreement, with a carrier or carriers reasonably satisfactory to the other party, and shall, on request, furnish the other with certificates of such insurance policies as may be required by law and, whether or not required by law, insurance policies of the following kinds and in the following amounts:

(i)     Worker's Compensation complying with the law of the state or states of operation; and Employer's Liability insurance with limits of no less than five hundred thousand dollars ($500,000) per accident and per employee; and

(ii)     Commercial General Liability insurance with a combined single limit for bodily injury and property damage of no less than one million dollars ($1,000,000) per each occurrence and General and Products Liability aggregates of no less than two million dollars ($2,000,000); each covering all obligations and operations of the subject party.  The policy shall include no modifications that reduce the standard coverage provided under a Commercial General Liability Insurance policy form.

20.     Relationship of the Parties.  The relationship between UUNET and ICG is that of independent contractors, and shall not be construed as any other sort of business relationship, including without limitation an employment, agency, partnership or joint venture relationship.  The relationship created by this Agreement is non-exclusive.  UUNET shall be free to acquire similar services from alternative sources without obligation to 'CG.

21.     Assignment.  Neither party may assign this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed; provided, however, that a party shall be allowed to assign this Agreement upon written notice and without the other party's consent to a parent, subsidiary, or affiliated company or in connection with a sale or merger involving all or substantially all of such party's stock or assets.

22.     Modification, Amendment, Waiver.  No modification, course of conduct, amendment, supplement to or waiver of this Agreement shall be binding upon the parties unless made in writing and duly signed by both parties.  At no time shall any failure or delay by either party in enforcing any provisions, exercising any option, or requiring performance of any provisions, be construed to be a waiver of same.  No effective waiver of any right hereunder shall be construed to be a waiver of any other right.

23.     Notices.  All notices shall be in writing and either delivered personally or mailed, first class mail and postage prepaid.  All notices shall be sent as follows:

*If to UUNET, addressed as follows:*
        UUNET Technologies, Inc.
        Attn: General Counsel
        22001 Loudoun County Parkway
        Ashburn, VA 20147

S 1902

*If to ICG, addressed as follows:*
    ICG Telecom Group, Inc.
    Attn: President
    161 Inverness Drive West
    Englewood, Colorado 80112

*With a copy to:*
    ICG Telecom Group, Inc.
    Attn : General Counsel
    161 Inverness Drive West
    Englewood, Colorado 80112

24.    <u>Governing Law</u>. In all respects this Agreement shall be governed by the substantive laws of the State of New York without regard to conflict of law principles.

25.    <u>Successors</u>. This Agreement shall inure to the benefit of and be binding on the parties, and their heirs, successors, assigns and legal representatives, but nothing contained in this section shall be construed to permit an assignment or other transfer except as specifically provided herein.

26.    <u>Miscellaneous</u>. If any of the provisions of this Agreement are held invalid, the remaining provisions shall be unimpaired. Headings are for reference only and shall not affect the meaning of any of the provisions of this Agreement. No rule of construction requiring interpretation against the draftsman shall apply in the interpretation of this Agreement. The terms and provisions contained in this Agreement that by their sense and context are intended to survive shall survive the completion of performance and termination of this Agreement, including, without limitation, the obligation to make all payments due hereunder, the obligation to indemnify, and the obligation to preserve the confidentiality of confidential information.

27.    <u>Entire Agreement</u>. This Agreement is comprised of this Agreement and any Exhibits incorporated by reference herein. This Agreement constitutes the entire agreement between the parties and supersedes all previous agreements (including without limitation the Original Agreement in its entirety), promises, proposals, representations, understandings and negotiations, whether written or oral, between the parties respecting the subject matter hereof.

28.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall constitute an original, but all such counterparts together shall constitute but one and the same instrument.

29.    <u>Comparable Customers</u>. The prices set forth in this Agreement shall be no less favorable to UUNET than the prices extended by ICG to any other non-governmental customer for similar volumes of similar services and similar Equipment prices; provided that ICG affiliated companies shall be deemed to be not comparable customers for purposes of this Section 29. Upon UUNET's request, but no more than once each calendar year, ICG's Chief Financial Officer shall certify ICG's compliance with this Section.

30.    <u>Tariffs</u>. The services provided by ICG under this Agreement may be subject to ICG's tariff(s). Notwithstanding anything in this Agreement to the contrary, in the event that ICG enforces or attempts to enforce any tariff provision that is materially different from the provisions of this Agreement, then UUNET

DOJ - 00149
CONFIDENTIAL

S 1903

shall be allowed to cancel the RAS Services affected by such enforcement or attempted enforcement without liability for any termination charges.

