USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/09

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re                               :
                                    :
WORLDCOM, INC. et al.,              :   Chapter 11
                                    :   02-13533 (AJG)
              Reorganized Debtors   :
                                    :
                                    :
------------------------------------X
INTERNAL REVENUE SERVICE,           :
                                    :
              Appellant,            :
                                    :   07-cv-7414 (BSJ)
         v.                         :   08-cv-3070 (BSJ)
                                    :
WORLDCOM, INC., et al               :   ORDER & OPINION
                                    :
              Appellees.            :
------------------------------------X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

The United States Internal Revenue Service ("IRS") appeals here two orders of the Bankruptcy Court, *In re WorldCom, Inc.*, 371 B.R. 19 (Bkrtcy.S.D.N.Y. 2007), granting Debtors' objection to an IRS tax claim and granting Debtors' request for a refund of taxes. These claims concern liability for the telecommunications excise tax pursuant to 26 U.S.C. §§ 4251 *et seq.* (the "Telecommunications Excise Tax" or "Excise Tax") with respect to central office based remote access ("COBRA") services.

**BACKGROUND**

WorldCom, Inc., and in particular, its subsidiaries UUNET Technologies, Inc. ("UUNET") and MCI WorldCom Network Services, Inc. ("MWNS") (collectively, the "Debtors") constructed, maintained, and sold access to computer networks. In order to aggregate a number of analog dial-up connections into a high-speed data stream that



could be routed into the Debtors' networks, the Debtors purchased COBRA services from Local Exchange Carriers (LECs). The Bankruptcy Court described the COBRA system as follows:

> The COBRA system consists of three basic components. First, dial-up connections are routed from [Central Office] switches to the COBRA system through ingress Primary Rate Interface ("PRI") lines, each of which is capable of transmitting 23 separate dial-up connections. These PRI lines terminate in the Network Address Server ("NAS"), which in essence processes and aggregates the dial-up data streams transmitted through the PRI lines. The aggregated streams are then transmitted from the COBRA system to the Debtors' routers located at the Debtors' POP or hub through egress T1 lines. A complete and fully utilized COBRA system has 12 ingress lines and a minimum of 2 egress lines and is capable of receiving and processing 276 distinct dial-up modem connections simultaneously. *In re WorldCom, Inc.*, 371 B.R. at 28.

The Debtors simultaneously sold complete COBRA systems to the LECs and contracted to purchase COBRA service from the LECs on a per port basis. The LECs maintained the system's hardware and switching equipment, while the Debtors controlled the operating software. As the Debtors purchased COBRA services from the LECs, the LECs collected the Excise Tax on behalf of the IRS pursuant to section 4251. The Debtors have identified total payments in the amount of $38,297,513 for COBRA services purchased from July 1998 to December 2004.

Before the Bankruptcy Court, the Debtors objected to the IRS's Proof of Claim on these amounts and moved for a Determination of Refund Rights Pursuant to Section 505(a)(1) of the Bankruptcy Code (the "Refund Motion"). The Bankruptcy Court granted the Debtors' Objection and granted its Motion. The IRS appeals those rulings to this Court.

The Bankruptcy Court describes additional facts in some detail, familiarity with which is presumed.



## STANDARD OF REVIEW

A district court reviews a bankruptcy judge's findings of facts for clear error, Fed. R. Bankr.P. 8013. The district court does not make its own findings of fact. *See, e.g., In re JLJ Inc.,* 988 F.2d 1112, 1116 (11th Cir.1993) (noting that in reviewing a bankruptcy court decision, district court may not make its own independent factual findings and stating that "[i]f the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings."); *In re Muncrief,* 900 F.2d 1220, 1224 (8th Cir.1990) (same); *In re Edward M. Johnson and Assocs., Inc.,* 845 F.2d 1395, 1401 (6th Cir.1988) (same); *In re Britt*, 355 B.R. 427, 432 (S.D.N.Y. 2006) (same). A district court reviews a bankruptcy judge's conclusions of law *de novo, Jacobowitz v. Cadle Company (In re Jacobowitz),* 309 B.R. 429, 435 (S.D.N.Y.2004). On appeal, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013.