31.     Conversion of PRI Services.   All PRI Lines provided by ICG to UUNET shall be converted to RAS Ports, as follows:

(i)     Upon the Effective Date, the parties agree that UUNET will no longer be purchasing PRI Services from ICG. Any and all such PRI Services provided by ICG to UUNET immediately before the Effective Date shall, by virtue of ICG Equipment Inc.'s purchase of the Equipment related to such PRI Lines under the EPA, be converted to RAS Ports subject to the prices, terms, and conditions of this Agreement.

(ii)     Notwithstanding Section 31(i) above, in the event that UUNET should purchase a service provider similar to UUNET and if said provider is currently buying PRI Lines from ICG, UUNET shall use commercially reasonable efforts to cooperate with ICG in converting all such PRI Lines purchased through the new entity to RAS Ports within six (6) months after the completion of such purchase by UUNET. Any such PRI Lines provided to UUNET by ICG (prior to conversion to RAS Ports) shall be priced at $20.00 per PRI Line per month.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

ICG Telecom Group, Inc.

By *Pamela S. Jacobson*

Name *Pamela S. Jacobson*

Title *EVP - Sales & Marketing*

UUNET Technologies, Inc.

By *[signature]*

Name *Reese Radcliffe*

Title *VP, Global Provider + Logistics Mgmt.*

Approved By, UUNET LEGAL Department

By: *[signature]*

Signature

Date *3/30/00*

DOJ - 00150
CONFIDENTIAL

S 1904

## EXHIBIT A

MCI WorldCom Cities (By State)

ICG / UUNET CONFIDENTIAL                    3/30/00 - AMENDED

DOJ - 00151
CONFIDENTIAL

S 1905

| | | | |
|---|---|---|---|
| AR | LITTLEROCK | HAYWARD | PICORIVERA |
| AZ | MARICOPA | HRCUL-RODE | PITTSBURG |
| | PHOENIX | HUNTITNBCH | PLACENTIA |
| | TUCSON | IGNACIO | PLEASANTON |
| CA | AGOURA | INGLEWOOD | POMONA |
| | ALAMITOS | IRVINE | POWAY |
| | ALHAMBRA | LA HABRA | PSBG WEST |
| | ANAHEIM | LA HONDA | PSDN LACN |
| | ANTIOCH | LA JOLLA | PSDN PSDN |
| | ARCADIA | LA MESA | PTLM MAIN |
| | AZUSA | LA PUENTE | PTLM SWIFT |
| | BENICIA | LACRSCENTA | RAMONA |
| | BEVERLYHLS | LAFAYETTE | REDONDO |
| | BKFD MAIN | LAKEWOOD | REDWOOD CY |
| | BKFD NORTH | LIVERMORE | RESEDA |
| | BKFD SOUTH | LODI | RICHMOND |
| | BOULDERCRK | LONG BEACH | RNCHOBRNDO |
| | BRBN BRBN | LOS ALTOS | RNCHOPNQTS |
| | BRBN SNVY | LSAN DA 01 | RNCHOSANFE |
| | BREA | LSAN DA 02 | RSVL MAIN |
| | BSHP RNCH | LSAN DA 03 | SADLBK VLY |
| | BUENA PARK | LSAN DA 04 | SAN MARCOS |
| | CAMPBELL | LSAN DA 05 | SAN MATEO |
| | CANOGAPARK | LSAN DA 06 | SAN PEDRO |
| | CAPITRNVLY | LSAN DA 07 | SAN RAFAEL |
| | CHULAVISTA | LSAN DA 08 | SANTA ANA |
| | CLAREMONT | LSAN DA 09 | SANTA ROSA |
| | CLAYTON | LSAN DA 10 | SAUSALITO |
| | CLOVIS | LSAN DA 11 | SCRM MAIN |
| | CMTN CMTN | LSAN DA 12 | SCRM NORTH |
| | CMTN GRDN | LSAN DA 13 | SIERRAMADR |
| | CONCORD | LSAN DA 14 | SNCA NHCS |
| | CORONADO | MALIBU | SNCA SGCC |
| | CORTEMADRA | MARTINEZ | SNCRL-BLMT |
| | COVINA | MILLBRAE | SNDG LVTA |
| | CROCKETT | MILLVALLEY | SNDG MRMS |
| | CULVERCITY | MONROVIA | SNDG SNDG |
| | CYPRESS | MONTEBELLO | SNFC CNTRL |
| | DANVILLE | MORAGA | SNFC JUNPR |
| | DEL MAR | MOSS BEACH | SNFC MT-EV |
| | DIAMONDBAR | MT VIEW | SNFN GRHL |
| | DOWNEY | NAPA | SNFN PACM |
| | DUBLN-SNRM | NATIONALCY | SNFN SNFN |
| | ECONTRCOST | NEWPORTBCH | SNFN SPLV |
| | EL CAJON | NICASIO | SNJS NORTH |
| | EL MONTE | NO HOLLYWD | SNJS SOUTH |
| | EL SEGUNDO | NORTHRIDGE | SNJS WEST |
| | ELSBR-PINL | NORWALK | SNMN MRVS |
| | ENCINITAS | NOVATO | SNMN SNMN |
| | ESCONDIDO | OCSD CRLS | SONOMA |
| | FAIR OAKS | OCSD OCSD | SSNFRNCSCO |
| | FOLSOM | OCSD PDTN | STNSN-BLNS |
| | FRESNO | OKLD ALMD | STOCKTON |
| | FRFLD-SUIS | OKLD BKLY | SUNLD TJNG |
| | FRNK GRNLF | OKLD FRTVL | SUNNYVALE |
| | FRNK MAIN | OKLD MN-PD | SUNOL |
| | FRNK OLIVR | OKLD TRNID | TOMALES |
| | FULLERTON | ORANGE | TORRANCE |
| | GARDEN GRV | ORINDA | VALLEJO |
| | GLENDALE | PACIFICA | VAN NUYS |
| | HALFMOONBY | PALO ALTO | VISTA |
| | HAWTHORNE | PESCADERO | W ANGELES |