## DISCUSSION

26 U.S.C. § 4251(a)(1) states: "There is hereby imposed on amounts paid for communications services a tax equal to the applicable percentage of amounts so paid." "Communications services" are defined in subsection (b)(1) as "(A) local telephone service; (B) toll telephone service; and (C) teletypewriter service." "Local telephone service" is further defined at 26 U.S.C. § 4252(a):

> (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and
>
> (2) any facility or service provided in connection with a service described in paragraph (1).

Section 4252(a) also excludes "any service which is a 'toll telephone service' or a 'private communication service' as defined in subsection (b) and (d)."

The Bankruptcy Court held that "section 4252(a) requires that the taxpayer have the privilege to both initiate and receive telephonic quality communication." *In re WorldCom, Inc.*, 371 B.R. at 28. In so holding, the Bankruptcy Court relied in large part upon the ruling of the Court of Federal Claims in *USA Choice Internet Service, Inc. v. U.S.*, 73 Fed.Cl. 780 (2006). Since the issuance of the Bankruptcy Court's opinion, however, the Court of Federal Claims has been reversed on this point by the Federal Circuit Court in *USA Choice Internet Services, Inc. v. U.S.*, 522 F.3d 1332 (Fed.Cir. 2008). This Court agrees with the Federal Circuit's interpretation of section 4252(a), and for that reason reverses the orders of the Bankruptcy Court and remands this case for further consideration.

The Bankruptcy Court largely premised its interpretation of section 4252(a) on a distinction between the use of 'with' in section 4252(a) and the use of 'to or from' in section 4252(b)(2). To constitute "local telephone service" under section 4252(a), a service must, in addition to affording "access to a local telephone system," also afford "the privilege of telephonic quality communication *with* substantially all persons" in that system (emphasis added). Section 4252(b)(2), on the other hand, defines "toll telephone service" as "a service which entitles the subscriber, upon payment of a periodic charge ... to the privilege of an unlimited number of telephonic communications *to or from* all or a substantial portion of the persons having telephone or radio telephone stations ...." (emphasis added).



The Bankruptcy Court found that Congress's use of the preposition "with" in section 4252(a) suggests that to qualify as a "local telephone service," it is insufficient merely to be capable of communicating "to or from" substantially all persons in the local system. From this suggestion, the Bankruptcy Court concluded that "telephonic quality communication with substantially all persons" requires the ability to both 'initiate' and 'receive' calls. *In re WorldCom, Inc.*, 371 B.R. at 26.

The same distinction (between prepositions in sections 4252(a) and 4252(b)(2)) was also relied upon by the Court of Federal Claims in *USA Choice*. On appeal, the Federal Circuit accepted the Court of Claims's conclusion that "[t]he words 'to or from' capture single-direction communications," whereas "the word 'with' connotes reciprocity." *USA Choice*, 522 F.3d at 1338; *USA Choice,* 73 Fed.Cl. at 792. However, the Federal Circuit found that this distinction – between single-direction and reciprocal communication – does not implicate the ability to initiate and receive calls.

The Federal Circuit looked at section 4252(a)'s two "prongs" - "access to a local telephone system" and "the privilege of telephonic quality communication with substantially all persons" – and determined that "the 'access' prong of the statute is focused on connectivity," while, "the 'communication with' prong refers to what happens after that connection is established." *USA Choice*, 522 F.3d at 1339. To the extent, therefore, that section 4252(a)'s use of "with" suggests "reciprocity," it does not require the ability to initiate and receive calls (which would pertain to access); it requires that there be a "two-way communication" once access (connectivity) has already been established. "After all, most telephone calls, including communications negotiated by computer modems, involve reciprocal communication once a connection has been

established. For example, 'I spoke *with* Jane on the phone' does not indicate who initiated the conversation." *USA Choice*, 522 F.3d at 1338. "The issue therefore is whether two-way communication existed on USA Choice's incoming-only lines after a call was initiated." *USA Choice*, 522 F.3d at 1339.

The Federal Circuit also held that, "the legislative history behind this language further supports our conclusion," citing the text of the statute where the language was originally used - the 1965 Amendment to sections 4251 and 4252 of the Excise Tax Reduction Act of 1965, Pub.L. No. 89-44, § 302, 79 Stat. 136, 145-46 (1965) – and the circumstances surrounding that law's creation. The Federal Circuit found that these sources "indicate[] that the ability to originate calls was not essential" to Congress in drafting the statute. USA Choice, 522 F.3d at 1339-40.