ICG / UUNET CONFIDENTIAL          3/30/00 - AMENDED

DOJ - 00152
CONFIDENTIAL

S 1906

|       |              |       |             |             |
|-------|--------------|-------|-------------|-------------|
|       | WALNUT CRK   |       | FTLAUDERDL  | CHICGOZN01  |
|       | WESTMINSTR   |       | GENEVA      | CHICGOZN02  |
|       | WHITTIER     |       | HOLLYWOOD   | CHICGOZN03  |
|       | YORBALINDA   |       | HOMESTEAD   | CHICGOZN04  |
|       | YOUNTVILLE   |       | HUDSON      | CHICGOZN05  |
| CO    | AURORA       |       | KISSIMMEE   | CHICGOZN06  |
|       | BRIGHTON     |       | MIAMI       | CHICGOZN07  |
|       | DENVER       |       | NORTH DADE  | CHICGOZN08  |
|       | DENVERSLVN   |       | NWPTRICHEY  | CHICGOZN09  |
| CT    | BRIDGEPORT   |       | ORLANDO     | CHICGOZN10  |
|       | BRISTOL      |       | OVIEDO      | CHICGOZN11  |
|       | CANTON       |       | PERRINE     | CICERO      |
|       | COLUMBIA     |       | PLANT CITY  | CRYSTAL LK  |
|       | CORNWALL     |       | POMPANOBCH  | DEERFIELD   |
|       | COVENTRY     |       | REEDYCREEK  | DESPLAINES  |
|       | DANBURY      |       | SANFORD     | DOWNERSGRV  |
|       | DEEP RIVER   |       | ST CLOUD    | DUNDEE      |
|       | E HAMPTON    |       | STPETERSBG  | ELGIN       |
|       | ENFIELD      |       | TAMPA       | ELK GROVE   |
|       | FAIRFIELD    |       | TARPON SPG  | ELMHURST    |
|       | FARMINGTON   |       | WINDERMERE  | EVANSTON    |
|       | GLASTONBY    |       | WINTERGRDN  | FOREST      |
|       | GRANBY       |       | WINTERPARK  | FRANKLINPK  |
|       | GREENWICH    |       | WKISSIMMEE  | GENEVA      |
|       | HADDAM       |       | ZEPHYRHILS  | GLEN ELLYN  |
|       | HARTFORD     | GA    | ACWORTH     | GLENCOE     |
|       | MANCHESTER   |       | ALPHARETTA  | GLENVIEW    |
|       | MERIDEN      |       | ATLANTA     | HALF DAY    |
|       | MIDDLETOWN   |       | AUSTELL     | HARVEY      |
|       | NEW HAVEN    |       | CHAMBLEE    | HIGHLANDPK  |
|       | NEWBRITAIN   |       | CONYERS     | HINSDALE    |
|       | NEWINGTON    |       | DALLAS      | HOMEWOOD    |
|       | NORWALK      |       | DOUGLASVL   | ITASCA      |
|       | NORWICH      |       | DULUTH      | JOLIET      |
|       | OLD SAYBRK   |       | FAIRBURN    | LA GRANGE   |
|       | PLAINFIELD   |       | FAYETTEVL   | LAKEFOREST  |
|       | PLAINVILLE   |       | HAMPTON     | LAKEZURICH  |
|       | PUTNAM       |       | JONESBORO   | LIBERTYVL   |
|       | ROCKVILLE    |       | LAWRENCEVL  | LOMBARD     |
|       | SHARON       |       | LITHONIA    | MAYWOOD     |
|       | SIMSBURY     |       | MARIETTA    | MCHENRY     |
|       | SOUTHINGTN   |       | MCDONOUGH   | MUNDELEIN   |
|       | STAMFORD     |       | NORCROSS    | NAPERVILLE  |
|       | STORRS       |       | PANOLA      | NORTHBROOK  |
|       | STRATFORD    |       | POWDER SPG  | OAK LAWN    |
|       | TORRINGTON   |       | ROSWELL     | OAK PARK    |
|       | WATERBURY    |       | SMYRNA      | PALATINE    |
|       | WESTPORT     |       | STOCKBDG    | PALOS PARK  |
|       | WETHERSFLD   |       | STONE MT    | PARK RIDGE  |
|       | WINDSOR      |       | TUCKER      | PLAINFIELD  |
|       | WINDSORLKS   |       | WOODSTOCK   | RIVERDALE   |
|       | WOLCOTT      | IL    | ARLIGTNHTS  | RIVERGROVE  |
| DC    | WSHNGTNZN1   |       | AURORA      | RIVERSIDE   |
| FL    | APOPKA       |       | BARRINGTON  | ROSELLE     |
|       | BOCA RATON   |       | BARTLETT    | SKOKIE      |
|       | BOYNTONBCH   |       | BATAVIA     | ST CHARLES  |
|       | CLEARWATER   |       | BELLWOOD    | SUMMIT      |
|       | CORAL SPG    |       | BENSENVL    | THORNTON    |
|       | DEBARY       |       | BERWYN      | W CHICAGO   |
|       | DEERFLDBCH   |       | BLUEISLAND  | WARRENVL    |
|       | DELRAY BCH   |       | BROOKFIELD  | WAUKEGAN    |
|       | EASTORANGE   |       | CALUMET CY  | WESTERNSPG  |