Based on a plain reading of the statutory text, as well as a review of the legislative history, this Court finds persuasive the Federal Circuit's interpretation of section 4252(a), as described in *USA Choice*, and adopts it here.

Therefore, the COBRA system is taxable as a "local telephone service," if it affords both 1) "access" – i.e. "connectivity" (regardless of whether it can initiate or receive calls) – to a "local telephone system" and 2) "the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system" – i.e. "two-way" or "full-duplex" "telephonic quality communication."

Although in their appeals, both parties propose alternative grounds for affirming or reversing the decision of the Bankruptcy Court, these grounds require additional factual findings, which must be made by the Bankruptcy Court.[1]

In its opinion, the Bankruptcy Court identified several issues disputed between the parties but determined that resolution of these issues was not necessary to disposition. The Bankruptcy Court found that because it was uncontested that "the PRI ingress lines that route the incoming dial-up connections to the COBRA system are configured as Direct-Inward-Dial (DID) lines and because "DID lines allow for call reception but do not allow for call origination," there was, "a sufficient basis in uncontested fact...to resolve the Objection and the Refund Motion in favor of the Debtors." In re WorldCom, Inc., 371 B.R. at 28.  These uncontested facts, however, do not resolve the issue of taxability under section 4252(a) as it has been interpreted by this Court.[2]

The Bankruptcy Court must determine whether the COBRA service purchased by Debtors affords "access" to a "local telephone system" as well as "two-way" or "full-duplex" "telephonic quality communication."  In making this determination, there appear to be at least two principal factual issues that must be resolved.  First, the parties dispute the nature and function of Primary Rate Interface ("PRI") circuits and services in relation to the COBRA service. (More specifically, the parties dispute in the first place whether PRI lines are included in the COBRA service purchased by Debtors.  They also dispute whether the data stream produced through the COBRA service could be utilized by

---

[1] While the parties may assert that certain facts are uncontested or indisputable, the record makes clear that final resolution of this case requires additional factual findings.

[2] The Bankruptcy Court also noted that, "[t]he expert testimony has established that COBRA service translates the audio representations of data into the TCP/IP Internet protocol and then aggregates that digital data into a high-speed data stream...[but] [b]eyond this the parties disagree about most facts and their relevance to the legal issues." *In re WorldCom, Inc.*, 371 B.R. at 27 -28.

telephone equipment such as a Private Branch Exchange ("PBX") to enable communication by telephone between the Debtors and a party connected to the local telephone system. They also dispute whether, even if the data stream may be so utilized, it is within the power of the Debtors to plug in such a PBX.) Second, the parties dispute whether the COBRA service can transmit VoIP communication. *In re WorldCom, Inc.*, 371 B.R. at 28. These issues go toward both prongs of section 4252(a) and require factual findings from the Bankruptcy Court.

The Court also notes that it agrees with the Bankruptcy Court's reasoning that, "the capability of COBRA service must be assessed as purchased, not in relation to possible configurations....the Debtors only have the privileges that they purchased." *In re WorldCom, Inc.*, 371 B.R. at 29. Neither self-imposed limitations nor unpurchased, hypothetical configurations need be considered in determining whether the COBRA system purchased by Debtors afforded connectivity to a "local telephone system" and "two-way" "telephonic quality communication." The Court need only determine what was actually purchased and what uses of those purchases the Debtors may make of their own volition and without having to seek permission or additional purchases from the LECs or any other party.

The parties also dispute a separate issue concerning COBRA's potential qualification as a "private communication service" and concomitant exclusion from taxation under section 4252(a). Again, the factual issues necessary to resolve this dispute – whether, for example, PRI lines were included in this system and whether "a normal telephone user" could dial and access the Debtors' system (with or without Debtors' permission) - were not necessary to the Bankruptcy Court's holding and so were not



resolved. It would be inappropriate for this Court to resolve them here. This issue will be decided by the Bankruptcy Court after additional findings of fact are made.

## CONCLUSION

For the foregoing reasons, this Court reverses the Order of the bankruptcy court and remands this action for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED:

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         August 7, 2009