PAGE 13                    ICG / UUNET CONFIDENTIAL              3/30/00 - AMENDED

DOJ - 00153
CONFIDENTIAL

S 1907

| | | | |
|---|---|---|---|
| | WHEATON | MARBLEHEAD | ELKRIDGE |
| | WHEELING | MARLBORO | ELLICOTTCY |
| | WILLOW SPG | MAYNARD | ESSEX |
| | WILMETTE | MEDFIELD | FALLSTON |
| | WINNETKA | MEDFORD | FORK |
| IN | CARMEL | MELROSE | GAITHERSBG |
| | FISHERS | MILTON | GLENBURNIE |
| | INDIANAPLS | NATICK | LAUREL |
| | LAWRENCEBG | NEEDHAM | MILLERSVL |
| | W HARRISON | NEWTON | ODENTON |
| KS | KANSASCITY | NO READING | PARKVILLE |
| | MELROSE | NORTHAMPTN | PIKESVILLE |
| | OLATHE | NORWELL | POOLESVL |
| KY | ALEXANDRIA | NORWOOD | RANDALLSTN |
| | BOONE | PALMER | REISTERSTN |
| | COVINGTON | PEABODY | SEVERN |
| | INDEPNONCE | PITTSFIELD | SEVERNA PK |
| | WALTON | QUINCY | SHERWD FOR |
| MA | ACTON | RANDOLPH | SPARKSGLNC |
| | AMHERST | READING | SPARROWSPT |
| | ANDOVER | REVERE | SYKESVILLE |
| | BEVERLY | ROCKLAND | TOWSON |
| | BILLERICA | ROXBURY | WATERLOO |
| | BOSTON | SALEM | WOODLAWN |
| | BRAINTREE | SAUGUS | WORTHINGTN |
| | BRIGHTON | SCITUATE | WSHNGTNZN2 |
| | BROCKTON | SHARON | WSHNGTNZN3 |
| | BROOKLINE | SO BOSTON | WSHNGTNZN4 |
| | BURLINGTON | SOMERVILLE | WSHNGTNZN5 |
| | CAMBRIDGE | SPRINGFLD | WSHNGTNZN6 |
| | CANTON | STONEHAM | WSNGTNZN10 |
| | CHARLESTN | STOUGHTON | WSNGTNZN11 |
| | CHELSEA | SUDBURY | WSNGTNZN12 |
| | CHICOPEE | WAKEFIELD | WSNGTNZN13 |
| | COHASSET | WALPOLE | WSNGTNZN14 |
| | CONCORD | WALTHAM | WSNGTNZN15 |
| | DANVERS | WATERTOWN | WSNGTNZN16 |
| | DEDHAM | WAYLAND | ME ACTON |
| | DORCHESTER | WELLESLEY | AUGUSTA |
| | DOVER | WESTBORO | BANGOR |
| | EASTBOSTON | WEYMOUTH | BATH |
| | EASTON | WILBRAHAM | BELFAST |
| | ELONGMEDOW | WILMINGTON | BERWICK |
| | EVERETT | WINCHESTER | BIDDEFORD |
| | FRAMINGHAM | WINTHROP | BINGHAM |
| | FRANKLIN | WOBURN | BLUE HILL |
| | GREENFIELD | WORCESTER | BOOTHBAHBR |
| | HAVERHILL | MD ANNAPOLIS | BRIDGTON |
| | HINGHAM | ARBUTUS | BROWNVILLE |
| | HOLYOKE | ARGRGBSNIS | BRUNSWICK |
| | HOPKINTON | ASHTON | CAMDEN |
| | HUDSON | BALTIMORE | CARIBOU |
| | HULL | BRANDYWINE | COLUMBIA |
| | JAMAICA PL | BRYNPKLNCM | CORNISH |
| | KINGSTON | CATONSVL | DANFORTH |
| | LAWRENCE | CHASE | DEER ISLE |
| | LEXINGTON | COCKEYSVL | EASTPORT |
| | LINCOLN | COLUMBIA | ELIOT |
| | LITTLETON | CROFTON | ELLSWORTH |
| | LOWELL | DAMASCUS | EMILLINCKT |
| | LYNN | DUNDALK | GRAND ISLE |
| | MALDEN | EDGEWOOD | GREENVILLE |

DOJ - 00154
CONFIDENTIAL

S 1908

| | | |
|---|---|---|
| GUILFORD | MT CLEMENS | COLEBROOK |
| HOULTON | NORTHVILLE | CONCORD |
| JACKMAN | PLYMOUTH | DEERFIELD |
| KITTERY | PONTIAC | DERRY |
| LEWISTON | PORT HURON | DOVER |
| LINCOLN | ROCHESTER | EPPING |
| LUBEC | ROCKFORD | EXETER |
| MACHIAS | ROCKWOOD | FRANKLIN |
| MADAWASKA | ROMULUS | GOFFSTOWN |
| MADISON | ROSEVILLE | JEFFERSON |
| NEWPORT | ROYAL OAK | KEENE |
| NORWAY | SOUTHFIELD | LACONIA |
| PORTLAND | SPARTA | LANCASTER |
| PRESQUE IS | TRAVERSECY | LEBANON |
| RANGELEY | TRENTON | LITTLETON |
| RICHMOND | TROY | LYME |
| ROCKLAND | UTICA | MANCHESTER |
| RUMFORD | W BLOOMFLD | MEREDITH |
| SANFORD | WARREN | MERRIMACK |
| SCARBOROGH | WAYNE | MILAN |
| SO BERWICK | WYANDOTTE | MILFORD |
| VANCEBORO | YPSILANTI | MILTON |
| WALDOBORO | ZEELAND | NASHUA |
| WATERVILLE  MN | MOUND | NEW BOSTON |
| WESTBROOK | STCROIXBCH | NO CONWAY... |
| WILTON | STILLWATER | NOWOODSTOK |
| WINTER HBR | TWINCITIES | PELHAM |
| WOODLAND  MO | BRIDGETON | PETERBROGH |
| YORK | CREVECOEUR | PIKE |
| MI  ADA | FENTON | PLAISTOW |
| ALTO | FLORISSANT | PLYMOUTH |
| ANN ARBOR | GLADSTONE | PORTSMOUTH |
| AUBURN HTS | IMPERIAL | RYE BEACH |
| BIRMINGHAM | KANSASCITY | SALEM |
| BRIGHTON | KIRKWOOD | SO HAMPTON |
| BYRON CTR | LADUE | SPOFFORD |
| CALEDONIA | MANCHESTER | SUNAPEE |
| CENTERLINE | NASHUA | SUNCOOK |
| DETROITZN1 | OVERLAND | TAMWORTH |
| DETROITZN2 | PARKVILLE | TILTON |
| DETROITZN3 | SAPPINGTON | WOLFEBORO |
| DETROITZN4 | SPRINGFLD  NJ | ALLENTOWN |
| DETROITZN5 | ST CHARLES | BAYONNE |
| DETROITZN6 | ST LOUIS | BEAVER BRK |
| DIMONDALE  MS | JACKSON | BELLE MEAD |
| DORR  NC | APEX | BELLEVILLE |
| DUTTON | CARY | BERNARDSVL |
| FARMINGTON | CARY-RTP | BLACKWOOD |
| FLAT ROCK | CHAPELHILL | BLOOMFIELD |
| FLINT | CLAYTON | BOONTON |
| GRAND RPDS | CREEDMOOR | BORDENTOWN |
| GRATTAN | DURHAM | BOUNDBROOK |
| HOLLAND | FUQUAYVRIN | BURLINGTON |
| HUDSONVL | KNIGHTDALE | CALDWELL |
| JAMESTOWN | RALEIGH | CAMDEN |
| LANSING | WAKEFOREST | CARTERET |
| LAPEER | WENDELL | CHATHAM |
| LIVONIA | ZEBULON | CLIFFSIDE |
| LOWELL  NH | BEDFORD | CLOSTER |
| MARNE | CANAAN | COLLINGSWD |
| MOLINE | CANDIA | CRANBURY |
| MONROE | CLAREMONT | CRANFORD |

DOJ - 00155
CONFIDENTIAL

S 1909

DUMONT
DUNELLEN
ELIZABETH
ELMER
ENGLEWOOD
ENGLISHTN
EWING
FAIR LAWN
FANWOOD
FARMINGDL
FLEMINGTON
FLORENCE
FRANKLINPK
FRANKLINVL
FREEHOLD
GLASSBORO
GLOUCESTER
HACKENSACK
HADDON HTS
HADDONFLD
HASBROKHTS
HAWTHORNE
HIGHTSTOWN
HOLMDEL
HOPEWELL
JAMESBURG
JERSEYCITY
KEANSBURG
KEARNY
KEYPORT
LAMBERTVL
LAUREL SPG
LAWRENCEVL
LEONIA
LINDEN
LITTLE FLS
LIVINGSTON
MADISON
MARLTON
MATAWAN
MEDFORD          NM
MERCERVL         NV
MERCHANTVL       NY
METUCHEN
MIDDLETOWN
MILLBURN
MILLINGTON
MONMTH JCT
MOORESTOWN
MORRISTOWN
MOUNTHOLLY
MT VIEW
MULLICA HL
NESHANIC
NEW EGYPT
NEWARK
NEWBRNSWCK
NUTLEY
OLDWICK
ORADELL
ORANGE
PARK RIDGE

PASSAIC
PATERSON
PAULSBORO
PEAPACK
PEMBERTON
PENNINGTON
PERTHAMBOY
PITMAN
PLAINFIELD
PLAINSBORO
POMPTONLKS
PRINCETON
RAHWAY
RAMSEY
RED BANK
RIDGEWOOD
RIVERSIDE
RIVERTON
ROSELLE
RUTHERFORD
SO ORANGE
SOMERVILLE
SOUTHAMBOY
SOUTHRIVER
SUMMIT
SWEDESBORO
TEANECK
TRENTON          OH
UNION CITY
UNIONVILLE
VERONA
VINCENTOWN
WENONAH
WESTFIELD
WESTWOOD
WHIPPANY
WHITEHOUSE
WOODBRIDGE
WOODBURY
WYCKOFF
ALBUQURQUE
RENO
ALBANY
ARMONK VLG
BREWSTER
BUFFALO
CONGERS
FARMINGDL
HUNTINGTON
KATONAH
LANCASTER
MOUNTKISCO
MT VERNON
NANUET
NASSAUZN01
NASSAUZN02
NASSAUZN03       OK
NASSAUZN05
NASSAUZN08
NASSAUZN09
NEW CITY
NWYRCYZN01       OR

NWYRCYZN02
NWYRCYZN03
NWYRCYZN05
NWYRCYZN06
NWYRCYZN08
NWYRCYZN11
NWYRCYZN12
NWYRCYZN13
NYACK
OSSINING
PEARLRIVER
PEEKSKILL
PIERMONT
PLEASANTVL
ROCHESTER
SPRING VLY
SUFFERN
TONAWANDA
WILLIAMSVL
WSCHSTZN01
WSCHSTZN04
WSCHSTZN05
WSCHSTZN06
WSCHSTZN07
WSCHSTZN08
WSCHSTZN09
YORKTN HTS
BEDFORD
BEREA
BETHANY
BRECKSVL
CHAGRINFLS
CHESTERLD
CINCINNATI
CLERMONT
CLEVELAND
GATESMILLS
HAMILTON
HARRISON
HILLCREST
INDEPNDNCE
LTL MIAMI
MASON
MAUMEE
MONTRSE
NOROYALTON
OLMSTEDFLS
SHANDON
STRONGSVL
SYLVANIA
TERRACE
TOLEDO
TRINITY
VICTORY
WICKLIFFE
WILLOUGHBY
BETHANY
BRITTON
OKLA CITY
STILLWATER
TULSA
BEAVERTON

DOJ - 00156
CONFIDENTIAL

S 1910

| | | | | |
|---|---|---|---|---|
| | BURLINGTON | | PHPHSBZN34 | ARCOLA |
| | FOREST GRV | | PHPHSBZN37 | ARGYLE |
| | GRESHAM | | PHPHSBZN38 | ARLINGTON |
| | HILLSBORO | | PHPHSBZN39 | AUSTIN |
| | LAKEOSWEGO | | PHPHSBZN40 | BAMMEL |
| | NORTH PL | | PHPHSBZN41 | BARKER |
| | OKGRVMLWKI | | PHPHSBZN42 | BARTONVL |
| | OREGONCITY | | PHPHSBZN43 | CARROLLTON |
| | PORTLAND | | PHPHSBZN44 | DALLAS |
| | SCHOLLS | | PHPHSBZN45 | DEER PARK |
| | SHERWOOD | | PTGSBNZN10 | DLFTWTARPT |
| | STAFFORD | | PTGSBNZN11 | EULESS |
| | SUNNYSIDE | | PTGSBNZN12 | FORNEY |
| | TIGARD | | PTGSBNZN13 | FORT WORTH |
| PA | ALIQUIPPA | | PTGSBNZN14 | FRIENDSWD |
| | AMBRIDGE | | PTGSBNZN15 | FRISCO |
| | BADEN | | PTGSBNZN16 | GRANDPRARI |
| | CANONSBURG | | PTGSBNZN17 | GRAPEVINE |
| | CENTER PT | | PTGSBNZN18 | HIGHLANDS |
| | CHESTERSPG | | PTGSBNZN19 | HOUSTON |
| | CLAIRTON | | PTGSBNZN20 | HSTNSUBURB |
| | COLLEGEVL | | PTGSBNZN21 | IRVING |
| | DONORA | | PTGSBNZN22 | LANGHAMCRK |
| | DOYLESTOWN | | PTGSBNZN23 | LEWISVILLE |
| | ELIZABETH | | PTTSBGZON1 | MANVEL |
| | EXTON | | PTTSBGZON2 | MCKINNEY |
| | FINLEYVL | | PTTSBGZON3 | PLANO |
| | GLENMILLRD | | PTTSBGZON4 | PRINCETON |
| | IMPERIAL | | PTTSBGZON5 | PROSPER |
| | KENNETT SQ | | PTTSBGZON6 | ROCKWALL |
| | LANSDALE | | PTTSBGZON7 | SANANTONIO |
| | LENAPE | | PTTSBGZON8 | SATSUMA |
| | LINELXNGTN | | SOUDERTON | SEAGOVILLE |
| | MCMURRAY | | SPRINGDALE | SHELDON |
| | MENDENHALL | | TARENTUM | SOMERSET |
| | MONESSEN | | W CHESTER | STAFFORD |
| | NEWKNSNGTN | | WESTTOWN | WESTFIELD |
| | NORTHWALES | RI | BRISTOL | UT | HOLLADAY |
| | OAKDALE | | CENTREDALE | KEARNS |
| | PERKASIE | | COVENTRY | MIDVALE |
| | PHLDLPHZN1 | | GREENWICH | MURRAY |
| | PHLDLPHZN2 | | HOPEVALLEY | OGDEN |
| | PHLDLPHZN3 | | LTLCOMPTON | PROVO |
| | PHLDLPHZN4 | | NARRAGNSTT | SALT LAKE |
| | PHPHSBZN10 | | NEWPORT | VA | BRADDOCK |
| | PHPHSBZN11 | | NO KINGSTN | DALE CITY |
| | PHPHSBZN12 | | PAWTUCKET | DULLES |
| | PHPHSBZN13 | | PORTSMOUTH | ENGLESIDE |
| | PHPHSBZN14 | | PROVIDENCE | HERNDON |
| | PHPHSBZN17 | | SCITUATE | LEESBURG |
| | PHPHSBZN21 | | W WARWICK | LORTON |
| | PHPHSBZN22 | | WARREN | MANASSAS |
| | PHPHSBZN23 | | WARWICK | OCCOQUAN |
| | PHPHSBZN24 | | WESTERLY | WSNGTNZN08 |
| | PHPHSBZN25 | | WOONSOCKET | WSNGTNZN17 |
| | PHPHSBZN26 | TN | ARLINGTON | WSNGTNZN19 |
| | PHPHSBZN28 | | COLLIERVL | WA | AUBURN |
| | PHPHSBZN29 | | KNOXVILLE | BAINBDG IS |
| | PHPHSBZN30 | | MEMPHIS | BATTLEGRND |
| | PHPHSBZN31 | | OAK RIDGE | BELLEVUE |
| | PHPHSBZN32 | TX | ALLEN | BOTHELL |
| | PHPHSBZN33 | | APOLLO | BREMERTON |

ICG / UUNET CONFIDENTIAL    3/30/00 - AMENDED

DOJ - 00157
CONFIDENTIAL

S 1911

CAMAS
DES MOINES
EVERETT
HALLS LAKE
ISSAQUAH
KENT
KIRKLAND
MAPLE VLY
PORT ORCH
POULSBO
RENTON
RICHMNDBCH
SEATTLE
SILVERDALE
SILVERLAKE
TACOMA
VANCOUVER
VASHON
WOODLAND

WI      BIG BEND
CALEDONIA
CEDARBURG
HARTLAND
HUBERTUS
MENOMONFLS
MERTON
MILWAUKZN1
MILWAUKZN2
MILWAUKZN3
MILWAUKZN4
MILWAUKZN5
MUSKEGO
PEWAUKEE
RACINE
SUSSEX
THIENSVL
WAUKESHA

ICG / UUNET CONFIDENTIAL         3/30/00 - AMENDED

DOJ - 00158
CONFIDENTIAL

S 1912

## EXHIBIT B

Prices/Rates for RAS Services

1.  The monthly fee per RAS Port for a given calendar month shall be based on the number of active and ordered RAS Ports (as determined in accordance with Section 2 above), plus the number of RAS Ports subject to the provisions set forth in Section 3(ii) above, plus the number of RAS Ports subject to the provisions set forth in Section 8(iii) above, and plus the number of RAS Ports subject to the provisions set forth in Section 16 above, all of which to be determined as of the last day of such month (collectively, "Total Monthly RAS Ports"), in accordance with the following table and subject to any applicable Minimum Service Commitment set forth in Section 2 above:

| Total Monthly RAS Ports | Monthly Fee per RAS Port |
|---|---|
| 0 – 149,999 | $ 24.00 |
| 150,000 – 199,999 | $ 23.00 |
| 200,000 – 249,999 | $ 22.00 |
| 250,000 – 349,999 | $ 21.50 |
| 350,000 – 499,999 | $21.00 |
| 500,000 + | $ 20.00 |

. No non-recurring charges shall apply with respect to the RAS Ports provided hereunder.  To the extent that any ICG tariff for RAS Ports includes non-recurring charges, ICG agrees that such non-recurring charges already have been factored into the monthly recurring charge for RAS Ports set forth herein.

3.  The prices set forth herein for the RAS Services include any applicable Equipment egress port fees, but exclude any egress circuit charges.  In the event that UUNET elects (in its sole discretion) not to obtain an egress circuit from ICG, ICG agrees to fully cooperate with UUNET and any third-party provider selected by UUNET to connect ICG's Equipment or wide area network equipment to UUNET's network via an egress circuit provisioned such third-party provider to ICG's central office or wide area network interconnection location.  ICG shall be compensated by UUNET for any work associated with such third-party provider egress circuit interconnection to the extent that ICG is compensated by third parties at similar rates for similar work.

4.  A RAS Port shall be deemed "active" for billing purposes under Section 4 of the Agreement upon the later of: (a) UUNET's requested installation date; or (b) three (3) business days after ICG notifies UUNET's designated program manager in writing that such RAS Port has been installed, successfully tested with end user RADIUS authentication, and is ready for service.  In the event that the activation of a RAS Port is unreasonably delayed beyond the requested installation date because of UUNET's failure to cooperate with ICG, UUNET's failure to timely obtain backhaul service to such RAS Port that UUNET purchases from a telecommunications provider other than ICG, or UUNET's failure to timely deliver RAS Equipment purchased by ICG from UUNET, then ICG shall provide UUNET with written notice identifying the specific nature of such deficiency. If UUNET does not cure such deficiency within five (5) business days after receipt of ICG's notice, then ICG may deem such RAS Port to be "active" for billing purposes.

DOJ - 00159
CONFIDENTIAL

S 1913